NOT YET SCHEDULED FOR ORAL ARGUMENT

No. 22-5328

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

Attorney General of the United States,
*Plaintiff-Appellant*,

v.

Stephen A. Wynn,
*Defendant-Appellee.*

On Appeal from the United States District Court
for the District of Columbia
The Hon. James A. Boasberg

BRIEF FOR APPELLEE STEPHEN A. WYNN

Reid H. Weingarten (No. 365893)
Brian M. Heberlig (No. 455381)
Bruce C. Bishop (No. 437225)
Nicholas P. Silverman (No. 64143)
STEPTOE & JOHNSON LLP
1330 Connecticut Ave., N.W.
Washington, D.C. 20036
(202) 429-3000

Robert D. Luskin (No. 293621)
Leo R. Tsao (No. 474144)
PAUL HASTINGS LLP
2050 M Street, N.W.
Washington, D.C. 20036
(202) 551-1700

*Attorneys for Defendant-Appellee Stephen A. Wynn*

June 14, 2023

**NOT YET SCHEDULED FOR ORAL ARGUMENT**

**CERTIFICATE AS TO PARTIES, RULINGS
AND RELATED CASES**

**A.    Parties**

The Attorney General of the United States, plaintiff below, is the appellant. Stephen A. Wynn, defendant below, is the appellee. There are no intervenors or amici curiae.

**B.    Ruling Under Review**

Plaintiff-Appellant challenges the district court's October 12, 2022 order dismissing the case without prejudice. A.181; *see* Gov. Br. (GB) 3. The district court's memorandum opinion, A.182, is reported at *Attorney General of the United States v. Wynn*, __ F. Supp. 3d __, 2022 WL 7002845 (D.D.C. Oct. 12, 2022) (the Hon. James E. Boasberg).

**C.    Related Cases**

There are no related cases.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES .. i

TABLE OF CONTENTS ............................................................................. ii

TABLE OF AUTHORITIES ...................................................................... iv

GLOSSARY ............................................................................................. viii

ISSUE PRESENTED ................................................................................. 1

STATUTES INVOLVED ............................................................................ 1

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF THE CASE .................................................................. 3

    A.    Facts relevant to the issue presented .................................... 3

    B.    Counterstatement regarding facts outside the record .......... 5

    C.    Procedural history ................................................................ 7

SUMMARY OF ARGUMENT ................................................................. 10

ARGUMENT ........................................................................................... 14

I.    GOVERNING LEGAL PRINCIPLES ........................................... 15

    A.    Standard of review ............................................................. 15

    B.    The Foreign Agents Registration Act ................................ 16

        1.    Registration requirement: Section 612(a) ................. 16

        2.    Criminal enforcement: Sections 618(a), (e) ............... 18

        3.    Civil enforcement: Section 618(f) ............................. 20

II.    THE GOVERNMENT'S NEW ARGUMENT ON APPEAL MAY NOT BE CONSIDERED .............................................................. 20

    A.    The government did not make its argument below ............ 22

    B.    Any error was invited............................................................. 26

III.    THE DISTRICT COURT CORRECTLY DISMISSED UNDER *McGOFF* ............................................................................................. 28

    A.    Under *McGoff*, there is no continuing obligation to register after a person ceases acting on behalf of the foreign principal29

    B.    *McGoff* is the law of the Circuit ............................................ 32

        1.    *McGoff*'s determination regarding § 612(a) is not dicta33

        2.    Section 612(a) must be interpreted consistently in criminal and civil cases ................................................. 34

    C.    *McGoff* was correctly decided................................................ 35

IV.    THE GOVERNMENT'S NEW ARGUMENT IS WRONG............. 42

    A.    Section 618(f)'s text does not authorize injunctions against "former agents" ..................................................................... 43

        1.    None of the words in Section 618(f) support the government's temporal distinction .............................. 43

        2.    The government's dichotomy is false........................... 44

        3.    Section 618(f)'s remedies do not support the government's interpretation ........................................ 46

        4.    The canon against surplusage does not support the government's interpretation ........................................ 47

    B.    FARA's history and structure do not support the government's interpretation ................................................. 49

CONCLUSION ........................................................................................ 51

# TABLE OF AUTHORITIES[1]

**Page(s)**

**Cases**

\* *Bittner v. United States*, 143 S. Ct. 713 (2023) ................................. 34, 37

*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002) .............................. 16

*District of Columbia v. Air Florida*, 750 F.2d 1077
(D.C. Cir.1984) ......................................................................... 24

*FEC v. Comm. of 100 Democrats*, 884 F. Supp. 1
(D.D.C. 1993) ........................................................................ 45-46

*FedEx Home Delivery v. NLRB*, 849 F.3d 1123
(D.C. Cir. 2017) ........................................................................ 32

*Hurd v. District of Columbia*, 864 F.3d 671 (D.C. Cir. 2017) ............. 6, 15

*Johnson v. Arteaga-Martinez*, 142 S. Ct. 1827 (2022) ........................... 25

\* *LaShawn A. v. Barry*, 87 F.3d 1389 (D.C. Cir. 1996)
(en banc) ................................................................................ 2, 32

\* *Leocal v. Ashcroft*, 543 U.S. 1 (2004) .................................................. 9, 34

*Mozilla Corp. v. FCC*, 940 F.3d 1 (D.C. Cir. 2019) ................................ 25

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife*,
551 U.S. 644 (2007) .................................................................... 39

\* *Nemariam v. Fed. Dem. Rep. of Ethiopia*, 491 F.3d 470
(D.C. Cir. 2007) ........................................................................ 24

*Schneider v. Kissinger*, 412 F.3d 190 (D.C. Cir. 2005) ........................... 24

*SEC v. Falstaff Brewing Corp.*, 629 F.2d 62 (D.C. Cir. 1980) ............... 41

---

[1] Authorities upon which we chiefly rely are marked with asterisks.

*SEC v. Steadman*, 967 F.2d 636 (D.C. Cir. 1992)................................... 40

*SEC v. VTR, Inc.*, 410 F. Supp. 1309 (D.D.C. 1975)............................... 46

*Swift & Co. v. United States*, 276 U.S. 311 (1928) ................................ 40

\* *Trudeau v. FTC*, 456 F.3d 178 (D.C. Cir. 2006) ................................... 16

*United States v. Brown*, 892 F.3d 385 (D.C. Cir. 2018).................... 27-28

*United States v. Davis*, 139 S. Ct. 2319 (2019) ...................................... 37

*United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023) ................... 48-49

*United States v. Islam*, 932 F.3d 957 (D.C. Cir. 2019) .......................... 25

\* *United States v. McGoff*, 831 F.2d 1071 (D.C. Cir. 1987)............... 2, 7, 9,
............................................ 11, 15,19, 20, 23, 26, 27, 28, 29, 30, 31, 32, 33,
............................................... 34, 35, 36, 37, 38, 39, 41, 46, 48, 49, 50, 51

*United States v. Thompson/Center Arms Co.*, 504 U.S. 505
(1992) (plurality opinion)...................................................................... 34

*United States v. Turkette*, 452 U.S. 576 (1981)....................................... 34

*United States v. W. T. Grant Co.*, 345 U.S. 629 (1953)............................ 40

*USAir, Inc. v. DOT*, 969 F.2d 1256 (D.C. Cir. 1992) ............................. 25

\* *Utility Air Regulatory Grp. v. EPA*, 885 F.3d 714
(D.C. Cir. 2018)...................................................................... 2, 11, 32, 33

\* *Wagner v. Taylor*, 836 F.2d 596 (D.C. Cir. 1988)............................. 27, 28

## Constitution

U.S. Const. Am. I..................................................................................... 8

U.S. Const. Am. V.................................................................................... 8

## Statutes

15 U.S.C. § 78u(d)(5) .............................................................................. 45

18 U.S.C. ch.213 ........................................................................ 38

18 U.S.C. § 1001 ...................................................................... 18

18 U.S.C. § 3282(a) .................................................................. 51

Foreign Agents Registration Act:

    22 U.S.C. § 611(b) ................................................................ 17

\*   22 U.S.C. § 611(c)(1) ........................................................... 17

    22 U.S.C. § 611(o) ................................................................ 18

\*   22 U.S.C. § 612(a) ....... 1, 2, 7, 10, 11, 12, 13, 15, 16, 17, 18, 19, 22, 23,

           .......................................................25, 26, 27, 29, 30, 31, 35, 38, 48

    22 U.S.C. § 612(b) ............................................. 22, 26, 27, 28, 48

    22 U.S.C. § 612(c) ............................................................ 17, 48

    22 U.S.C. § 612(d) ................................................................ 48

    22 U.S.C. § 617 ..................................................................... 48

    22 U.S.C. § 618(a) ............................................................ 18, 51

    22 U.S.C. § 618(e) ......................................................... 18, 19, 30,

\*   22 U.S.C. § 618(f) .................. 1, 2, 10, 13, 14, 20, 21, 23, 25, 26, 29, 48

    22 U.S.C. § 618(g) ................................................................ 48

28 U.S.C. § 1746 ...................................................................... 18

29 U.S.C. § 440 ........................................................................ 46

52 U.S.C. § 30109(a)(6)(B) ...................................................... 45

*An Act to Amend the Foreign Agents Registration Act of 1938,*
   Pub. L. 89-486, 80 Stat. 244 (1966) ...................................... 50

**Rule**

Fed. R. Civ. P. 12(b)(6) .............................................................. 15

**Other Authorities**

*Foreign Agents Registration Act Amendments: Hearing on S.693 before the S. Comm. on Foreign Relations.*, 89th Cong., 1st Sess. 60-61 (1965) ............................................. 40

Office of the Inspector General, U.S. Dep't of Justice, *Audit of the National Security Division's Enforcement and Administration of the Foreign Agents Registration Act* (Audit Div. 16-24, Sept. 2016), *available at* https://www.oversight.gov/sites/default/files/oig-reports/a1624.pdf .............................................................. 26

# GLOSSARY

| | |
|---|---|
| A.__ | Appendix |
| FARA or the Act | Foreign Agents Registration Act |
| GB.__ | Government Brief |
| PRC | People's Republic of China |

## ISSUE PRESENTED

Whether, under D.C. Circuit law, the government may obtain an injunction requiring a person to register as a foreign agent under the Foreign Agents Registration Act, 22 U.S.C. §§ 612(a) and 618(f), after the person ceases to act as an agent of a foreign principal.

## STATUTES INVOLVED

Relevant portions of the Foreign Agents Registration Act, 22 U.S.C. §§ 611 *et seq.*, are reproduced in the addendum to the Brief for Appellant the Attorney General.

## PRELIMINARY STATEMENT

The Complaint alleges that Steve Wynn, then the Finance Chairman for the Republican National Committee, acted as an agent for the People's Republic of China ("PRC") from June through October of 2017, when he conveyed to President Donald Trump and White House officials on several occasions that China sought the expulsion from the United States of a certain Chinese national (the "PRC national"). *See* A.6-9; A.186. Although the parties strongly disagree whether Wynn acted as China's agent, all agree that any such relationship ended no later than October 2017. The Complaint—filed in May 2022 (nearly five years after the conduct at issue ended)—seeks a permanent injunction under the Foreign Agents Registration Act ("FARA"), 22 U.S.C.

§§ 612(a), 618(f), requiring Wynn to file a registration statement swearing under oath that he acted as an agent of the Chinese government in 2017.

The law of this Circuit squarely holds that the obligation to file a registration statement under FARA expires on "the last day that an individual acts as an agent of a foreign principal." *United States v. McGoff*, 831 F.2d 1071, 1096 (D.C. Cir. 1987); *accord id.* at 1082. Correctly following *McGoff*, the district court concluded that because the Complaint alleges that Wynn was no longer acting as an agent, "Wynn's obligation to file a registration statement has years since passed, and the Government cannot now compel him to register, which is the only relief it seeks here." A.194. The court accordingly dismissed the case, A.181, without considering whether Wynn was ever a foreign agent, A.189.

*McGoff*'s holding binds not only the district court, A.189, 194, but also this panel. *See LaShawn A. v. Barry*, 87 F.3d 1389, 1393-95 (D.C. Cir. 1996) (en banc); *Utility Air Regulatory Grp. v. EPA*, 885 F.3d 714, 720 (D.C. Cir. 2018). The district court's dismissal decision correctly applying *McGoff* should be affirmed.

## STATEMENT OF THE CASE

### A.    Facts relevant to the issue presented[2]

In June 2017, Wynn, then the Finance Chairman of the
Republican National Committee, was approached by one of his
predecessors in that position, Elliot Broidy, who told Wynn that the
Chinese government wanted the United States to arrest and expel a
Chinese-national businessperson who "left China in 2014, was later
charged with corruption by the PRC, and sought political asylum in the
United States." A.3-5. Broidy told Wynn that a Chinese government
official (Sun Lijun, China's Vice Minister for Public Security at the time
(A.1)) had requested Wynn's help "in bringing the issue to the attention
of the Trump Administration," and gave Wynn copies of "the PRC
national's passport photos, an Interpol red notice, and links to various
news articles about the PRC national." A.5. The same month, Sun spoke
with Wynn by telephone and requested that Wynn alert the Trump
Administration to the PRC's desire to repatriate the PRC national.
Wynn agreed to raise the matter with then-President Trump and
Trump administration officials. A.5.

---

[2] The Complaint's factual allegations are assumed to be true in
reviewing a grant of a motion to dismiss. Sec. I.A, *infra*.

During a June 27, 2017 dinner with then-President Trump and other Administration officials, Wynn "conveyed to then-President Trump the PRC's desire to have the PRC national removed from the United States and provided the PRC national's passport photos to then-President Trump's secretary." A.6.

Sun continued to telephone Wynn from late June through August 2017, repeating the PRC's interest in seeing that the PRC national's U.S. visa was not renewed, and stating that he would appreciate Wynn's help in conveying this message to the Trump Administration. A.7. During that period, Wynn tried to organize meetings regarding the PRC national with several senior Trump Administration officials. A.7-8. In August 2017, Wynn had "what appeared to be" multiple "unscheduled meetings with then-President Trump," some of which included discussion about the PRC national. A.8. Wynn and Broidy also telephoned then-President Trump together in late August 2017 and asked about the PRC national's status. The President responded he would look into the matter. A.8.

The United States did not remove the PRC national. In response to Sun's continued calls, Wynn told Sun in October 2017 "that he had made U.S. government officials aware of the request, that [he] was not able to provide any more assistance, and that Sun should stop

contacting him." A.8-9. "[B]oth parties agree that any [agency] relationship between Wynn and the Chinese government ended in October 2017." A.189; *see* A.8-9.

## B.    Counterstatement regarding facts outside the record

The Complaint seeks only civil relief. But the government begins its brief by discussing many extrarecord facts that seek to paint Wynn's conduct as criminal. Specifically, the government's brief describes a conspiracy by Broidy and others, "in exchange for millions of dollars and without registering under FARA," to "lobb[y] the President and Attorney General of the United States, as well as other high-level officials in the administration and the Department of Justice, on behalf of the People's Republic of China," to "drop civil forfeiture proceedings concerning the embezzlement of billions of dollars from a Malaysian company," and to arrange for the expulsion of the PRC national. GB.4. The government cites guilty pleas by Broidy and Nickie Lum Davis, and a jury verdict against Prakazrel Michel, to establish "the scheme." GB.4-5. It then asserts that "Wynn played a central role, working with Broidy and on behalf of the PRC government, in lobbying for the removal of the same Chinese dissident businessperson." GB.5.

The government's attempt to connect Wynn to a wide-ranging criminal conspiracy is wholly inappropriate and egregiously unfair to

- 5 -

Wynn, who has not been accused of any of this conduct. It should be rejected.

*First*, the Court should disregard these facts because they are outside the record, based on pleas and a verdict in cases that were not before the district court in this case, and are not before this Court. (Tellingly, the government does not even claim the cases are related. GB.i.) The government has not asked this Court to take judicial notice of those facts, nor could it: This Court does not take judicial notice of court records from other cases for the truth of the matter asserted. *See Hurd v. District of Columbia*, 864 F.3d 671, 686 (D.C. Cir. 2017).

Second, the government's attempt to inject Wynn into a larger conspiracy lacks any support in the record, and is simply untrue. The Complaint does not allege that Wynn was a member of, or even knew about, any conspiracy among Broidy, Davis, and Michel, or its central aim to convince the Department of Justice to drop a civil forfeiture action in exchange for millions of dollars. *See* A.4-5. The Complaint also does not allege that Wynn received any compensation for his actions, let alone any portion of the "millions of dollars" that others received. Notably, none of the guilty pleas, verdict, or charging documents in the Broidy, Davis, or Michel cases allege any involvement by Wynn in that scheme. That is because Wynn never received compensation of any

- 6 -

kind, and he was not a member of the conspiracy. *Compare* A.4-8 (Complaint) *and* A.185-86 (opinion, describing Complaint's allegations) *with* GB.4-5.

*Third*, the government's attempt to smear Wynn with the illegal conduct of others is unfair and prejudicial. The government has never charged Wynn with any crime. A.188. It is also surprising and disappointing, given that the government could have charged Wynn with a criminal violation of FARA if it believed the evidence supported it. It has not done so, and the statute of limitations has long since passed. The government's effort to inject unfounded extrarecord allegations is improper and should be rejected.

### C.    Procedural history

In a May 2018 letter, the government advised Wynn that he was "obligat[ed] to register under FARA as an agent of Sun and the PRC and gave him thirty days to effect the registration." A.11. "Wynn, through counsel, denied any obligation to register." GB.8 (citing A.11).

Four years later, on May 19, 2022, the government filed its Complaint seeking a declaratory judgment that Wynn is required to register under FARA, 22 U.S.C. § 612(a), and a permanent injunction requiring him to do so. A.1-13.

Wynn moved to dismiss the Complaint, A.14-18, contending that:

- under *McGoff*, there is no continuing obligation to register under FARA after the agent ceases acting on behalf of a foreign principal, A.33-37;

- compelling Wynn to contradict his past testimony by speaking a sworn, government-dictated message would violate his Fifth and First Amendment rights, A.38-53; and

- the Complaint failed to state a FARA claim because it alleged that Wynn merely conveyed a message from the PRC to President Trump and administration officials, and did not sufficiently allege that Wynn had a foreign agency relationship or engaged in political activities under the statute, A.53-66.

The government's opposition to dismissal, A.99-101, argued that:

- *McGoff*, a criminal case, does not foreclose *civil* enforcement of FARA's registration obligation after a person has ceased acting as an agent of a foreign principal, A.113-18;

- *McGoff*'s determination that the obligation to file expires when the agent ceases activities on behalf of a foreign principal was dicta, A.115;

- requiring Wynn to register would uphold the purpose of FARA, A.119;

- requiring Wynn to register under FARA would violate neither the Fifth nor First Amendments, A.121-36; and

- the Complaint sufficiently alleged an agency relationship and that Wynn engaged in "political activities" under FARA, A.137-46.

The district court granted the motion on the papers. It dismissed the Complaint solely based on *McGoff*'s holding that the "obligation to file" a registration statement under Section 612(a) "expires when the agent ceases activities on behalf of the foreign principal." A.194 (quoting *McGoff*, 831 F.2d at 1082). The court rejected the government's contention that this ruling was dicta, finding that deciding the temporal scope of Section 612(a)'s filing obligation was necessary to resolve the statute-of-limitations issue, as the *McGoff* majority "went to great pains to explain." A.195-96; *see* A.194-97. The court further rejected the government's effort to distinguish *McGoff* as a criminal case inapplicable to civil enforcement, A.197-200, noting that a statute with both criminal and civil application must be interpreted consistently across both contexts. *See* A.198 (citing *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004)). Recognizing that *McGoff* was binding Circuit precedent, the district court concluded that "Wynn's obligation to file a registration statement has years since passed, and the Government cannot now compel him to register, which is the only relief it seeks here." A.194.

Accordingly, the court dismissed the case with prejudice, A.181, without reaching Wynn's other grounds for dismissal. A.189.

## SUMMARY OF ARGUMENT

The government argues that FARA's civil enforcement provision, 22 U.S.C. § 618(f), contains two independent prongs: the first one targeting "ongoing (or anticipated) violations" of FARA, and the second targeting "completed violations" of FARA. GB.17. The government contends its Complaint falls within the second prong because it "alleges a completed violation—that Wynn was an agent of a foreign principal who failed to comply with the statute." GB.17; *accord* GB.19-20. The government thus asserts that the district court erred by failing to give the second prong of Section 618(f) independent effect. GB.17-18, 25-29. This argument is flawed for multiple reasons.

### 1. The government's new argument on appeal is forfeited, and its claimed error was invited

The statutory interpretation of Section 618(f) that the government advances here is brand new. Because the government never argued it to the district court, it is forfeited.

The government's new interpretation is also inconsistent with the theory it pled and argued below. In the district court, the government's theory focused on a claimed present obligation to register under Section 612(a). *See* A.12; A.112, 114. The government never sought an order arising directly from Section 618(f), based solely on an alleged failure to comply with a past obligation, *see* GB.19-20, 27-28.

The district court's determination that Wynn had no registration obligation under Section 612(a) answered exactly the question the government presented. That was not error, but if it were, the error was invited. The government may not now complain to this Court.

## 2. The district court correctly followed *McGoff*, the binding law of the Circuit

This Court is bound by its prior panel decision, including "not only the result but also those portions of the opinion necessary to that result." *Utility Air Regulatory Grp. v. EPA*, 885 F.3d 714, 720 (D.C. Cir. 2018) (citation omitted).

Under *McGoff*, the "obligation to file" under FARA "expires when the agent ceases activities on behalf of the foreign principal." A.194 (quoting *McGoff*, 831 F.2d at 1082). That determination was not dicta because it was necessary to resolve the question presented in *McGoff*, and thus was part of the holding. A.194-97. Moreover, the temporal scope of FARA's filing obligation under Section 612(a) cannot vary depending whether enforcement is criminal or civil. A.198.

Under *McGoff*, Wynn has no present obligation to register, years after his conduct at issue undisputedly ceased. *See* A.194. While the government could have pursued other remedies, such as a criminal charge, FARA's civil injunctive remedy is no longer available, as the

district court held. Wynn cannot be enjoined to comply with an obligation that long ago ceased to exist. *Id.*

### 3. *McGoff* was correctly decided

*McGoff* is not merely binding precedent. It is the best reading of the statute.

As the district court recognized, Section 612(a)'s language defining the duration of its continuing filing obligation is subject to competing interpretations that "both create undesirable issues of surplusage and ambiguity that cannot be fully resolved on the text alone." A.191. But there are additional compelling reasons, beyond inconclusive grammatical analyses and competing canons of construction, that favor *McGoff*'s interpretation.

*First*, it imposes a temporal limiting principle rather than a perpetual obligation. Though Congress was free to create a temporally unlimited enforcement regime, it would not have done so without making a much clearer statement. A continuing offense with no time limit would be of dubious constitutionality, and Congress would not have imposed one without mentioning it in the criminal code provisions setting limitations periods. And the ambiguity of the question calls for application of the rule of lenity. Because § 612(a)'s filing obligation is

- 12 -

incorporated in both the criminal and civil enforcement statutes, it must be interpreted consistently in both contexts.

*Second*, FARA's definitions and requirements concerning the foreign-agency relationship and disclosure are all phrased in the present, signaling that FARA is focused on the here and now, not the past. That is consistent with FARA's purpose to allow the public and the government to evaluate FARA disclosures *contemporaneously*, not retrospectively. The sparse legislative history of the 1966 amendment supports this focus on the present and on creating incentives for prompt voluntary disclosure, even if the civil injunction is not often used as a coercive tool.

*Third*, the relief authorized in Section 618(f) is *injunctive* relief—an extraordinary form of equitable relief whose purpose is to prevent prospective, imminent harm, not to right past wrongs.

### 4. The government's new argument is wrong

Even if the government's new argument could be considered—that the second clause in Section 618(f) independently authorizes injunctions against former agents who no longer have a present reporting obligation under § 612(a), GB.17-29—the argument is wrong.

*First*, none of the textual terms in Section 618(f), all of which are written in the present or future tense, suggests a remedy directed at

persons who served as foreign agents in the past, but ceased such activity years ago.

*Second*, the government's purported dichotomy between a remedy directed at *current* agents and one directed at *former* agents overlooks a third prong, which also refers to those *presently* in violation of FARA—not those who may have violated FARA in the past but are no longer foreign agents with present obligations.

*Third*, although Section 618(f)'s remedies track the predicate situations to which they apply, they do not support the government's temporal interpretation any more than the other verb and nouns in the statute do.

*Fourth*, the canon against surplusage does not support the government's interpretation, and has little force where, as here, no interpretation will *eliminate* surplusage.

*Finally*, FARA's structure and history do not support the government's urged temporal interpretation.

For all of these reasons, this Court should affirm.

## ARGUMENT

Although Wynn's motion presented numerous grounds for dismissal, including several "meaty constitutional issues," A.189; *see supra* at 8, the district court decided only the first of those grounds: that

- 14 -

under *McGoff*, any obligation to register under Section 612(a) expired in October 2017, when "[b]oth parties agree that any [agency] relationship between Wynn and the Chinese government ended." A.189; *see* A.194. Because "Wynn's obligation to file a registration statement has years since passed," the district court held "the Government cannot now compel him to register, which is the only relief it seeks," A.194; *see* A.12, and therefore dismissed the Complaint. A.181, 200.

## I.    GOVERNING LEGAL PRINCIPLES

### A.    Standard of review

This Court reviews the grant of a Rule 12(b)(6) dismissal *de novo*. *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017).

"To survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face,'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "'A claim crosses from conceivable to plausible when it contains factual allegations that, if proved, would 'allow the court to draw the reasonable inference that" the plaintiff is entitled to the relief sought. *Id.* (quoting *Iqbal*, 556 U.S. at 678, and *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015)).

- 15 -

Although the Court must "treat the complaint's factual allegations as true," and "grant plaintiff the benefit of all reasonable inferences from the facts alleged,'" *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (citation omitted), it need not accept "legal conclusion[s] couched as ... factual allegation[s]," nor "inferences ... unsupported by the facts set out in the Complaint." *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) and *Kowal v. MCI.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). The court may consider "only the facts alleged in the Complaint, any documents either attached to or incorporated in the Complaint[,] and matters of which [the court] may take judicial notice." 456 F.3d at 183 (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997). (citation omitted).

If the facts alleged in the complaint "render success on the merits impossible," "dismissal is appropriate." 456 F.3d at 193 & n.31 (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)); *see Browning*, 292 F.3d at 244 (affirming dismissal of claim that complaint showed to be beyond statute of limitations).

## B.    The Foreign Agents Registration Act

### 1.    Registration requirement: Section 612(a)

FARA's central requirement is that every person who "acts as" or "becomes" "an agent of a foreign principal" must file a registration

- 16 -

statement with the Attorney General. 22 U.S.C. § 612(a). The
registration statement must be made under oath, on a form prescribed
by the Attorney General. *Id.*; *see* 22 U.S.C. § 612(c). The contents of the
required statement are set out in § 612(a)(1) through (11). An example
of the required form appears at A.84-97.

FARA defines "agent of a foreign principal" to mean, in relevant
part:

> (1) any person who acts as an agent, representative,
> employee, or servant, or any person who acts in any other
> capacity at the order, request, or under the direction or
> control, of a foreign principal, ... and who directly or
> through any other person—
>
> > (i) engages within the United States in political
> > activities for or in the interests of such foreign
> > principal; [or]
> >
> > ....
> >
> > (iv) within the United States represents the interests of
> > such foreign principal before an agency or official of the
> > Government of the United States[.]

22 U.S.C. § 611(c)(1).

A "foreign principal" includes "a government of a foreign country,"
as well as "a person outside the United States" who is not a U.S.-
domiciled U.S. citizen or a U.S. business. 22 U.S.C. § 611(b)(1), (2).

- 17 -

"[P]olitical activities" means

> any activity that the person engaging in believes will, or
> ... intends to, in any way influence any agency or official
> of the Government of the United States or any section of
> the public within the United States with reference to
> formulating, adopting, or changing the domestic or foreign
> policies of the United States or with reference to the
> political or public interests, policies, or relations of a
> government of a foreign country or a foreign political
> party[.]

22 U.S.C. § 611(o).

Violations of FARA are subject to both criminal and civil enforcement. A.184.

### 2.    Criminal enforcement: Sections 618(a), (e)

"Any person who ... willfully violates any provision of this subchapter or any regulation thereunder" may be punished by up to five years in prison. 22 U.S.C. § 618(a)(1).[3] "Failure to file any such registration statement or supplements thereto as is required by either section 612(a) or section 612(b) ... shall be considered a continuing offense for as long as such failure exists, notwithstanding any statute of limitation or other statute to the contrary." *Id.* § 618(e).

---

[3] False statements in documents submitted under FARA are punishable under 22 U.S.C. § 618(a)(2), as well as under 18 U.S.C. § 1001 and 28 U.S.C. § 1746. *See, e.g.*, A.93.

Section 618(e) does not mean that failure to register is an offense that continues indefinitely, unmoored from any statute of limitations. This Court squarely rejected that interpretation in *United States v. McGoff*, 831 F.2d 1071, 1079-81 (D.C. Cir. 1987) (finding such a result would be, "if not absurd," at least "singularly unlikely to have been intended," *id.* at 1093 (citations omitted); "unjust," *id.* at 1094; and "of doubtful constitutionality even if it were created by Congress." *Id.* at 1095 (quoting *Krulewitch v. United States*, 336 U.S. 440, 456-57 (1949) (Jackson, J., concurring)).

Instead, the Court ruled that by using the term "continuing offense" in Section 618(e), Congress imported two principles from the common law: that "continuing offenses do not, in general, continue indefinitely," 831 F.2d at 1079, and that instead the statute of limitations for a continuing offense "runs from the last day of the continuing offense." *Id.* Observing that Section 618(e) "specifically incorporates the duration of the section 612(a) obligation to file as the factor governing the duration of the continuing offense," *id.* at 1081, the Court concluded that the § 618(e) continuing offense was complete, *i.e.*, it ended and the statute of limitations began to run, when the § 612(a) obligation to file expired—that is, "when the agent ceases activities on behalf of the foreign principal." *Id.* at 1082; *accord id.* at 1096.

### 3.    Civil enforcement: Section 618(f)

Section 618(f) authorizes the civil injunctive remedy at issue here:

> **(f) Injunctive remedy; jurisdiction of district court**
>
> Whenever in the judgment of the Attorney General any person is engaged in or about to engage in any acts which constitute or will constitute a violation of any provision of this subchapter, or regulations issued thereunder, or whenever any agent of a foreign principal fails to comply with any of the provisions of this subchapter or the regulations issued thereunder, or whenever ran agent of a foreign principal fails to comply with any of the provisions of this subchapter or the regulations issued thereunder, or otherwise is in violation of the subchapter, the Attorney General may make application to the appropriate United States district court for an order enjoining such acts or enjoining such person from continuing to act as an agent of such foreign principal, or for an order requiring compliance with any appropriate provision of the subchapter or regulation thereunder. The district court shall have jurisdiction and authority to issue a temporary or permanent injunction, restraining order or such other order which it may deem proper.

22 U.S.C. § 618(f).

## II.    THE GOVERNMENT'S NEW ARGUMENT ON APPEAL MAY NOT BE CONSIDERED

Before this panel, the government asserts only one argument: that

the district court interpreted Section 618(f) incorrectly. Argument I, GB.

17-29.[4] According to the government, Section 618(f) authorizes suits

---

[4] The government's Argument II, GB.29-39, acknowledges *McGoff*'s holding (and implicitly that *McGoff* controls its appeal to this panel), GB.30, and preserves its argument "contrary" to *McGoff* for further review. GB.31.

against *former* agents of foreign principals whose agency relationship has ceased, based on their failure to comply with a past obligation to register, GB.18-20, even in the absence of a current or continuing FARA violation, *see* GB.27-28.

This argument's major premise is that Section 618(f), FARA's civil enforcement provision, contains two separate prongs: the first one assertedly targeting "ongoing (or anticipated) violations" of FARA, "whenever … any person is engaged in or about to engage in any acts which constitute or will constitute a violation of any provision of this subchapter," and the second one assertedly targeting "completed violations" of FARA, "whenever any agent of a foreign principal fails to comply with any of the provisions of this subchapter …, or otherwise is in violation of the subchapter." GB.17.

The government claims that the Complaint meets the second prong, because it "alleges a completed violation—that Wynn was an agent of a foreign principal who failed to comply with the statute." GB.17; *accord* GB.19-20. The government argues the district court erred by failing to give "independent meaning" to the second prong of § 618(f). GB.18-20, 25-29.

There is a compelling reason the district court did not address head-on the government's argument: the government never raised it

- 21 -

below. The government's new argument may not be considered here, for two reasons.

## A.    The government did not make its argument below

*First*, the government's argument is brand new on appeal. It never presented it to the district court.

The sole claim in the Complaint, labeled "Count 1," asserted a "Violation of 22 U.S.C. § 612(a)," contending "the Defendant has an obligation to register as an agent of foreign principals pursuant to 22 U.S.C. § 612(a)." A.12 ¶ 41. It sought a "declaratory judgment stating that Defendant has an obligation to register pursuant to 22 U.S.C. § 612(a)," *id.*, Prayer for Relief ¶ a; and a permanent injunction "requiring the Defendant ... to submit a true and complete registration statement, and supplements thereto, as required by ... 22 U.S.C. § 612(a)-(b)." A.12 ¶ 42 and Prayer for Relief ¶ b.

In its opposition brief below, the government affirmed to the district court that those were its claims. *See* A.112. The government rested its position that FARA "contains no restraints on when the Government can pursue civil enforcement actions" on Section *612(a)*, not 618(f), arguing that Section 612(a) "expressly states that 'termination of [agency] status shall not relieve such agent from his

obligation to file a registration statement for the period during which he was an agent of a foreign principal." A.114 (citing § 612(a)); *see* A.194.

In response to Wynn's argument that under *McGoff*, the obligation to register under Section 612(a) ends when a person ceases acting as a foreign agent, the government told the district court that (1) this statement in *McGoff* was dicta, A.115, and *McGoff*, a criminal precedent, did not govern this civil enforcement action, A.116-18; (2) a 1950 amendment to Section 612(a) supported a continuing duty to register under that section, A.118-19; and (3) requiring Wynn to register would uphold FARA's purpose, A.119-21.

Each of those arguments focused on the duration of *Section 612(a)*'s registration obligation. None of them argued that a so-called "second prong" of Section 618(f) independently authorizes ordering a former agent to register, even in the absence of a current obligation under Section 612(a). *Cf.* GB.27. The only mentions of Section 618(f) in the government's opposition were in three sentences stating that Section 618(f) governed civil cases. *See* A.116, A.117, A.118. The interpretation of Section 618(f) advanced in the government's appeal brief, GB.17-29, appears nowhere in its opposition below.[5]

---

[5] The district court heard no argument, granting dismissal on the papers. *See* A.ii-iii (ECF 11, 14, 15, 16, 20, 21).

"Absent exceptional circumstances, the court of appeals is not a forum in which a litigant can present legal theories that it neglected to raise in a timely manner in proceedings below." *Nemariam v. Fed. Dem. Rep. of Ethiopia*, 491 F.3d 470, 483 (D.C. Cir. 2007) (citation and alteration omitted). "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work .... [A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005). The preservation requirement is "not a mere technicality," but instead prevents the "[e]normous confusion and interminable delay [that] would result if counsel were permitted to appeal upon points not presented to the court below." *District of Columbia v. Air Florida*, 750 F.2d 1077, 1084-85 (D.C. Cir.1984) (citation omitted).

"Exceptional circumstances" warranting relaxation of the forfeiture rule include "cases involving uncertainty in the law; novel, important, and recurring questions of federal law; intervening change in the law; and extraordinary situations with the potential for miscarriages of justice.'" *Nemariam*, 491 F.3d at 483 (citing *Flynn v. C.I.R.*, 269 F.3d 1064, 1069 (D.C. Cir. 2001)).

The government has offered no excuse for its failure to present its argument to the district court. In a footnote, it meekly contends it is merely "elaborat[ing] ... on its view of Section 618(f)" expressed below, and that it "enjoy[s] ... latitude" to do so. GB.26 n.5 (quoting *Shea v. Kerry*, 796 F.3d 42, 54 (D.C. Cir. 2015)). But the government expressed *no* view of Section 618(f) below: "[I]t did not engage at all with the text of that provision ... beyond insisting that § 618(f) is the basis for distinguishing *McGoff*." A.199. The district court's statement that the government had not offered any "interpretation of § 618(f) that would allow the Government to compel Wynn to register today notwithstanding *McGoff*'s interpretation of the registration obligation of § 612(a)," A.199, was not an invitation to create such an interpretation and argue it on appeal. Instead, it points precisely to the reason for forfeiture rules—to avoid sandbagging the district court and opposing party. *See United States v. Islam*, 932 F.3d 957, 962 (D.C. Cir. 2019); *USAir, Inc. v. DOT*, 969 F.2d 1256, 1259, 1260 (D.C. Cir. 1992).[6]

---

[6] In *Mozilla Corp. v. FCC,* 940 F.3d 1 (D.C. Cir. 2019), this Court found the government forfeited a new argument twice over, in circumstances much closer than this: once under the *Chenery* doctrine, because the FCC "did not advance *Chevron* Step Two as a source of preemption authority" in its order under review, and again in this Court, by not making the argument in its opening brief. *Id.*at 82.

- 25 -

There are no exceptional circumstances that call for this Court to consider in the first instance the government's ad hoc statutory interpretation. Nothing in this case is novel or uncertain; on the contrary, the case is controlled by *McGoff*. *See* Sec. III.A-B, *infra*. There has been no intervening change in the law since the district court's dismissal order. The issue is not frequently recurring; "[t]his is the first affirmative civil suit under FARA in more than three decades." A.187 (citing DOJ press release).[7] And the government's inability to enforce an alleged disclosure obligation that expired years ago hardly rises to a miscarriage of justice—particularly where the government waited nearly five years before seeking relief.

The government's argument is forfeited. This Court need go no further.

## B.    Any error was invited

Rather than present its current interpretation of Section 618(f), the government argued below what it alleged in its Complaint: that Wynn has a *present* "obligation to register ... *pursuant to ... § 612(a)*,"

---

[7] *See also* Office of the Inspector General, U.S. Dep't of Justice, *Audit of the National Security Division's Enforcement and Administration of the Foreign Agents Registration Act* 12 (Audit Div. 16-24, Sept. 2016), https://www.oversight.gov/sites/default/files/oig-reports/a1624.pdf (last visited June 14, 2023).

A.12 ¶¶ 41, Prayer for Relief (a) (emphasis added), which it claimed entitles the government to a permanent injunction compelling Defendant to register "*as required by ... § 612(a)-(b)*." A.12 ¶¶ 42, Prayer for Relief (b) (emphasis added); *see also* A.1. The government told the district court that was its theory, *see* A.112, and the district court understood it as such. *See* A.198-99 (citing Compl. ¶ 1, A.1).

The district court's decision that Section 612(a) imposed no present obligation to register years after any agency relationship ceased, A.189, 194, thus addressed the precise issue the government presented in its Complaint and opposition brief. The district court further responded directly to the government's arguments when it ruled that: (1) *McGoff*'s determination of the temporal scope of Section 612(a) was not dicta, A.194-97 (responding to A.115), and (2) *McGoff* applied in the civil as well as the criminal context, A.197-200 (responding to A.116-17).

The district court did not err by answering the questions the government put before it, as the government now contends (GB.18-21, 25-29). But if it had, any error was invited, and may not be considered. *See*, *e.g.*, *Wagner v. Taylor*, 836 F.2d 596, 599 (D.C. Cir. 1988) ("It has long been settled that on appeal a litigant cannot avail himself of an error that he induced the court under review to commit."); *United States*

- 27 -

*v. Brown*, 892 F.3d 385, 393 (D.C. Cir. 2018) ("A [party] may not complain about invited error.").

The government pled in its Complaint, and insisted in its motion papers, that Wynn had a present obligation to register under Section 612(a). *See supra* at 22-23, 26-27. The district court, "accepting that as its dispositional premise," *Wagner*, 836 F.2d at 599, followed this Court's precedent governing that question, resolved the question adversely to the government, and "ordered the dismissal of which [the government] now complains. A starker instance of invited error, if indeed any error was committed, could hardly be imagined." *Id.*

## III.  THE DISTRICT COURT CORRECTLY DISMISSED UNDER *McGOFF*

On the question before it—whether Wynn had an obligation to register under Section 612(a), *see* A.12 ¶¶ 41, Prayer for relief (a); A.114—the district court correctly applied *McGoff*'s holding that the Section 612(a) "obligation to file expires when the agent ceases activities on behalf of the foreign principal." A.194 (quoting *McGoff*, 831 F.2d at 1082). *McGoff* is the binding law of the Circuit, and requires affirmance of the district court's dismissal order.

- 28 -

A. **Under *McGoff*, there is no continuing obligation to register after a person ceases acting on behalf of the foreign principal**

*McGoff*, like this case, was a FARA enforcement action for failure to register under Section 612(a), brought years after the defendant had ceased any activities on behalf of the alleged foreign principal. McGoff, an American newspaper publisher accused of acting as an undisclosed agent of South Africa, was charged criminally seven years after the alleged conduct ceased. A.189 (citing 812 F.2d at 1072). Here, the government sued Wynn in 2022, seeking a permanent injunction requiring him to register under Section 612(a) and (b), based on conduct that ceased nearly five years before the Complaint was filed. A.189.

Both cases turn on the same question: when does the obligation to file under Section 612(a) expire? *See McGoff*, 831 F.2d at 1081-82; A.190, 194. The government has maintained a consistent view that the obligation to register never ends. *Compare McGoff*, 831 F.2d at 1079 (reciting government argument "that section 618(e), standing alone, creates an offense that continues until actual registration[,] regardless of the duration of the section 612(a) obligation"), *with* GB.17-29 (arguing that Section 618(f) independently authorizes the government to obtain injunctive relief compelling a former agent to register for his

past activity, even absent a current obligation to register, no matter how much time has passed since the activity ended).

In *McGoff*, this Court rejected the government's view that perpetual enforcement was available, in relevant part because the provision at issue in *McGoff*—Section 618(e), defining the "continuing offense" of "failure to file"—"specifically incorporates the duration of the section 612(a) obligation to file as the factor governing the duration of the continuing offense." 831 F.2d at 1081; *see also id.* at 1079.[8] The same is true for the civil enforcement provision here: Section 618(f) authorizes the government to sue for injunctive relief when the defendant is "engaged in" a "violation of any provision of this subchapter"; "fails to comply with any of the provisions of this subchapter"; or "otherwise is in violation of the subchapter." Thus, here, as in *McGoff*, the "violation" is defined and limited by the terms of the "provision" claimed to be violated.

In *McGoff*, this Court analyzed the relevant text of Section 612(a), and concluded the obligation to register ended when the activity did:

---

[8] Section 618(e) does not say "as long as failure to file the statement exists," as the government urged. *Id.* at 1080. Instead, it says "'as long as such failure exists,'" which "plainly refers to the failure to file *'as is required by ... section 612(a).'" Id.* (emphasis added and citation omitted); *accord id.* at 1079 (emphasis by the Court).

- 30 -

"*the statutory obligation to file expires when the agent ceases activities on behalf of the foreign principal.* After all, once an individual has ceased his activities, he is no longer an 'agent of a foreign principal' within the meaning of FARA." 831 F.2d at 1082 (emphasis added) (quoted, A.194).

That conclusion was a necessary part of *McGoff*'s holding: the expiration of the § 612(a) obligation marked the end of the § 618(e) continuing offense, 831 F.2d at 1079-81, and the beginning of the five-year limitations period, *id.* at 1096. Because that meant the criminal charge was untimely, this Court affirmed the dismissal of McGoff's charges. *Id.*

In this case, the district court traced *McGoff*'s reasoning, and concluded that *McGoff*'s determination regarding when the § 612(a) registration obligation expires was part of its holding. A.189-94. Applying *McGoff*'s holding to the facts alleged here, the district court held that "Wynn's obligation to file a registration statement has years since passed, and the Government cannot now compel him to register, which is the only relief it seeks here." A.194. That result "requires dismissal." A.200.

### B. *McGoff* is the law of the Circuit

*McGoff* is binding precedent not only for the district court, A.194, but for this Court as well. *See Utility Air*, 885 F.3d at 720 (this Court is "bound by [its] prior panel decision"—"not only the result[,] but also those portions of the opinion necessary to that result.") (citation omitted).[9]

"It is as clear as clear can be that 'the *same issue* presented in a *later case* in the *same court* should lead to the *same result*.'" *FedEx Home Delivery v. NLRB*, 849 F.3d 1123, 1127 (D.C. Cir. 2017) (quoting *In re Grant*, 635 F.3d 1227, 1232 (D.C. Cir. 2011) (en banc)); *accord LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc) (emphasis in *LaShawn A.*). This rule—the law-of-the-circuit doctrine— "ensures stability, consistency, and evenhandedness in circuit law," *FedEx*, 849 F.3d at 1127 (citation omitted), and protects "the most basic principle of jurisprudence[:] that 'we must act alike in all cases of like nature.'" *LaShawn A.*, 87 F.3d at 1393 (citation omitted).

Under the law-of-the-circuit doctrine, "[o]ne three-judge panel ... does not have the authority to overrule another three-judge panel of the court." *Id.* at 1395. The law-of-the-circuit doctrine is not a discretionary

---

[9] The government tacitly concedes as much, acknowledging *McGoff*'s holding, GB.30, and preserving its "contrary" arguments for further review. GB.31.

prudential rule—it is derived from the legislation that structures federal courts of appeals. *Id.* By statute, courts of appeals sit in panels of three, and the decision of a panel is "'the decision of the court,'" *id.* (quoting 28 U.S.C. §46(c) and revision notes), which "may only be overturned by the full court," *id.*, or a higher court.

The government tries to escape *McGoff* with two arguments: that its determination is dicta, and that it is distinguishable because it was a criminal case. *See* A.194; GB.25. Both contentions are wrong.

### 1. *McGoff*'s determination regarding § 612(a) is not dicta

Later courts are bound "'not only by the result' of a prior case, 'but also by those portions of the opinion necessary to that result.'" A.195 (quoting *Int'l Union, Sec., Police & Fire Pros. of Am. v. Faye*, 828 F.3d 969, 974 (D.C. Cir. 2016)); *accord Utility Air*, 885 F.3d at 720 (both quoting *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 67 (1996)). The district court correctly found that *McGoff*'s determination of the duration of Section 612(a)'s filing obligation was necessary to resolving the statute-of-limitations issue, and thus is part of *McGoff*'s holding and is binding precedent. *See* A.189-91, 194-97. The government's brief before this Court hardly even attempts to contest this conclusion. *See* GB.25; GB.30 (acknowledging *McGoff*'s holding).

- 33 -

## 2. Section 612(a) must be interpreted consistently in criminal and civil cases

As the district court explained, the Supreme Court has held that "'we must interpret [a] statute consistently, whether we encounter its application in a criminal or noncriminal context.'" A.198 (quoting *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004)); *accord Bittner v. United States*, 143 S. Ct. 713, 725 (2023).

The principle that courts cannot interpret the same statute differently when applied civilly and criminally is well established in other statutory contexts. *See, e.g., Bittner*, 143 S. Ct. at 725 (Bank Secrecy Act); *Leocal*, 543 U.S. at 11 & n.8 (Immigration & Nationality Act); *United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 517-18 (1992) (National Firearms Act) (plurality opinion); *United States v. Turkette*, 452 U.S. 576, 581-85 (1981) (RICO). Indeed, the government *conceded* below that the rule of lenity, one of the many reasons driving *McGoff*, applies "to the interpretation of criminal statutes, *or to a statutory provision with both criminal and noncriminal application.*" A.117 (citing *Kasten v. Saint Gobain Performance Plastics Corp.*, 563 U.S. 1, 16 (2011)) (emphasis added). Though the government contended that Section 618(f) is not such a statute, because it authorizes only civil remedies, A.117, that is not correct. Failure to register as required by Section 612(a), the paradigmatic FARA violation, can be the subject of

either criminal prosecution or civil enforcement. *See McGoff*, 831 F.2d at 1075 (citing §§ 618(a), (f)).

*McGoff*'s holding that "the § 612(a) 'obligation to file expires when the agent ceases activities on behalf of the foreign principal'" disposes of this case, as the district court directly held. A.194.

### C.    *McGoff* **was correctly decided**

*McGoff* is not merely binding circuit precedent. It is also the best reading of the statute.

As *McGoff* noted, the third sentence of Section 612(a) addresses the duration of its obligation:

> The obligation of an agent of a foreign principal to file a registration statement shall, after the tenth day of his becoming such agent, continue from day to day, and *termination of such status shall not relieve such agent from his obligation to file a registration statement for the period during which he was an agent of a foreign principal.*

831 F.2d at 1082 (quoting § 612(a)) (emphasis by *McGoff* Court); *see also* A.191. Both *McGoff* and the district court took deep dives into this critical passage, analyzing competing interpretations of the phrase "for the period during which he was an agent of a foreign principal." *See* A.191-94; 831 F.2d at 1082-85. Did that "dangling phrase" modify "statement," meaning that an agent's termination of his "agent" status removed his obligation to file a registration statement "covering" the

- 35 -

period during which he had been an agent? A.191; 831 F.2d at 1083. Or did the phrase modify "obligation," meaning that termination of agent status did not relieve the agent "from his obligation for the period during which he was an agent of a foreign principal to file a registration statement"? A.192-93 (quoting *McGoff*, 831 F.2d at 1101 (Bork, J., dissenting)); *see also McGoff*, 831 F.2d at 1083. The *McGoff* dissent, Chief Judge Boasberg, and the government favored the former reading, deeming it "the 'more natural' reading," A.192; 832 F.2d at 1100; GB.32. The *McGoff* majority adopted the latter reading, in significant part as the more lenient reading of an ambiguous criminal statute. *See* 831 F.2d at 1084.

Chief Judge Boasberg was correct, however, that "[n]either reading is entirely satisfactory, and both create undesirable issues of surplusage and ambiguity that cannot be fully resolved on the text alone." A.191. This Court likewise was correct that "[n]either of these possible readings can confidently be embraced on the basis of grammatical structure alone." *McGoff*, 831 F.2d at 1083. Attempting to resolve Section 612(a)'s ambiguity solely on the text involves competing statutory canons—pitting the canons of "the last antecedent" and the "nearest-reasonable-referent" against the canon against surplusage, for instance, *see id.*; *see also id.* at 1100 (Bork, J., dissenting), as well as

meandering legislative history, *id.* at 1085-93, and speculation about how Congress might have written the statute differently. *See id.* at 1093-94; *id.* at 1101 (Bork, J., dissenting); A.193.

But the meaning of this one poorly drafted piece of text should not turn solely on finely-sliced grammar and syntax rules, or on competitive wielding of Sutherland or Scalia & Garner—much less on something as nebulous as which reading seems "more natural." A.192 (quoting 832 F.2d at 1083; *id.* at 1100 (Bork, J., dissenting)). There is no denying the text's ambiguity. *See McGoff*, 828 F.2d at 1083, 1084, 1093, 1096; A.193, 194. Because the statute can give rise to criminal liability, that alone requires applying the rule of lenity to resolve this issue as *McGoff* did. *See* 831 F.2d at 1095-96 (collecting authorities); *accord Bittner*, 143 S. Ct. at 724-25 (where a statute provides both civil and criminal penalties for the same conduct, "the rule of lenity, not to mention a dose of common sense, favors a strict construction."); *United States v. Davis*, 139 S. Ct. 2319, 2332 (2019); *see* Sec. III.B.2, *supra*.

But the *McGoff* majority interpretation is also the better one for three additional independent reasons: (1) it imposes a temporal limiting principle rather than a perpetual obligation; (2) it is consistent with FARA's focus on "the here and now," and the public's need for present

understanding; and (3) it is consistent with the prospective nature of injunctive relief.

*First*, as this Court noted in *McGoff*, the government's interpretation "would virtually eliminate the statute of limitations for failure to file under FARA." *McGoff*, 831 F.2d at 1093. Even setting lenity concerns aside, that result would be contrary to the common-law principles against which Congress legislated, *id.* at 1078-79, 1093, and of dubious constitutional validity in criminal cases, *id.* at 1095. "Although Congress indisputably enjoys power to provide no statute of limitations," it is extraordinarily doubtful it would do so implicitly, rather than expressly in the code chapter dealing with limitations (18 U.S.C. ch. 213). *McGoff*, 831 F.2d at 1093.

The government responds that lack of a temporal limit does not matter under Section 618(f), because Section 618(f) concerns civil enforcement, not prosecution. *See* GB.25. But that is no answer, where every substantive provision of FARA, including Section 612(a), can be the subject of either criminal or civil enforcement. *See* Sec. III.B.2, *supra*. But even if some FARA provisions were enforceable only civilly, not criminally, imposition of a temporal limit would still be appropriate for two remaining reasons: FARA's purpose to require *prompt* disclosures, which allow the public and the government to evaluate

- 38 -

them *contemporaneously*, and the traditional purpose of injunctive relief—to prevent *prospective, imminent harm*.

As the *McGoff* majority explained, FARA's terms consistently reflect a focus on the present, not the past.[10] For instance, FARA's definition of "agent of a foreign principal" "focuses solely on the agent who is acting, rather than the agent who has previously acted." 831 F.2d at 1082. "Nothing in the definition indicates that it operates counterintuitively to label forever someone as an 'agent of a foreign principal' because that individual once acted in such a capacity." *Id.* Similarly, the information required to be contained in registration statements "focus[es] on *ongoing* relationships between agents and principals," and its provisions addressing supplementation and record preservation contemplate *termination* of the agency relationship (as opposed to continuation into perpetuity), and with it, termination of the filing requirement. *Id.* (emphasis in original).

The testimony of Associate Attorney General J.W. Yeagley in support of the civil remedy further shows an animating concern with encouraging *prompt* disclosures by *current*, not former, foreign agents:

---

[10] "It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 666 (2007) (citation omitted).

> [T]he mere fact that we have the authority on the books, we believe, will result in a quicker and more favorable response to our solicitation of greater detail in answer to questions on the registration and also on the supplemental statement.
>
> We also, of course, recognize that it is an excellent remedy against the person who has not registered and who *is* acting.... If we would enjoin them they would come in and register in a hurry particularly if we had a temporary injunction....
>
> We do not anticipate a great number of suits being filed.... [A]gain I would say that the very fact that we have this authority is going to cause greater voluntary compliance.[11]

Such reasoning and testimony are consistent with FARA's goal "to permit, *promptly*, evaluation of these activities *as they are undertaken*," 831 F.2d at 1082 (emphasis added). That purpose is not served by compelling disclosures months or years after the fact.

Nor is such a backward-looking remedy consistent with the purpose of injunctive relief, "to prevent future violations." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953) (citing *Swift & Co. v. United States*, 276 U.S. 311, 326 (1928)). Injunctive relief is "'a drastic remedy' and should not be granted lightly, especially when the conduct has ceased." *SEC v. Steadman*, 967 F.2d 636, 648 (D.C. Cir. 1992)

---

[11] *Foreign Agents Registration Act Amendments*: *Hearing on S.693 before the S. Comm. on Foreign Relations.*, 89th Cong., 1st Sess. 60-61 (1965).

- 40 -

(citation omitted). Because an injunction is prospective relief, "designed to prevent future misconduct rather than to compensate for or to punish past violations, ... the court must determine 'whether the defendant's past conduct indicates that there is a reasonable likelihood of further violations in the future.'" *SEC v. Falstaff Brewing Corp.*, 629 F.2d 62, 77 (D.C. Cir. 1980) (citations omitted).

*McGoff's* holding that FARA requires registration only while a person is acting as an agent of a foreign principal is consistent with these well-established principles. If an agent of a foreign principal is advocating for a foreign government's position to the U.S. government or publicly spreading foreign propaganda, the government should be able to make that agent register to allow those messages to be considered contemporaneously in their proper context. But the extraordinary remedy of injunctive relief has historically not been available simply to right past wrongs.

The *McGoff* majority did not "refuse to accept the premise" that civil injunctive remedies would be unavailable after the obligation to register expired at the end of an agency relationship, as the government contends. GB.27; *see* 831 F.2d at 1094 n.32. Instead, its use of the "arguendo" qualifier simply recognized that that specific question was not before the Court in that criminal prosecution. Nor does the *McGoff*

- 41 -

interpretation create a loophole allowing "gamesmanship" or defiance with impunity. GB.2. If a foreign agent "chose to ignore FARA's registration requirements," believing that once he terminated any agency activities "no civil remedy' would exist," GB.2, "the Department of Justice [would be] far from powerless. The Government, after all, has available a full half-decade from the termination of the agency relationship to secure an indictment for the agent's willful failure to register under the Act." *Id.* at 1094 n.32; *accord id.* at 1089 n.27. That is a serious deterrent—hardly a comfort for scofflaws, or a "gaping hole" for them to exploit. GB.15.

## IV.  THE GOVERNMENT'S NEW ARGUMENT IS WRONG

Even if the Court were to consider the government's newly raised argument—and it should not—the government's interpretation of Section 618(f) is wrong.

According to the government, Section 618(f) has two separate prongs that have different temporal application: one applicable to "ongoing (or anticipated) violations" of FARA, and the other to "completed violations." GB.17. In the government's view, the first clause, applicable whenever "any person is engaged in or about to engage in any acts which constitute or will constitute a violation," authorizes civil enforcement against "current agents" of foreign

principals, GB.17, or against those "who are not yet, but are about to become, agents." GB.19. By contrast, the government contends, the second clause, applicable whenever "any agent of a foreign principal fails to comply" with any FARA provision, authorizes civil enforcement against "former agents," GB.17, i.e., "those who have ceased acting as agents of foreign principals, but who fail to register in compliance with FARA's requirements." GB.19-20.

No case has ever adopted this reading of Section 618(f), and to the best of Wynn's research, no legislator or litigant has ever endorsed it. The government's novel interpretation of Section 618(f) is not supported by that statute's text, structure, legislative history, or history of enforcement.

## A. Section 618(f)'s text does not authorize injunctions against "former agents"

The government's novel interpretation is not supported by the text of Section 618(f), much less unambiguously so.

### 1. None of the words in Section 618(f) support the government's temporal distinction

Most significantly, the verb tenses in Section 618(f) (invoked by the government, GB.19) do not support the government's attempted temporal distinction. *Both* clauses invoked by the government are written in the present (or future) tense: the first referring to any person

who "*is* engaged in or about to engage in any acts which *constitute* or *will constitute* a violation," and the second to "any agent of a foreign principal [who] *fails* to comply with any" of FARA's statutory or regulatory provisions. Section 618(f). The text does not refer to "an agent of a foreign principal who *failed* to comply with the statute," GB.17 (emphasis added), nor to those "who have already acted as agents but who 'fail[] to comply with' FARA's requirements," GB.19, as the government contends.

The nouns also carry no temporal modifiers. The second prong does not say "any former agent," "past agent," or "agent no longer engaged in activities on behalf of a foreign principal," as the government would read it. Instead, it says "any agent of a foreign principal," meaning *current* agent, one who currently satisfies the definition of "agent of a foreign principal" under Section 611(c).

### 2.    The government's dichotomy is false

In addition, the government's purported discernment of two prongs, one present and one past, is incomplete. The government neglects a third segment of the text, "or otherwise is in violation of the subchapter." § 618(f). The dichotomy the government seeks to portray between one clause aimed at present violations and one aimed at the past does not account for this third clause. More significantly, this third

clause, like *both* of the others, refers to the *present*: It covers "any agent" (current, not former) who otherwise "*is* in violation of the subchapter." § 618(f) (emphasis added).

Thus, every temporal indicator contained in Section 618(f)—"is engaged in," "is ... about to engage in," "constitute or will constitute a violation," "any agent" (not former agent), "fails to comply," and "otherwise is in violation"—refers to the present, except for "will constitute," which refers to the future. Not one word in Section 618(f) refers to someone who occupied a status in the past, or acted or failed to act in the past. No statutory text supports the government's argument that part of the statute authorizes compliance orders directed at former agents to enforce past, not current, obligations.[12]

---

[12] The government's reliance on cases from other contexts is misplaced. GB.28-29 & n.6. The statutes in the elections and labor areas, unlike Section 618(f) here, specifically authorize injunctions addressing past violations—showing that Congress knows how to so provide when it wants to. *See* 52 U.S.C. § 30109(a)(6)(B) (authorizing an injunction in the elections context where "the person involved *has committed*, or is about to commit . . . a violation") (emphasis added); 29 U.S.C. § 440 (authorizing an injunction in the labor context when a "person *has violated* or is about to violate any of the provisions of this subchapter").

The statute in the securities area expressly allows broad-ranging equitable relief in any case brought by the Commission, and prescribes a ten-year limitations period, thereby expressly allowing injunctions based on past violations. *See* 15 U.S.C. § 78u(d)(5), (8)(B). Moreover, the cases cited by the government are inapposite. *See FEC v. Comm. of 100*

### 3. Section 618(f)'s remedies do not support the government's interpretation

The remedies in Section 618(f) do not support the government's urged temporal dichotomy, as the government claims. *See* GB.20.

It is true that the remedies listed in Section 618(f)—injunctions against certain acts or orders to comply with certain obligations—appear to correspond to the predicate scenarios that may give rise to them. A "person engaged in ... acts which constitute" FARA violations, for instance, may be either "enjoin[ed]" from committing "such acts," or "enjoin[ed] ... from continuing to act as" a foreign agent, while an "agent of a foreign principal" who "fails to comply with any of the provisions" of FARA may be "order[ed]" to "compl[y] with any appropriate provision" of the statute. § 618(f). But that says nothing to support the government's conclusion that a *former* agent of a foreign principal, who has ceased such activity and is therefore under no present obligation to file, may nonetheless be ordered to comply with a past registration obligation that has expired. *See* GB.20. Under *McGoff*, 831 F.2d at 1082, such a requirement does not flow from Section 612(a), and there is no

*Democrats*, 884 F. Supp. 1, 2 (D.D.C. 1993) (obligation to file reports was not even based on the statute, but instead upon agreements between the FEC and an individual filer); *SEC v. VTR, Inc.*, 410 F. Supp. 1309, 1312 (D.D.C. 1975) (involving a contempt proceeding for alleged noncompliance with an injunction imposed by consent).

other "appropriate provision" of FARA that imposes such a requirement. § 618(f).

### 4.    The canon against surplusage does not support the government's interpretation

The government's contention that the district court's decision renders the so-called second prong of Section 618(f) "pure surplusage" is wrong. GB.19.

By applying whenever "*any person* is engaged in or about to engage in any acts which constitute or will constitute a violation of" FARA, the first prong of Section 618(f) (emphasis added) applies to a person currently acting as an agent of a foreign principal who has not registered—i.e., who has violated FARA. In contrast, by applying whenever "*any agent of a foreign principal* fails to comply with any of the provisions of" FARA or regulations issued thereunder, the second prong of Section 618(f) (emphasis added) applies to a registered agent of a foreign principal who has failed to comply with some aspect of FARA's detailed regulatory requirements for the registration statement. *See* 22 U.S.C. § 612(a)(1)-(11), (b), (c). The second prong's use of "fails to comply with" instead of the first prong's use of "constitute[s] . . . a violation" supports this interpretation. FARA—including the section immediately following § 618(f)—consistently uses the verb "comply" to reference

agents who have filed registration statements that are deficient, and not to persons who fail to register in general. *See* 22 U.S.C. § 618(g) ("Deficient registration statement. If the Attorney General determines that a registration statement does not comply with the requirements of this subchapter or the regulations issued thereunder, he shall so notify the registrant in writing, specifying in what respects the statement is deficient."); *see also* 22 U.S.C. § 612(d) (noting that filing a registration statement "shall not necessarily be deemed a full compliance" with FARA).Thus, the government's interpretation is not the only reading that gives "independent force" to the second clause in Section 618(f). GB.20. By covering agents who register but otherwise fail to comply with FARA's detailed requirements, the clause is not redundant at all.

In any event, "'[s]ubstantial' overlap between provisions 'is not uncommon in criminal statutes,'" *United States v. Fischer*, 64 F.4th 329, 348 (D.C. Cir. 2023), or in statutes with both criminal and civil application, *see McGoff*, 831 F.2d at 1075, 1094 n.32. Moreover, "surplusage" or "'superfluity is not typically, by itself, sufficient to require a particular statutory interpretation.'" *Fischer*, 64 F.4th at 348 (citations omitted). "Indeed, 'we find redundancies that are ... pitted against otherwise plain meanings to be feeble interpretive clues.'" *Id.* (citation omitted). Finally, the canon against superfluity carries force

only where it favors an interpretation "which *avoids* surplusage." *Id.* (citation omitted) (emphasis in original). Where both interpretations "create undesirable issues of surplusage," as here, A.191, "the canon against superfluity carries little weight." *Fischer*, 64 F.4th at 349.

In sum, nothing in Section 618(f)'s text supports the government's interpretation.

## B.    FARA's history and structure do not support the government's interpretation

The government's reliance on legislative history pre-dating FARA's civil enforcement provision is badly misplaced. GB.21-22. The government points to *McGoff*'s summary of legislative history surrounding the 1950 FARA amendments, in which Congress explained that under then-existing law, a criminal defendant required to register under FARA could "evade the Act's requirements by ceasing their activities and claiming as an affirmative defense that withdrawal from an agency relationship automatically eliminated liability for failure to file." *McGoff*, 831 F.2d at 1087. However, that was a reference to trial strategy in cases involving criminal liability, not civil injunctive suits. *Id.* at 1089 n.27. Civil injunctive suits (which do not impose "liability" at

- 49 -

all) did not exist at the time and were not added to FARA until the 1966 amendments.[13]

This Court has also stated that where legislative history is scant, the Court at least may surmise, in the "absence of firmer mooring in the statutory language or legislative history," that Congress would not have intended far-reaching impractical or unjust results. *McGoff*, 831 F.2d at 1094. If civil enforcement remedies were not time-limited, as the government argues, they would create the prospect of long-delayed trials over whether a defendant had acted as an agent of a foreign principal long ago. Such trials would "present[] serious practical problems; to state the obvious, witnesses may have died, memories may have faded." *Id.* It is unlikely Congress intended such results, *id.*, especially when "[n]othing in the definition" of an "agent of a foreign principal" "indicates that it operates counterintuitively to label forever someone as an 'agent of a foreign principal' because that individual once acted in such a capacity." *Id.* at 1082.

As *McGoff* emphasized, if Congress had intended open-ended, unending liability for past failures to register, it would have spoken clearly, and such a drastic step would have engendered debate. *McGoff*,

---

[13] An Act to Amend the Foreign Agents Registration Act of 1938, Pub. L. 89-486, 80 Stat. 244 (1966).

831 F.2d at 1090. There was no such plain statement or debate because Congress did not intend the novel interpretation advanced by the government.

The government's reliance on FARA's purported "structure" (GB.23-24) fares no better. The fact that criminal enforceability extends for five years beyond termination of the substantive obligation does not mean civil enforcement must do so as well, absent statutory authorization. "[L]egislative intention, without more, is not legislation," *id.* at 1076, and courts must interpret the language of the statute. *Id.* at 1077. Here, there is neither legislative intention nor language that would extend civil enforcement in the manner suggested by the government.[14]

## CONCLUSION

For all of the foregoing reasons, the Court should affirm the judgment of the district court.

---

[14] The government's argument that the district court erred in following *McGoff*, GB.25-29, is addressed in Part III, *supra*.

Respectfully submitted,


By: _/s/ Bruce Bishop_____

Reid H. Weingarten (No. 365893)        Robert D. Luskin (No. 293621)
Brian M. Heberlig (No. 455381)         Leo R. Tsao (474144)
Bruce C. Bishop (No. 437225)           PAUL HASTINGS LLP
Nicholas P. Silverman (No. 64143)      2050 M Street N.W.
STEPTOE & JOHNSON LLP                   Washington, D.C. 20036
1330 Connecticut Ave., N.W.            (202) 551-1700
Washington, D.C. 20036
(202) 429-3000

*Attorneys for Defendant-Appellee Stephen A. Wynn*

June 14, 2023

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the 13,000 word limit of Fed. R. App. P. 32(a)(7)(B) because it contains 10,750 words, excluding those sections of the brief exempted by Fed. R. App. P. 32(f).

I further certify that this document complies with the requirements of Fed. R. App. P. 32(a)(5) and (a)(6) because it has been prepared in a proportionally spaced typeface using 14-point Century Schoolbook.

  /s/    *Bruce Bishop*

Bruce C. Bishop

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of June 2023, a copy of the foregoing Brief for Stephen A. Wynn was filed electronically via the Court's electronic filing system. Notice will be sent to all parties.

/s/    *Bruce Bishop*

Bruce C. Bishop

- 54 -