ORAL ARGUMENT NOT YET SCHEDULED
No. 22-5328

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

―――――――――――――

ATTORNEY GENERAL OF THE UNITED STATES,

*Plaintiff-Appellant*,

v.

STEPHEN A. WYNN,

*Defendant-Appellee.*

―――――――――――――

On Appeal from the United States District Court
for the District of Columbia

―――――――――――――

REPLY BRIEF FOR THE
ATTORNEY GENERAL OF THE UNITED STATES

―――――――――――――

MATTHEW G. OLSEN
Assistant Attorney General for
National Security

JEFFREY M. SMITH
JOSEPH P. MINTA
Attorneys, Appellate Unit
National Security Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
Tel.: 202-353-9055
joseph.minta@usdoj.gov

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.................................................................ii

GLOSSARY ..................................................................................v

INTRODUCTION...........................................................................1

SUMMARY OF ARGUMENT .........................................................1

ARGUMENT .................................................................................5

   I.   FARA's Civil Enforcement Provision Authorizes Suits
      Against Former Agents .........................................................5

     A.   Use of the Present Tense Does Not Define the Scope of
        Section 618(f) .............................................................6

     B.   Wynn's Argument Regarding Surplusage Is Meritless
        Because There Is No Third Clause in Section 618(f)...............11

     C.   The Statute's Structure and History Confirm the
        Government's Interpretation ..........................................16

   II.   Any Reliance on *McGoff* by the District Court To Interpret
       Section 618(f) Was Misplaced ...........................................19

   III.  No Procedural Bar Applies to the Government's Argument.........23

     A.   The Government's Argument Is Not Forfeited.......................24

     B.   The Invited Error Doctrine Is Inapplicable ...........................29

CONCLUSION .............................................................................30

CERTIFICATE OF COMPLIANCE....................................................31

CERTIFICATE OF SERVICE...........................................................32

## <u>TABLE OF AUTHORITIES</u>

**Cases** <span style="float:right"><u>Page</u></span>

*Abercrombie v. Clarke,*
   920 F.2d 1351 (7th Cir. 1990)................................................................9

*Carr v. United States,*
   560 U.S. 438 (2010)...............................................................................9

*Citizens United v. Fed. Election Comm'n,*
   558 U.S. 310 (2010).......................................................................27, 28

*Coal. for Clean Air v. S. Cal. Edison Co.,*
   971 F.2d 219 (9th Cir. 1992)................................................................9

*District of Columbia v. Air Fla., Inc.,*
   750 F.2d 1077 (D.C. Cir. 1984)...........................................................28

*Johnson v. City of Shelby,*
   574 U.S. 10 (2014) ...............................................................................24

*Lebron v. Nat'l R.R. Passenger Corp.,*
   513 U.S. 374 (1995)..............................................................................25

*Meese v. Keene,*
   481 U.S. 465 (1987)..............................................................................11

*Mellouli v. Lynch,*
   575 U.S. 798 (2015)..............................................................................18

*Mont v. United States,*
   139 S. Ct. 1826 (2019) ......................................................................8, 9

*Nemariam v. Fed. Democratic Republic of Ethiopia,*
   491 F.3d 470 (D.C. Cir. 2007)............................................................27

*Pugin v. Garland,*
   19 F.4th 437 (4th Cir. 2021) ..............................................................22

*Rowland v. California Men's Colony, Unit II Men's Advisory Council,*
   506 U.S. 194 (1993).................................................................................9

*Schneider v. Kissinger,*
   412 F.3d 190 (D.C. Cir. 2005)............................................................28

*Authorities on which we chiefly rely are marked with asterisks.

## TABLE OF AUTHORITIES (cont'd)

Page

\*_Shea v. Kerry_,
   796 F.3d 42 (D.C. Cir. 2015)................................................. 4, 26, 27, 28

_Skinner v. Switzer_,
   562 U.S. 521 (2011).................................................................24

_United States v. Brown_,
   892 F.3d 385 (D.C. Cir. 2018)............................................30

_United States v. Islam_,
   932 F.3d 957 (D.C. Cir. 2019)............................................27

_United States v. Long_,
   997 F.3d 342 (D.C. Cir. 2021)............................................29

_United States v. Marsh_,
   829 F.3d 705 (D.C. Cir. 2016)..............................................9

\*_United States v. McGoff_,
   831 F.2d 1071 (D.C. Cir. 1987)........................ 3, 4, 16, 18, 20

_United States v. Summerlin_,
   310 U.S. 414 (1940)................................................................18

_United States v. Taylor_,
   142 S. Ct. 2015 (2022) ...........................................................5

_United States v. Vargas_,
   393 F.3d 172 (D.C. Cir. 2004).............................................9

_USAir, Inc. v. Dep't of Transp._,
   969 F.2d 1256 (D.C. Cir. 1992)............................................28

\*_Utility Solid Waste Activities Group v. EPA_,
   901 F.3d 414 (D.C. Cir. 2018).......................................2, 7, 8

_Wagner v. Taylor_,
   836 F.2d 596 (D.C. Cir. 1987)..............................................29

_Wallace v. Kato_,
   549 U.S. 384 (2007)................................................................10

_Winder v. Erste_,
   566 F.3d 209 (D.C. Cir. 2009)..............................................14

**TABLE OF AUTHORITIES** (cont'd)

Page

**Statutes**

1 U.S.C. § 1 ................................................................................. 9

15 U.S.C. § 78u ......................................................................... 10

*22 U.S.C. § 618(f) ........................................... 1, 2, 5, 10, 12, 14, 15

42 U.S.C. § 1983 ....................................................................... 10

**Other Authorities**

5 Wright & Miller, Federal Practice and Procedure § 1219
  (3d ed. 2004) ......................................................................... 24

Bryan A. Garner, *The Chicago Guide to Grammar, Usage, and
  Punctuation* (2016) ............................................................... 12

*Foreign Agents Registration Act Amendments: Hearing on S.693 Before
  the S. Comm. on Foreign Relations*, 89th Cong. (1965) ...................... 17

# <u>GLOSSARY</u>

FARA ...................................................... Foreign Agents Registration Act

## INTRODUCTION

This appeal presents two competing interpretations of 22 U.S.C. § 618(f), the civil enforcement provision of the Foreign Agents Registration Act (FARA).  Section 618(f)'s two clauses either separately authorize enforcement against current and former agents, or entirely duplicate each other.  The statute either equally incentivizes all agents to register, or it is irrelevant to agents like Wynn who act on behalf of a foreign principal for only a short time (or who successfully hide their agency from the government until completion).  It either symmetrically allows both civil and criminal enforcement of FARA's registration requirement after an individual's foreign agency has ended, or only allows criminal enforcement at that point.  This Court should adopt the coherent, symmetrical interpretation of Section 618(f) that avoids surplusage and best fulfills FARA's stated purpose.  The district court's contrary conclusion should be reversed.

## SUMMARY OF ARGUMENT

The Complaint alleges that Wynn acted as an agent of a foreign principal without registering under FARA.  Section 618(f) of FARA authorizes the Attorney General to bring suit "whenever any agent of a

1

foreign principal fails to comply with" FARA.  22 U.S.C. § 618(f).  The

Complaint seeks "an order requiring compliance with" FARA's

registration requirement.  *Id.*  This suit thus falls squarely within the

plain text of Section 618(f), specifically its second clause, as the

government's opening brief explained.  *See* Gov't Br. 18-21.  Nothing in

Wynn's response brief casts any doubt on that conclusion.

Wynn first claims that Section 618(f) should be given a narrower

reading because it is phrased in the present tense.  Br. 43-44.  On the

contrary, the English language naturally uses the present tense to

describe triggering conditions, such as those set out in Section 618(f),

without limiting their scope.  This Court endorsed that linguistic

principle in analyzing a similarly structured statute in *Utility Solid

Waste Activities Group v. EPA*, 901 F.3d 414 (D.C. Cir. 2018).  Other

courts, including the Supreme Court, have likewise rejected attempts to

temporally bound statutory language in the way Wynn suggests, and a

survey of the United States Code reveals myriad statutes phrased in

the present tense that nonetheless reach past, completed conduct.

Wynn is also wrong in claiming that the government's analysis of

Section 618(f)'s text omits a purported "third clause" in the statute's

2

first sentence.  *See* Br. 44-45.  The language Wynn cites is properly read as grammatically part of the second clause.  Consequently, Wynn's attempt to avoid the canon against surplusage fails, *see* Br. 47-48, and this Court should reject Wynn's request to jettison the canon in its entirety, *see* Br. 48-49.

While the plain text of Section 618(f) is therefore sufficient to resolve this appeal in the government's favor, FARA's structure and history confirm the government's interpretation.  *See* Gov't Br. 21-25.  There is no dispute that, as this Court recognized in *United States v. McGoff*, 831 F.2d 1071 (D.C. Cir. 1987), Congress, when it enacted Section 618(f), had already rejected in the criminal context the argument Wynn now asserts in the civil context.  Wynn implicitly agrees that nothing in the legislative history of Section 618(f) suggests Congress instead sought to reopen an obvious loophole in FARA.  *See* Br. 49-50.  Significantly, Wynn also has no substantive response (*see id.* at 51) to the various structural elements of FARA that the government previously showed support its interpretation.

Accordingly, to the extent the district court relied on the plain text of Section 618(f) or FARA's structure or history to reach its contrary

3

interpretation, that was error.  To the extent the district court relied on
*McGoff* to reach that result, it was also error.  *See* Gov't Br. 25-29.
Wynn concedes that the "specific question [presented here] was not
before the Court" in *McGoff*.  Br. 41.  Indeed, *McGoff* mentioned Section
618(f) only in passing, and Wynn's attempts to conflate *McGoff*'s
analysis of FARA Section 612(a) with this appeal's questions about
Section 618(f), *see* Br. 28-42, fall apart under scrutiny.

Instead, Wynn asks this Court to allow the district court's
erroneous interpretation of Section 618(f) to stand for procedural
reasons.  *See* Br. 20-28.  However, he is wrong that the government
forfeited its arguments regarding Section 618(f), and his reliance on the
allegations in the Complaint reflects a misunderstanding of the law
regarding forfeiture.  The government explicitly relied on Section 618(f)
in its opposition below.  *See* A116-18.  Even if it had not, this would only
be a new argument in support of the government's consistent claim that
Wynn should be compelled to remedy his failure to register.  Such
arguments are not subject to forfeiture, which applies to claims, not
arguments.  *Shea v. Kerry*, 796 F.3d 42 (D.C. Cir. 2015).  Wynn's
allegation that the government invited the district court's erroneous

4

interpretation of Section 618(f) reflects a similar misunderstanding of the relevant legal doctrine.  The government never suggested the narrow reading of Section 618(f) that the district court adopted, let alone made an intentional, strategic decision to ask the court to do so.  Thus, no procedural bar stands in the way of this Court recognizing that Section 618(f) authorizes the Attorney General to bring this suit.

## ARGUMENT

## I.    FARA'S CIVIL ENFORCEMENT PROVISION AUTHORIZES SUITS AGAINST FORMER AGENTS

As previously explained, Gov't Br. 18-21, the plain text of Section 618(f) authorizes this suit.  The provision's first clause allows a civil enforcement suit "[w]henever . . . any person is engaged in or about to engage in any acts which constitute or will constitute a violation of any provision" of FARA.  Its second clause authorizes suit "whenever any agent of a foreign principal fails to comply with any of the provisions of [FARA], or otherwise is in violation" of FARA.  This Court should "not lightly assume Congress adopts two separate clauses in the same law to perform the same work." *United States v. Taylor*, 142 S. Ct. 2015, 2024 (2022), and in this instance, this Court should read the first clause to

apply to current or prospective agents, and the second to apply to former agents who, like Wynn, fail to comply with FARA's requirements.  If any doubt existed about this interpretation, FARA's structure and history confirm that it is correct.  *See* Gov't Br. 21-25.

In his response, Wynn does not dispute that his interpretation of Section 618(f) would allow numerous foreign agents to escape the statute's requirements.  He claims his reading is nonetheless correct because "[b]oth clauses . . . are written in the present (or future) tense," Br. 43, and because the government's analysis "does not account for [a] third clause," *id.* at 44.  Neither argument has merit.  Wynn also barely disputes that FARA's structure and history support the government's interpretation, *id.* at 49-51, and he offers no competing indications that Congress intended to enact a largely toothless civil enforcement provision.

## A.    Use of the Present Tense Does Not Define the Scope of Section 618(f)

That the verbs in Section 618(f) are written in the present tense does not suggest that the statute's reach is limited.  Rather, this is the natural way in which the English language expresses triggering

conditions, such as those listed in Section 618(f).  This Court and others
have not hesitated to read similar statutes written in the present tense
to reach completed events.

In *Utility Solid Waste Activities Group v. EPA*, 901 F.3d 414 (D.C.
Cir. 2018), this Court addressed a similar argument in construing 42
U.S.C. § 6903(14), which defines an "open dump" as "any facility or site
where solid waste is disposed of."  Just as Wynn argues that Section
618(f) requires a current, ongoing violation of FARA, industry
petitioners in *Utility Solid Waste* argued that this definition, with its
use of the present tense verb "is," required current, ongoing disposal
and excluded "inactive impoundments" where no new waste was being
deposited.  901 F.3d at 440.  This Court concluded that the statute
unambiguously included such inactive sites, 901 F.3d at 440-42,
explaining:

> Think of it this way: If a kindergarten teacher tells her
> students that they must clean up any drink that "is spilled"
> in the room, that would most logically be understood to mean
> that a student must clean up her spilled drink even if the
> spill is already completed and nothing more is leaking out of
> the carton.  A student who refused to clean up that
> completed spill (as Industry Petitioners would have it) might
> well find himself on time out.

*Id.* at 440.

The same logic applies to FARA Section 618(f).  Once a drink "is spilled," waste "is disposed of" at a site, or a foreign agent "fails to comply" with FARA's requirements, the necessary triggering condition has been met, and the described consequences follow.  That each of these triggering conditions is written in the present tense merely reflects the standard English preference to use the present tense in such conditional expressions.

The Supreme Court followed a similar path to reach its conclusion that an individual confined in pretrial detention "is imprisoned in connection with a conviction," 18 U.S.C. § 3624(e), when that individual is later convicted.  *See Mont v. United States*, 139 S. Ct. 1826 (2019).  Although at the time of detention it is not yet known whether the detention will ultimately be "in connection with a conviction," the present tense verb "is" did not foreclose this result.  Rather, the triggering condition can be satisfied at a point in time separate from the

detention.[1]  Other courts have similarly declined to limit a statute's

reach based on the use of the present tense.  *See, e.g., Coal. for Clean*

*Air v. S. Cal. Edison Co.*, 971 F.2d 219, 224 (9th Cir. 1992) (holding that

a statute that was triggered when the agency "disapproves a State

implementation plan submission" also applied to past disapprovals);

*Abercrombie v. Clarke*, 920 F.2d 1351, 1359 (7th Cir. 1990) (concluding

that a statute authorizing civil penalties "for each day during which

such violation continues" also permitted penalties for past violations).

---

[1] Before the Supreme Court's *Mont* decision, this Court had reached the opposite result, invoking the Dictionary Act's presumption "that the present tense generally does not include the past." *United States v. Marsh*, 829 F.3d 705, 709 (D.C. Cir. 2016) (quoting *Carr v. United States*, 560 U.S. 438, 448 (2010)), *abrogated by Mont*, 139 S. Ct. 1826.  Wynn does not rely on the Dictionary Act, and it has no applicability here.  By its express terms, the Dictionary Act only applies "unless the context indicates otherwise," 1 U.S.C. § 1, and "context" "means the text of the Act of Congress surrounding the word at issue, or the texts of other related congressional Acts . . . ." *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 199 (1993).  Furthermore, "[a] statute's structure is part of its context, and so is its purpose." *United States v. Vargas*, 393 F.3d 172, 174 (D.C. Cir. 2004).  As the government's opening brief explained, FARA's context strongly indicates the Dictionary Act's presumption is inapplicable here.

A brief survey of the United States Code reveals countless other examples of statutes written in the present tense that nonetheless reach past, completed conduct.  As explained in the government's opening brief, the Securities and Exchange Commission sues for past violations of its rules, *see* Gov't Br. 28, and in doing so it uses a statute written in the present tense.  *See* 15 U.S.C. § 78u ("Whenever . . . any person is engaged or is about to engage in acts or practices constituting a violation . . . .").  Similarly, Section 1983 of Title 42 applies whenever someone "subjects, or causes to be subjected," another to a deprivation of civil rights, but unquestionably reaches past, completed conduct.  *See, e.g.*, *Wallace v. Kato*, 549 U.S. 384 (2007) (discussing statute of limitations for false arrest civil suit where all criminal charges against plaintiff had been dropped).  Section 618(f) of FARA, like myriad other statutes, both uses the present tense and nonetheless reaches past, completed conduct.

Notably, Wynn's brief ignores the consequences of his narrow focus on the statute's present tense.  If the statute only applied to current agents, it would be entirely irrelevant to agents who act only for a short period of time.  Agents could also easily neuter the government's

10

civil enforcement power by conducting their activities clandestinely or merely ceasing their activities once a government investigation begins. Such gamesmanship and gaping loopholes run directly counter to the statute's stated goal of informing "the Government and the people of the United States . . . of the identity of such persons [so the government and the public] may appraise their statements and actions in the light of their associations and activities." *Meese v. Keene*, 481 U.S. 465, 469 (1987) (internal quotation marks omitted).  FARA's stated purpose thus confirms that the present tense does not limit Section 618(f)'s scope.

## B.    Wynn's Argument Regarding Surplusage Is Meritless Because There Is No Third Clause in Section 618(f)

Wynn next claims that the government's explanation of Section 618(f)'s two clauses aimed at ongoing (or anticipated) violations and past violations, respectively, "does not account for [a] third clause."  Br. 44.  On the contrary, the language Wynn cites— "or otherwise is in violation of the subchapter"—is not a separate grammatical clause, but rather part of the second clause.  Properly read, this language further supports a reading of Section 618(f) that reaches former agents and refutes Wynn's arguments regarding the canon against surplusage.

11

The first sentence of Section 618(f) begins with two subordinate clauses, each introduced by the word "whenever."[2]  Each of these clauses contains a distinct subject.  *See* Bryan A. Garner, *The Chicago Guide to Grammar, Usage, and Punctuation* 165 (2016) ("A clause is a grammatical unit that contains a subject, a finite verb, and any complements that the verb requires.").[3]  As previously explained, *see* Gov't Br. 19, the subject of the first clause ("person") emphasizes that it includes those who are not yet agents, but who are about to become agents through their anticipated actions.  The subject of the second clause ("agent of a foreign principal") is narrower precisely because the clause addresses "fail[ures] to comply" with FARA, which necessarily only involve those who have satisfied the statute's definitions.

---

[2] Wynn's brief (at 20) does not accurately quote the text of 22 U.S.C. § 618(f).  He incorrectly introduces a third "whenever" clause (including the typo "ran") that does not appear in the statute's text.  The correct text appears in the Statutory Addendum to the government's brief at S12-13.  *See also* Gov't Br. 17 (quoting the relevant portion).

[3] There is a third clause in the first sentence of Section 618(f), but that is not the language Wynn identifies, and it does not change the analysis.  The language beginning "the Attorney General may make . . ." is an independent clause triggered by the two subordinate clauses.

The language Wynn cites—"or otherwise is in violation of the subchapter"—contains no subject at all. Indeed, Wynn recognizes that it relies on the second clause's subject. *See* Br. 45 ("It covers 'any agent' . . . who otherwise 'is in violation of the subchapter.'"). Properly read, this language is thus a catch-all portion of the second clause, ensuring that all past violations fall within its scope. There is no third clause that the government's analysis omits.

This is not a mere grammatical quibble, as Wynn's misreading of the statute fatally infects his discussion of the canon against surplusage. Wynn attempts to distinguish between "the first prong's use of 'constitute[s] . . . a violation'" and the second clause's use of "the verb 'comply'" to argue that the second clause (but not the first) governs "agents who have filed registration statements that are deficient." Br. 47-48. However, correctly reading the catch-all language as part of the second clause means that both clauses address "violation[s]," and Wynn's purported distinction collapses. His reading would render Section 618(f)'s second clause entirely duplicative of the first. In contrast, when Section 618(f)'s two clauses are properly read to govern (a) ongoing (or anticipated) violations and (b) past violations of FARA,

13

respectively, "no provision [is] construed to be entirely redundant."

*Winder v. Erste*, 566 F.3d 209, 214 (D.C. Cir. 2009) (internal quotation

marks omitted).

      Wynn's proffered distinction also suffers from the flaw that there

is no plausible basis to distinguish between "persons who fail to register

in general," Br. 48, and those who purportedly register but do not fulfill

the statutory requirements in doing so. (Which category governs an

agent who files a blank piece of paper?) Individuals in either category,

if they continue to act as foreign agents, are "engaged in or about to

engage in . . . acts which constitute or will constitute a violation of"

FARA. If they have ceased their activities, their "fail[ure] to comply"

can be remedied through Section 618(f)'s second prong.

      Finally, Wynn's purported distinction between failures to register

and other FARA violations does not account for the various remedies

listed in Section 618(f). Wynn concedes that these remedies "correspond

to the predicate scenarios that may give rise to them." Br. 46. As

explained above, properly read, both clauses of Section 618(f)

encompass "violation[s]" of FARA, and thus under Wynn's reading there

would be no distinct "predicate scenarios" to justify Section 618(f)'s

separate remedies.  In contrast, under the government's reading, these distinct remedies address the distinct situations in which current (or anticipated) agents and former agents might be sued.  *See* Gov't Br. 20. In this way, Section 618(f)'s remedies again reinforce the conclusion that the statute reaches former agents.

In the end, Wynn is left to attempt to dismiss the canon against surplusage in its entirety.  *See* Br. 48-49.  But this attempt fails, too. While "substantial overlap between provisions is not uncommon in criminal statutes," Br. 48 (cleaned up), Section 618(f) is not a criminal statute.  Nor is it a "statute[] with both criminal and civil application." *Id.*  Rather, Section 618(f) solely describes a civil remedy against those, like Wynn, who fail to comply with FARA.  More importantly, Wynn is wrong in claiming that both the government's and his interpretation of Section 618(f) raise surplusage concerns.  *See* Br. 49.[4]  As explained above, reading Section 618(f)'s two clauses to separately address

---

[4] Wynn misleadingly quotes the district court's statement that competing readings *of Section 612(a)* each "create undesirable issues of surplusage."  Br. 49 (quoting A191).  The district court did not conclude that the government's reading of Section 618(f) created any issues of surplusage.

15

ongoing and past violations, respectively, gives each clause independent meaning.

### C.    The Statute's Structure and History Confirm the Government's Interpretation

While Section 618(f)'s plain text is sufficient to resolve this appeal, the government previously explained how FARA's structure and history confirm that Section 618(f) applies to former agents. *See* Gov't Br. 21-25. With respect to history, Wynn does not dispute that Congress previously acted to foreclose, in the criminal context, the argument he now makes in the civil context. *See* Br. 49-50. All agree, as this Court has explained, that in 1950 Congress acted to eliminate the potential loophole "that withdrawal from an agency relationship automatically eliminated liability for failure to file." *McGoff*, 831 F.2d at 1087.

The legislative backdrop against which Congress enacted FARA's civil enforcement provision in 1966 is thus not in dispute. Wynn further agrees that the "legislative history is scant" with respect to the 1966 amendments, Br. 50, and he does not dispute that it contains no indication Congress intended to affirmatively re-introduce this loophole

16

with respect to civil enforcement actions.[5]  Instead, he suggests this Court "may surmise" that Congress did so to avoid "the prospect of long-delayed trials."  *Id.*  But this would entail a strange measure of delay. All agree that if a foreign agent is continuing to act as such, the government may use Section 618(f) to compel his delinquent registration back to the beginning of his agency, whether that was three months or three decades ago.  However, if a foreign agent ceased his activities mere weeks before the government files suit, Wynn claims "the prospect of long-delayed trials" should foreclose that civil action. Nothing in FARA's text or history supports Wynn's "surmise."  In any

---

[5] Although Associate Attorney General Yeagley described Section 618(f) as "an excellent remedy against" unregistered current agents because it could thwart their ongoing activities, *see* Br. 40, he did not suggest that this was the only way in which the provision could be used. Indeed, the portions of his comments that Wynn omits suggest the same parallel between FARA's criminal and civil enforcement provisions that the government relies on.  *See Foreign Agents Registration Act Amendments: Hearing on S.693 Before the S. Comm. on Foreign Relations*, 89th Cong. 60-61 (1965) ("Prosecution is not nearly as satisfactory . . . as carrying out the provisions of the bill by injunction. . . . We do expect to file [civil enforcement actions] when we do not get the compliance we think the law calls for.").

event, Wynn does not claim that the timing of this case triggers such

concerns.[6]

Wynn's response to the government's structural arguments is even

more paltry.  The government pointed to three structural features of

FARA that each support its reading:

- Because "[s]tatutes should be interpreted as a symmetrical and coherent regulatory scheme," *Mellouli v. Lynch*, 575 U.S. 798, 809-10 (2015), FARA's civil remedy should remain available at least as long as criminal liability remains.  *See* Gov't Br. 23-24.

- Because FARA's civil enforcement mechanism provides a less severe enforcement method, the government should not be left solely to decide whether "to employ a Howitzer" of criminal enforcement against former agents.  *See* Gov't Br. 24 (quoting *McGoff*, 831 F.2d at 1094).

- Because FARA's filing and preservation requirements extend beyond the termination of an agent's activities, FARA's civil enforcement mechanism should likewise remain available.  *See* Gov't Br. 24-25.

In response, Wynn offers only the bromide that "legislative

intention, without more, is not legislation."  Br. 51 (cleaned up).  Yet,

---

[6] Wynn's argument also proves too much, as it would require a limitations period for every civil suit.  Particularly where the government is the plaintiff, as in FARA, such a requirement has long since been rejected.  *See United States v. Summerlin*, 310 U.S. 414, 416 (1940) ("It is well settled that the United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights.").

18

the structural aspects of FARA described above *are* enacted legislation and provide concrete evidence of the "legislative intention [to] extend civil enforcement in the manner suggested by the government" that Wynn baldly denies.  *Id*.  This Court should reject a reading of Section 618(f) that runs counter to FARA's history and structure.

## II.  ANY RELIANCE ON *MCGOFF* BY THE DISTRICT COURT TO INTERPRET SECTION 618(f) WAS MISPLACED

In dismissing this suit, the district court held that "Section 618(f) merely creates the cause of action," and that the government must identify a separate, ongoing violation of FARA.  A198.  To the extent this holding was based on Section 618(f)'s plain language, or the structure and history of FARA, this was error for the reasons explained above.  To the extent the district court's holding was based on *McGoff*, *see* A189 ("*McGoff* forecloses the Government's interpretation of the statute and requires dismissal of the suit."), it was also error.  *See* Gov't Br. 25-29.

Although Wynn purports to defend the district court's reliance on *McGoff*, *see* Br. 51 n.14, he does so largely by attacking strawmen that

are irrelevant to this appeal.[7]  The government's opening brief (at 25)

explained that *McGoff* offered no interpretation of Section 618(f) and

mentioned this section of FARA only in passing.  Thus, *McGoff* could

not provide a basis for the district court's conclusion that Section 618(f)

uniquely requires the government to identify an ongoing violation.  In

response, however, Wynn primarily attempts to defend the district

court's reliance on *McGoff*'s interpretation of Section 612(a), not Section

618(f).  *See* Br. 28-42.  To be sure, the government respectfully disagrees

with *McGoff*'s interpretation of Section 612(a), *see* Gov't Br. 29-37, but

that is for another day.

  When it comes to the proper interpretation of Section 618(f), Wynn

only briefly attempts to rehabilitate the district court's conclusion.

First, Wynn attempts to analogize this case to *McGoff*, claiming that

"[b]oth cases turn on the same question: when does the obligation to file

under Section 612(a) expire?"  Br. 29.  But that is not the question the

---

  [7] In particular, Wynn wrongly asserts that "[t]he government tries
to escape *McGoff* with two arguments: that its determination is dicta,
and that it is distinguishable because it was a criminal case."  Br. 33.
Neither argument appears on page 25 of the government's brief (Wynn's
proffered citation), and neither is relevant to this panel's decision
regarding whether Section 618(f) authorizes the government's suit.

parties agree this appeal presents.  Rather, this appeal asks whether,
assuming Wynn has no ongoing obligation to register, the government
can nonetheless compel his delinquent registration for the time he acted
as an agent.[8]  *See* Gov't Br. 3; Wynn Br. 1.  Only if the answer to that
question is "no," contrary to the arguments set forth above, would
*McGoff*'s "result 'require[] dismissal.'"  Br. 31 (quoting A200).

Second, Wynn claims that the "rule of lenity" should apply to the
interpretation of Section 618(f).  Br. 34, 37.  Yet, he defends this
assertion with the non-sequitur that "[f]ailure to register as required by
Section 612(a) . . . can be the subject of either criminal prosecution or
civil enforcement."  Br. 34-35.  While this may show that the rule of
lenity could apply if there was ambiguity in construing Section 612(a),[9]

---

[8] Wynn's claim that "the 'violation' is defined and limited by the
terms of the 'provision' claimed to be violated," Br. 30, suffers from the
same flaw.  Assuming the Complaint's allegations are true, Wynn
violated FARA's registration requirement—the question here is
whether the government must additionally allege that he continues to
violate FARA.

[9] As explained in the government's opening brief (at 31-37),
Section 612(a) is not ambiguous.  To the extent lenity (or constitutional
due process concerns, *see* Wynn Br. 38) have any applicability to FARA,
they would best be applied to the statute's provisions specifically
defining the criminal offense.  *See* Gov't Br. 37-39 (explaining that
(continued . . .)

it says nothing about Section 618(f).  No interpretation of Section 618(f) will alter the scope of criminal liability under FARA, and thus the rule of lenity has no bearing on its meaning.  *See, e.g.*, *Pugin v. Garland*, 19 F.4th 437, 444 (4th Cir. 2021) ("Lenity only applies to criminal statutes or the functional equivalent. . . .  It is not enough that a determination under a civil statute might have future effect in a later criminal action based on different conduct."), *aff'd*, 143 S. Ct. 1833 (2023).

Finally, Wynn offers a series of policy arguments for limiting the scope of Section 618(f).  He claims that the public has no interest in a former agent's filing because the statute "reflect[s] a focus on the present, not the past," and the public is only interested in disclosures if they are "promptly" made.  Br. 39-40.  But as the government's opening brief (at 35-36 & n.7) explained, this is not so.  An agent's public comments and lobbying efforts may persist for some time and continue to influence debate and policy, independent of whether the agent continues to act in that role.  Wynn also appeals to general principles regarding injunctive relief, claiming it should not be available to

_____

*McGoff* could have reached its ultimate result through a narrower reading of Sections 618(a) and 618(e)).

address past misconduct.  Br. 41.  The government's brief (at 28-29 &
n.6) offered a litany of counterexamples.  While Wynn attempts to
distinguish the statutes under which those cases were brought, he does
not dispute that they provide analogous examples of injunctions
designed to remedy past failures to disclose required information, just
as the government seeks in this suit.

Ultimately, Wynn acknowledges that the "specific question" this
case presents "was not before the Court in" *McGoff*.  Br. 41.  This
concession alone shows that, to the extent the district court relied on
*McGoff* in interpreting Section 618(f), that was error.  This Court should
hold that Section 618(f) authorizes the government to bring this suit
and reverse the district court's dismissal.

## III.  NO PROCEDURAL BAR APPLIES TO THE GOVERNMENT'S ARGUMENT

For the reasons explained above, the district court erred in
holding that "Section 618(f) merely creates the cause of action," and
that the government must identify a separate, ongoing violation of
FARA.  *See* A198.  Wynn, however, asks this Court to let that erroneous
holding stand for procedural reasons, arguing that the government

23

either forfeited the argument or invited the district court's error.  *See* Br. 20-28.  Those arguments are meritless and rely on flawed understandings of the doctrines involved.

## A.    The Government's Argument Is Not Forfeited

Wynn initially claims that the government "never presented" its arguments regarding Section 618(f) below.  Br. 22.  However, to support this claim, Wynn recites the allegations in the Complaint.  *See id.* "[U]nder the Federal Rules of Civil Procedure, a complaint need not pin [a] plaintiff's claim for relief to a precise legal theory."  *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).  Moreover, the Federal Rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014); *see also* 5 Wright & Miller, Federal Practice and Procedure § 1219, at 277-78 (3d ed. 2004) ("The federal rules effectively abolish the restrictive theory of the pleadings doctrine, making it clear that it is unnecessary to set out a legal theory for the plaintiff's claim for relief." (footnotes omitted)).  Wynn's focus on the Complaint is therefore misplaced.

When it comes to the government's opposition to his motion to dismiss, Wynn acknowledges that the government explicitly stated its reliance on Section 618(f).  *See* Br. 23 (citing A116-18).  In its opposition, the government explained (1) the government's reliance on Section 618(f), and thus *McGoff*'s inapplicability, *see* A116; (2) Wynn's error in applying tools of criminal statutory interpretation to Section 618(f), *see* A117; and (3) that a broad reading of Section 618(f) is consistent with FARA's purpose, *see* A118.  The government makes these same points in this brief.  *See supra* Part II (noting *McGoff*'s inapplicability); *id.* (noting the inapplicability of lenity); Part I.A (noting that a narrow focus on the present tense is inconsistent with FARA's purpose).  Thus, Wynn is wrong to claim that the government failed to advance its argument below.

Even if the government had not raised its reliance on Section 618(f) in the district court, that would not result in forfeiture.  "Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 379 (1995) (internal quotation marks omitted).  Here, the government's

consistent claim has been that Wynn failed to register as required under FARA, and that the government is entitled to an order requiring Wynn to remedy that failure.  Whether the government is entitled to that relief because *McGoff* erred in its interpretation of Section 612(a), *see* Gov't Br. 29-37 (preserving this argument), or because, regardless of *McGoff*, Section 618(f) requires no allegations of an ongoing violation, *see* Gov't Br. 16-29, or even because *McGoff*'s statements were dicta or inapplicable to the civil context, *see generally* A113-21 (making these additional arguments), these are all different arguments in support of the same consistent claim.  There is therefore no forfeiture.

The path this case has taken thus far is closely analogous to the path trod in *Shea v. Kerry*, 796 F.3d 42 (D.C. Cir. 2015).  There, the plaintiff claimed that the State Department discriminated against him. *Id.* at 46.  In the district court, he argued against dismissal using the Supreme Court's well-established framework for evaluating such claims.  *Id.* at 54.  The district court rejected that argument, while additionally noting that a then-recent Supreme Court decision had not altered the framework.  *Id*.  On appeal, the plaintiff attacked this latter portion of the district court's reasoning and argued that the framework

26

he argued under in the district court was in fact inapplicable after the Supreme Court's decision. *Id.* This Court rejected the State Department's forfeiture argument because of the plaintiff's consistent claim of discrimination and the "measure of latitude" accorded him "to elaborate on his theory in service" of that claim. *Id.* The same is true here, where the government's claim has remained consistent, and where the district court offered and relied upon its flawed interpretation of Section 618(f). *See also Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010) (considering "a new argument to support what has been [a] consistent claim" (internal quotation marks omitted)). In contrast, *Nemariam v. Fed. Democratic Republic of Ethiopia*, 491 F.3d 470 (D.C. Cir. 2007), upon which Wynn relies, involved a plaintiff's failure to defend entire claims alleged in his complaint in opposing a motion to dismiss. *See id.* at 482 ("In their opposition, the appellants did not challenge the assertion that the bank accounts were the only property at issue.").[10] Because, as in *Shea*, the government is entitled

---

[10] The remaining cases that Wynn cites in support of forfeiture arose in wholly different circumstances. *See, e.g.*, *United States v. Islam*, 932 F.3d 957, 961 (D.C. Cir. 2019) (failure to object to (continued . . .)

to advance additional arguments in support of its consistent claim for relief, there is no forfeiture.

Even if the government's interpretation of Section 618(f) were a new claim (it is not), this would not prevent this Court's review. Appellate "practice permits review of an issue not pressed below so long as it has been passed upon." *Citizens United*, 558 U.S. at 330 (cleaned up). The district court indisputably passed upon the meaning and scope of Section 618(f). *See* A198. As explained above, this was a logically necessary step for the district court to conclude that "*McGoff* . . . requires dismissal of the suit." A189. Therefore, the question of the scope of Section 618(f) is properly before this Court.

---

magistrate's report and recommendation); *USAir, Inc. v. Dep't of Transp.*, 969 F.2d 1256, 1260 (D.C. Cir. 1992) (failure to first raise a challenge before the agency). And neither *Schneider v. Kissinger*, 412 F.3d 190 (D.C. Cir. 2005), nor *District of Columbia v. Air Fla., Inc.*, 750 F.2d 1077 (D.C. Cir. 1984), is best read to have involved forfeiture at all, but to have examined whether certain allegations in a complaint were sufficient. *See Schneider*, 412 F.3d at 199 ("[T]he language purporting not to waive *ultra vires* 'arguments' does not help a complaint that never alleges a single claim for relief in *ultra vires* terms."); *Air Florida*, 969 F.2d at 1081 ("The District did not . . . allege facts in its complaint or memoranda that would have alerted the District Court to the relevance of the public trust doctrine to this action.").

### B.     The Invited Error Doctrine Is Inapplicable

There is likewise no merit to Wynn's claim (Br. 26-28) that the government invited the district court's erroneous interpretation of Section 618(f). "Statements amounting to invited error are a species of waiver and generally evince an intent by the speaker to convince the district court to do something that it would not otherwise have done." *United States v. Long*, 997 F.3d 342, 353 (D.C. Cir. 2021) (cleaned up). The invited error doctrine thus only applies where a party has undertaken "intentional strategic gambits designed to induce the trial court to take a desired action." *Id.* (cleaned up).

Wynn does not point to anywhere in the record (and no such citation exists) where the government suggested the district court should read Section 618(f) as narrowly as it did, let alone a "strategic gambit" where the government intentionally requested this reading of FARA. This case is thus starkly different from *Wagner v. Taylor*, 836 F.2d 596 (D.C. Cir. 1987), where the plaintiff affirmatively told the district court that his claims were duplicative of a prior suit, and when the district court proposed dismissal, the plaintiff stated, "I agree with the court, almost one hundred percent." *Id.* at 598; *see also United*

29

*States v. Brown*, 892 F.3d 385, 393 (D.C. Cir. 2018) (applying the doctrine where defendant challenged a jury instruction he requested "because of a strategic judgment"). The invited error doctrine is simply inapplicable here.

## **CONCLUSION**

For the foregoing reasons, the district court's decision dismissing the Complaint should be reversed.

Respectfully submitted,

MATTHEW G. OLSEN
Assistant Attorney General for
National Security

 /s/ Joseph P. Minta
JEFFREY M. SMITH
JOSEPH P. MINTA
Attorneys, Appellate Unit
National Security Division
U.S. Department of Justice
950 Pennsylvania Ave. NW, Ste. 6500
Washington, DC 20530
Tel. (202) 353-9055
joseph.minta@usdoj.gov

*Attorneys for the Attorney General of*
*the United States*

Dated: July 19, 2023

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing brief complies with the 6,500-word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this brief contains 6,053 words.

I further certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (a)(6) because it has been prepared in a proportionally spaced typeface using 14-point Century Schoolbook font.

<u>/s/ Joseph P. Minta</u>
Joseph P. Minta
Attorney for the Attorney General
of the United States

31

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 19th day of July 2023, a copy of the

foregoing Reply Brief for the Attorney General of the United States was

filed electronically.  Notice of this filing will be sent to all parties by

operation of the Court's electronic filing system.  Parties may access

this filing through the Court's system.

/s/ Joseph P. Minta
Joseph P. Minta
Attorney for the Attorney General
of the United States

32