No. 22-5328

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

ATTORNEY GENERAL OF THE UNITED STATES,

*Plaintiff-Appellant*,

v.

STEPHEN A. WYNN,

*Defendant-Appellee.*

———————————

On Appeal from the United States District Court
for the District of Columbia

———————————

PETITION FOR REHEARING EN BANC

———————————

MATTHEW G. OLSEN
Assistant Attorney General for
National Security

JEFFREY M. SMITH
JOSEPH P. MINTA
Attorneys, Appellate Section
National Security Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
Tel.: 202-353-9055
joseph.minta@usdoj.gov

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................ii

STATEMENT ........................................................................................ 1

BACKGROUND ................................................................................... 3

REASONS FOR GRANTING THE PETITION ................................ 4

    A.    *McGoff*'s Reasoning Is Flawed ............................................... 5

    B.    FARA Is a Critical Tool To Protect Our Democracy ............... 12

    C.    *McGoff*'s Errors Have Broader Detrimental Effects ............... 14

        1.    *McGoff* Precludes Nearly All Civil Enforcement of FARA ...... 15

        2.    The D.C. Circuit's Interpretations of FARA Have
             Outsized Impact ...................................................... 17

CONCLUSION ................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 <u>Page</u>

*Attorney General v. Wynn*,
  636 F. Supp. 3d 96 (D.D.C. 2022)...........................................1, 4, 13, 17

*City of Salisbury v. FERC*,
  36 F.4th 1164 (D.C. Cir. 2022) ...............................................................7

*Grecian Magnesite Mining, Indus. & Shipping Co. v. Comm'r*,
  926 F.3d 819 (D.C. Cir. 2019)..................................................................6

*Meese v. Keene*,
  481 U.S. 465 (1987)................................................................................12

*S.E.C. v. Research Resources, Inc.*,
  No. 85-CIV-3530, 1986 WL 11446 (S.D.N.Y. Oct. 8, 1986) .................10

*United States v. Cordova*,
  806 F.3d 1085 (D.C. Cir. 2015)..............................................................12

*United States v. McGoff*,
  831 F.2d 1071 (D.C. Cir. 1987).................1, 2, 4, 7, 8, 13, 14, 15, 16, 17

**Statutes**

22 U.S.C. § 612(a) ........................................................................1, 6, 7, 9

22 U.S.C. § 618(a) ...........................................................................9, 14

22 U.S.C. § 618(e) ...........................................................................9, 14

22 U.S.C. § 618(f) ..................................................................2, 3, 11, 15

42 U.S.C. § 9606(a) ..............................................................................10

52 U.S.C. § 30109(a)(6).......................................................................10

**Rules**

Fed. R. App. P. 35(b)..............................................................................3

**Other Authorities**

*Frequently Asked Questions*, FARA Unit, U.S. Dep't of Justice,
  https://www.justice.gov/nsd-fara/frequently-asked-questions ("What is
  a Letter of Inquiry?") (last visited September 26, 2024)......................16

## STATEMENT

Section 612(a) of the Foreign Agents Registration Act (FARA) requires an agent of a foreign principal to register with the Attorney General. *See* 22 U.S.C. § 612(a). The provision goes on to state:

> The obligation of an agent of a foreign principal to file a registration statement shall, after the tenth day of his becoming such agent, continue from day to day, and termination of such status shall not relieve such agent from his obligation to file a registration statement for the period during which he was an agent of a foreign principal.

*Id.* This appeal presents a question of exceptional importance: Whether a foreign agent who fails to register under FARA is relieved of the obligation to register merely because he has ceased acting as an agent.

Every judge to have interpreted Section 612(a) has agreed that its "more natural reading" is that it imposes a continuing obligation on unregistered foreign agents to remedy their failure to comply with the statute. *See United States v. McGoff*, 831 F.2d 1071, 1083 (D.C. Cir. 1987); *id.* at 1100 (Bork, J., dissenting); *Attorney General v. Wynn*, 636 F. Supp. 3d 96, 102-03 (D.D.C. 2022). Yet, a divided panel in *McGoff* adopted the opposite reading, *see* 831 F.2d at 1082, and the panel here extended that holding to the civil context, *see* slip op. 6. Thus, in this

1

Circuit, "termination of such status shall ~~not~~ relieve such agent from his obligation to file a registration statement" at that point in time. *See McGoff*, 831 F.2d at 1082; *see also id.* at 1101 ("[R]emoval of the word 'not' from the statute would give the [interpretation the *McGoff* majority adopts].") (Bork, J., dissenting). The panel decision here both repeatedly noted that it was bound by this interpretation of FARA, slip op. 5, 11, and relied on it to reject the government's proposed interpretation of FARA's civil enforcement mechanism, 22 U.S.C. § 618(f), *see* slip op. 10. Nonetheless, the panel did not attempt to defend the interpretation of FARA's registration obligation adopted in *McGoff*. This Court should grant rehearing en banc to correct *McGoff*'s erroneous interpretation of FARA's registration obligation.

*McGoff* addressed the criminal statute of limitations for FARA violations, but this case shows its effects are far broader. As the panel held, *McGoff* leaves the government no civil recourse against foreign agents whose activities are discovered by the government after their completion or who cease their activities before the government can bring an enforcement action. Such an interpretation creates a strong incentive toward non-disclosure, as foreign agents can simply cease

2

their conduct if challenged by the government. Moreover, it does so in the Circuit home to the seat of government and a substantial amount of FARA-regulated activity.

Respectfully, *McGoff* was wrongly decided and creates outsized problems for the government's efforts to ensure appropriate disclosure of foreign influence in our governing process. This case presents a question of exceptional importance warranting en banc review. *See* Fed. R. App. P. 35(b).

## BACKGROUND

Although grounded in a particular FARA civil enforcement action, this appeal presents solely legal questions of statutory interpretation. The government's complaint alleges that Stephen Wynn acted as an agent of the People's Republic of China for several months in 2017. Wynn never registered under FARA, and the government later sued under FARA's civil enforcement provision, 22 U.S.C. § 618(f), to compel him to do so. Throughout this litigation, the parties have disputed whether FARA permits the government to compel Wynn to file the required registration statement covering the period during which he acted as an agent of China.

3

The district court granted Wynn's motion to dismiss, holding that it was bound by *McGoff*'s conclusion that Wynn's obligation to register ended the moment Wynn ceased to act as an agent of China. *Wynn*, 636 F. Supp. 3d at 103. The panel affirmed, likewise concluding that *McGoff*'s status as binding precedent resolved the appeal and foreclosed the government's interpretation of FARA's civil enforcement mechanism. Slip op. 5, 11.

## REASONS FOR GRANTING THE PETITION

The panel's decision, combined with *McGoff*'s broad holding, has significant adverse consequences for the government's ability to enforce the Foreign Agents Registration Act. *McGoff* addressed the statute of limitations for a criminal FARA violation and held that it begins to run when an individual stops acting as an agent of a foreign principal. *See* 831 F.2d at 1071. This was so, the majority reasoned, because "the statutory obligation to file expires when the agent ceases activities on behalf of the foreign principal." *Id.* at 1082. The panel here extended this holding to the government's efforts to enforce FARA civilly and held that no civil suit can compel a former foreign agent to remedy his or her failure to file. *See* slip op. 5. Without further review, the government

4

will be powerless to compel foreign agents to provide important national security information in any case where, due to the agent's failure to file, the government either does not learn about the relationship until it has ceased or the agent terminates the relationship when the government discovers it. Congress instructed in FARA that this information must be disclosed, and the information often retains importance even when the agency relationship has concluded. This Court's en banc review is necessary to restore the government's ability to require foreign agents to disclose their efforts to influence U.S. policy on behalf of foreign governments and other foreign actors.

## A.    *McGoff*'s Reasoning Is Flawed.

The *McGoff* majority opinion reached its result through reasoning that is fundamentally flawed. The panel, faced with what it saw as binding circuit precedent, had no occasion to defend it. In interpreting the statutory language that is also at issue here, *McGoff* erred in ignoring the plain text of FARA's registration requirement. It then compounded that problem by ignoring the history and purpose of FARA.

FARA includes explicit language about the duration of a foreign agent's registration obligation:

> The obligation of an agent of a foreign principal to file a registration statement shall, after the tenth day of his becoming such agent, continue from day to day, and termination of such status shall not relieve such agent from his obligation to file a registration statement for the period during which he was an agent of a foreign principal.

22 U.S.C. § 612(a).

Read most naturally, this language directly anticipates, and rejects, the claim that an agent is no longer required to register once the agent has ceased acting as such. It states that ceasing to act as a foreign agent ("termination of such status") "shall not relieve" an individual of the "obligation to file a registration statement for the period during which he was an agent." In other words, an agent cannot avoid the registration requirement that Congress imposed merely by ceasing his conduct once he has been discovered, or by only acting as an agent for a short time.

This reading flows from a straightforward application of the nearest-reasonable-referent canon of statutory interpretation. *See Grecian Magnesite Mining, Indus. & Shipping Co. v. Comm'r*, 926 F.3d 819, 824 (D.C. Cir. 2019) ("[O]rdinarily, and within reason, modifiers and qualifying phrases attach to the terms that are nearest."). Here,

6

that canon dictates that the phrase "for the period during which he was

an agent of a foreign principal" in Section 612(a) modifies the term

immediately preceding it, "registration statement." *McGoff*, however,

adopted an alternative reading under which the phrase reaches farther

back in the sentence to modify "obligation" rather than "statement." *See*

*McGoff*, 831 F.2d at 1083. This is contrary to the rule that where "the

nearest referent is also a reasonable one, there is no basis for reading

the limiting phrase to modify other, more-distant language." *City of*

*Salisbury v. FERC*, 36 F.4th 1164, 1169 (D.C. Cir. 2022).

    *McGoff*'s reading also contradicts Section 612(a)'s history.

Congress added the sentence at issue in 1950 specifically "to remove

any doubt as to the liability of an agent to file a registration statement

for the period in which he was acting as an agent and thereafter has

ceased such activity." *See McGoff*, 831 F.2d at 1087 (quoting H.R. Rep.

No. 81-1775, at 1). *McGoff*'s holding, however, renders this statutory

change essentially meaningless. The *McGoff* majority speculated that

Congress used this language to foreclose an argument that ceasing to

act as a foreign agent would be an affirmative defense to a criminal

charge, but "[n]o criminal statute works this way." *Id.* at 1101 (Bork, J.,

dissenting). Rather, Congress added the language to clarify that, contrary to *McGoff*, a former foreign agent nonetheless remains obligated to remedy his prior failure to register as the statute requires.

As a textual matter, the *McGoff* majority rejected this "more natural reading" of the statute, believing it "would . . . render redundant the entire, thirteen-word phrase" that concludes the disputed the sentence. *See* 831 F.2d at 1083. The majority reasoned that "[a] FARA-required registration statement can, in logic, relate to no period other than 'the period during which' the individual acted as an agent," and therefore this modifier was unnecessary. *Id.* But this is simply not true, as Congress could choose to require the reporting of information from other periods of time in order to put the agent's activities in context. Furthermore, the language not only clarifies that the statement need not address matters after the period of foreign agency ends, but also clarifies that the registration statement must cover the entire period of agency and does not exclude the initial ten-day registration period. The *McGoff* majority's concerns about surplusage are therefore unfounded.

8

In deciding this case, however, the Court need not decide whether *McGoff* was correct in its ultimate holding—that the statute of limitations for a criminal FARA offense begins to run at the time an individual ceases to act as an agent of a foreign principal. *See* Gov't Br. 37-38 ("[T]he government accepts for purposes of this case *McGoff*'s ultimate holding regarding when the statute of limitations for a criminal FARA violation begins to run."). That conclusion, even if correct, need not have been based on *McGoff*'s atextual reading of Section 612(a). Rather, the result in *McGoff* could have been based on a closer analysis of the language of Sections 618(a) and 618(e), which define the criminal offense. *McGoff* could have read the phrase "as long as such failure exists" in Section 618(e), especially given its criminal context, to encompass only the time during which an individual is acting as an agent.[1] Had *McGoff* done so, it would have reached the same result without misreading Section 612(a), which governs both civil

---

[1] Such a reading could be supported by the differing language used in Section 618(e), which defines the continuing criminal offense as a "failure to file," and Section 612(a), which refers instead to an "obligation to file."

9

and criminal violations. This would have avoided gutting FARA's civil enforcement mechanism, which was not before the Court in that case.

The extension of *McGoff*'s reasoning to the context of this civil case further illustrates the errors in *McGoff*'s reasoning. Like other regulatory regimes, FARA provides an injunctive remedy that is largely reparative. *See, e.g.*, 42 U.S.C. § 9606(a) (authorizing injunctions to require responsible parties to clean up certain sites of spilled pollution); 52 U.S.C. § 30109(a)(6) (authorizing injunctions against past election law violations); *S.E.C. v. Research Resources, Inc.*, No. 85-CIV-3530, 1986 WL 11446, at *4 (S.D.N.Y. Oct. 8, 1986) (explaining that, even where required forms and reports "deal[] with information no longer relevant about business no longer existing," the court "may properly issue mandatory injunctions requiring defendants to file their delinquent reports and . . . correct its misleading Form 8-K"). After all, FARA violations almost always occur because an individual has already acted as an agent without registering, as the government alleges happened here. That bell of undisclosed foreign influence cannot be unrung, but FARA provides the government a means to compel later disclosure to provide the public with the information to which it was

10

always entitled and that often retains its national security relevance.
Whether that reparative action comes before or after an individual has
ceased acting as a foreign agent is irrelevant, and *McGoff* erred in
reading Section 612(a) to embody such a distinction.[2]

As the panel applied *McGoff*, the government's ability to
criminally prosecute an unregistered foreign agent bizarrely persists
long after its ability to civilly enforce FARA's registration requirements
through a suit such as this one. Accordingly, regardless of whether
*McGoff*'s ultimate conclusion about the criminal statute of limitations is
correct, en banc review is necessary to correct *McGoff*'s mistaken
interpretation of the ongoing registration requirement set out in Section
612(a) and the panel's mistaken holding that civil enforcement is
barred.

---

[2] Moreover, in light of the reparative nature of FARA's civil
remedy, even if *McGoff*'s reading of Section 612(a) were correct, Section
618(f)'s civil remedy is reasonably read to allow suits against
unregistered foreign agents even after they have ceased acting as such.
*See* Gov't Br. 17-29.

### B.    FARA Is a Critical Tool To Protect Our Democracy

FARA was enacted "to protect the national defense, internal security, and foreign relations of the United States." *Meese v. Keene*, 481 U.S. 465, 469 (1987) (quoting Act of April 29, 1942, Pub. L. No. 77-532, 56 Stat. 248, 248). It does so by requiring foreign agents to register publicly "so that the Government and the people of the United States may be informed of the identity of such persons and may appraise their statements and actions in the light of their associations and activities." *Id.* (quoting 56 Stat. 249). These disclosure requirements serve a critical role in protecting our democracy while preserving the bedrock principle of freedom of speech. Under FARA, foreign governments and entities may attempt to influence our government's policies through agents in this country, but their agents must act openly as such.

*McGoff*'s holding upsets this delicate balance. *See United States v. Cordova*, 806 F.3d 1085, 1099 (D.C. Cir. 2015) ("We must avoid an interpretation that undermines congressional purpose considered as a whole when alternative interpretations consistent with the legislative purpose are available." (internal quotation marks omitted)). Under the panel's decision, the government has no ability to enforce FARA, short

12

of criminal prosecution, against foreign agents who act for a short time, who hide their activities, or who cease their activities before the government can mount a civil enforcement action. But the mere fact that a foreign agent's activities are completed does not alter the importance of registration. *See McGoff*, 831 F.2d at 1099 ("Cessation of agency does not eliminate the evil the Act seeks to remedy, which is the failure to disclose; only disclosure itself, *i.e.*, registration, puts an end to that evil.") (Bork, J., dissenting); *see also Wynn*, 636 F. Supp. 3d at 107 ("[E]ven agents who have since ended their agency relationship but who never registered their activities are still in possession of 'information that [FARA] says the public needs.'") (quoting *McGoff*, 831 F.2d at 1099 (Bork, J., dissenting)). Many statements that a foreign agent makes will persist and affect public discourse in the United States well beyond the termination of the agency relationship. After-the-fact registration also allows the victims of undisclosed foreign influence to potentially take corrective actions. By creating a loophole through which foreign agents, especially those engaged in short-term activities, may decline to register without civil consequence, *McGoff*'s reading of Section 612(a)

dramatically curtails the information available to the United States and its people regarding foreign efforts to exert influence in our country.

## C.   *McGoff*'s Errors Have Broader Detrimental Effects.

Had *McGoff* reached its conclusion through an interpretation of FARA's criminal provisions, 22 U.S.C. §§ 618(a), (e), its impact would be limited to those circumstances where the government chose to employ the "howitzer" of criminal prosecution to enforce FARA. *See McGoff*, 831 F.2d at 1094. The panel here held, however, that, by narrowly interpreting Section 612(a), *McGoff* also eviscerated the government's ability to civilly enforce FARA. Moreover, *McGoff*'s erroneous interpretation of Section 612(a) now governs in the Circuit where a substantial amount of FARA-regulated activity occurs, and other courts may defer to this Court's interpretations of FARA, as they often do for other laws regulating governmental activity. These wide-ranging and detrimental effects on the government's ability to combat foreign efforts to influence our government cry out for correction.

14

### 1. *McGoff* Precludes Nearly All Civil Enforcement of FARA.

*McGoff* most directly limited the time in which the government can prosecute willful violations of FARA, but as Judge Bork recognized, its impacts for civil enforcement actions are far greater. As a practical matter, *McGoff*'s holding precludes nearly all civil enforcement of FARA.

In 1966, Congress added the civil enforcement mechanism, 22 U.S.C. § 618(f), to FARA "because the pre-existing criminal sanctions were thought too harsh for the sort of activities that were prescribed by the statute." *McGoff*, 831 F.2d at 1075 n.12. While FARA's criminal penalties are limited to willful violations, civil enforcement suits are available "[w]henever . . . any person is engaged in or about to engage in any acts which constitute or will constitute a violation of any provision of [FARA]" and "whenever any agent of a foreign principal fails to comply with any of the provisions of [FARA]." 22 U.S.C. § 618(f). The government argued to the panel here that these two provisions should be given independent meaning by applying to imminent and current agents, and to former agents, respectively. The panel, however, held

15

that *McGoff* foreclosed such an interpretation. Slip op. 11 ("The government's interpretation would make Section 612(a)'s registration obligation perpetual, which is a proposition that *McGoff* explicitly rejected."). While the *McGoff* majority purported to leave this question open, *see* 831 F.2d at 1094 n.32 (merely "assuming arguendo" the decision foreclosed civil enforcement in these circumstances), the panel's holding here confirmed Judge Bork's understanding of the startling impact of *McGoff*'s reasoning: "[T]he civil injunctive remedy available to the United States . . . now will be unavailable to compel anyone to file a registration statement once his agency has ended." *Id.* at 1103 (Bork, J., dissenting).

From a practical perspective, this forecloses nearly all civil enforcement actions under FARA. In the absence of a criminal investigation, the government lacks compulsory tools for investigating FARA compliance. Instead, it typically asks individuals to voluntarily provide information about their activities in relation to a foreign principal. *See Frequently Asked Questions*, FARA Unit, U.S. Dep't of Justice, https://www.justice.gov/nsd-fara/frequently-asked-questions ("What is a Letter of Inquiry?") (last visited September 26, 2024). That

16

was the course leading up to this suit. *See Wynn*, 636 F. Supp. 3d at 100. But the open, voluntary nature of these investigations also provides unregistered agents ample opportunity to simply cease their conduct, thereby cutting off the government's ability to compel their registration under the panel's holding.

The result is a statute whose enforcement mechanisms are incoherent. The "howitzer" of criminal prosecution remains available for five years after agency ends, while the "fly swat" of a civil enforcement suit disappears as soon as a foreign agent elects to cease his activities. *See McGoff*, 831 F.2d at 1103 n.9 (Bork, J., dissenting). In cases where willfulness cannot be proved beyond a reasonable doubt, the combination of *McGoff* and the panel's holding here means that the government has no method to secure the important information FARA requires be made available to the government and the public.

## 2. The D.C. Circuit's Interpretations of FARA Have Outsized Impact.

Although FARA has national reach, this Court's interpretations of the statute have heightened importance. The District of Columbia is home to the Executive and Legislative Branches of the federal

17

government, and unsurprisingly, a substantial amount of FARA activity occurs here. The public database of FARA registrants[3] reflects that nearly one-third (32.7%) of all active registered agents are based in this Circuit. Together, these D.C.-based agents represent more than 1,500 foreign principals. Currently, *McGoff* limits the government's ability to enforce FARA in the Circuit where FARA activity most commonly occurs.

Moreover, because FARA activity is concentrated within this Circuit, other courts may be more willing to defer to this Court's interpretation of the statute. While the proper interpretation of FARA would be a question of exceptional importance in any court, its importance is even greater in this Court.

---

[3] *See* https://efile.fara.gov/ords/fara/f?p=1235:10

18

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant the government's petition for rehearing en banc.

Respectfully submitted,

MATTHEW G. OLSEN
Assistant Attorney General for
National Security

/s/ Joseph P. Minta
JEFFREY M. SMITH
JOSEPH P. MINTA
Attorneys, Appellate Section
National Security Division
U.S. Department of Justice
950 Pennsylvania Ave. NW, Ste. 6500
Washington, DC 20530
Tel. (202) 353-9055
joseph.minta@usdoj.gov

*Attorneys for the Attorney General of
the United States*

Dated: September 27, 2024

19

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing brief complies with the 3,900-word limit of Fed. R. App. P. 35(b)(2)(A), and more specifically, contains 3,390 words.

I further certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (a)(6) because it has been prepared in a proportionally spaced typeface using 14-point Century Schoolbook font.

<u>/s/ Joseph P. Minta</u>
Joseph P. Minta
Attorney for the Attorney General
of the United States

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 27th day of September 2024, a copy of the foregoing Petition for Rehearing En Banc was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Joseph P. Minta
Joseph P. Minta
Attorney for the Attorney General
of the United States

## **ADDENDUM**

**Certificate of Parties**: The parties to this case are the Attorney General of the United States, plaintiff-appellant, and Stephen A. Wynn, defendant-appellee. No amici have entered an appearance in the district court or in this Court.

**Panel Opinion**: A copy of the panel opinion is attached.

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 14, 2023                Decided June 14, 2024

No. 22-5328

ATTORNEY GENERAL OF THE UNITED STATES,
APPELLANT

v.

STEPHEN A. WYNN,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:22-cv-01372)

———

Joseph P. Minta, Attorney, U.S. Department of Justice, argued the cause for appellant. With him on the briefs were Matthew G. Olsen, Assistant Attorney General for National Security, and Jeffrey M. Smith, Attorney.

Robert D. Luskin argued the cause for appellee. With him on the brief were Reid H. Weingarten, Brian M. Heberlig, Bruce C. Bishop, Nicholas P. Silverman, and Leo R. Tsao.

Before: HENDERSON, MILLETT, and PILLARD, Circuit Judges.

2

Opinion for the Court filed by *Circuit Judge* MILLETT.

MILLETT, *Circuit Judge*:  Federal law requires those lobbying American officials on behalf of foreign principals to register as foreign agents.  The Department of Justice believes that Stephen Wynn acted as an unregistered foreign agent for the People's Republic of China in mid-to-late 2017.  The Department filed suit in federal court to force him to register.  Because, even accepting the government's allegations as true, Wynn long ago ceased acting as a foreign agent, he has no present obligation to register.  For that reason, the district court properly dismissed the government's suit for failure to state a claim.

# I

# A

The Foreign Agents Registration Act, commonly referred to as "FARA," aims "to protect the national defense, internal security, and foreign relations of the United States[.]"  Act of Apr. 29, 1942, Pub. L. No. 77-532, ch. 263, 56 Stat. 248, 248, 22 U.S.C. § 611 note (Policy and Purpose of Subchapter).  FARA does so by requiring that foreign efforts to influence United States policy be publicly disclosed and transparent, giving decision makers and the public the context needed to "appraise the[] statements and actions" of those acting on a foreign principal's behalf.  *Id.* at 249; *see United States v. McGoff*, 831 F.2d 1071, 1074 (D.C. Cir. 1987) (The "core notion" of FARA is that "government officials and the public generally should be able to identify those who act on behalf of a foreign principal.").

As relevant here, FARA requires any "agent of a foreign principal" to register with the Department of Justice.  22 U.S.C.

3

§ 612(a).  The Act then defines "agent of a foreign principal" as any person who "directly or through any other person * * * engages within the United States in political activities or in the interests of [a] foreign principal[.]"  *Id.* § 611(c)(1)(i).  The definition also includes anyone who "represents the interests of [a] foreign principal before any agency or official of the Government of the United States[.]"  *Id.* § 611(c)(1)(iv).  "[F]oreign principal[s]" are foreign governments, persons, political parties, and businesses.  *Id.* § 611(b).

To enforce FARA, the government may seek, and courts may issue, injunctions to prevent persons "from continuing to act as an agent of such foreign principal," or to compel "compliance with any appropriate provision of [FARA]," including its registration requirement.  22 U.S.C. § 618(f).  The government can also criminally prosecute willful violations of FARA.  *Id.* § 618(a).

## B

The government's complaint alleges that, in May 2017, the former finance chair of the Republican National Committee, Elliot Broidy, met with the now-former Vice Minister for Public Security in the People's Republic of China Sun Lijun, foreign national Low Taek Jho, hip-hop artist Prakazrel Michel, and businessperson Nickie Lum Davis.  On behalf of the People's Republic of China, Sun asked the attendees to lobby then-President Trump and his administration to cancel a certain Chinese businessperson's visa or to otherwise remove that person from the United States.[1]

---

[1] This background section takes as true the facts alleged in the government's complaint, as we must at the motion to dismiss stage. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023).

4

The next month, Broidy enlisted casino owner and real-estate developer Stephen Wynn to help fulfill Sun's request. Wynn agreed and, in the ensuing months, Wynn contacted then-President Trump and a number of Trump administration officials and advocated for the Chinese businessperson's removal. Wynn raised the issue with administration officials and the former President both in person and over the telephone. His efforts, however, bore no fruit. In October 2017, Wynn informed Sun that he had pressed the issue to the best of his ability and that he could not help any further. The government does not allege that Wynn engaged in any lobbying on behalf of China after that date.

In May 2018, Wynn got a letter from the Department of Justice advising him to register as a foreign agent. Wynn refused, disputing the government's conclusion that he was required to register and requesting that the Department reconsider its determination. For four years, Wynn exchanged letters with the government over the dispute. He never registered under FARA.

## C

In 2022, the Department of Justice sued Wynn to compel compliance with FARA. It asked the district court both to declare that he has an obligation under Section 612(a) to register as a foreign agent and to issue a permanent injunction requiring him to do so.

The district court dismissed the complaint for failure to state a claim. *Attorney General of the United States v. Wynn*, 636 F. Supp. 3d 96, 101, 107 (D.D.C. 2022). The court held that, "[b]ecause both parties agree that any [agency] relationship between Wynn and the Chinese government ended in October 2017," FARA no longer required him to register.

5

*Id.* at 101.  As such, the court concluded that it could not order him to do so.  *See id.* at 101, 107.  In so holding, the court relied primarily on this court's decision in *United States v. McGoff*, 831 F.2d 1071 (D.C. Cir. 1987), in which we held that the Section 612(a) "obligation to file expires when the agent ceases activities on behalf of the foreign principal[,]" *id*. at 1082.  *See id.* at 1096.

## II

The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1345.  We have jurisdiction under 28 U.S.C. § 1291.

We review the district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) *de novo*, accepting as true the government's factual allegations and drawing all reasonable inferences in the government's favor.  *Wright*, 68 F.4th at 619.

## III

### A

The central question in this case is whether Wynn has a continuing obligation to register under FARA even if he ceased his representation of a foreign principal nearly seven years ago.  Under *McGoff*, which binds this panel, the answer is plainly "no."  *See New York–New York, LLC v. NLRB*, 676 F.3d 193, 194–195 (D.C. Cir. 2012) ("We are of course bound by our prior panel decision[.]").

In *McGoff*, this court rejected a failure-to-register prosecution under FARA as outside of the general five-year statute of limitations for criminal prosecutions set forth in 18 U.S.C. § 3282.  *See McGoff*, 831 F.2d at 1071–1073.  Key to that decision was pinpointing when the Section 612(a)

6

registration obligation ended, since that moment is when the statute-of-limitations clock starts to run. *Id.* at 1081–1082 ("[T]he decisive question in resolving the statute of limitations issue * * * turns on the duration of the registration obligation of section 612(a)."). *McGoff* held that Section 612(a)'s registration obligation "expires" the day an individual stops acting as a foreign agent. *Id.* at 1082; *see id.* at 1096.

While this case does not implicate the statute of limitations for failing to register under FARA, it asks the same question that *McGoff* answered: When does an agent's obligation to register under FARA "expire[]"? 831 F.2d at 1082. *McGoff* was explicit that, under Section 612, "the statutory obligation to file expires when the agent ceases activities on behalf of the foreign principal." *Id.*; *see id.* at 1096. By the government's own telling, Wynn stopped representing the People's Republic of China by the end of October 2017. *See* App. 8–9; *Wynn*, 636 F. Supp. 3d at 101 ("[B]oth parties agree that any [agency] relationship * * * ended in October 2017[.]"). As a result, under *McGoff*, any statutory obligation to register expired at that time. *See McGoff*, 831 F.2d at 1096.

Because Wynn's duty to register ended almost seven years ago, *McGoff* dictates that there is no legal basis for the government to compel him to register now, and the district court properly dismissed the case.

**B**

The government argues that *McGoff* does not control because this is a civil case in which the government seeks only an injunction under Section 618(f). That provision authorizes the government to apply for an injunction:

7

> Whenever * * * any person is engaged in or about to engage in any acts which constitute or will constitute a violation of any provision of this subchapter, or regulations issued thereunder, or whenever any agent of a foreign principal fails to comply with any of the provisions of this subchapter or the regulations issued thereunder, or otherwise is in violation of the subchapter[.]

22 U.S.C. § 618(f). The requested injunction may take the form of "an order enjoining such acts or enjoining such person from continuing to act as an agent * * * or [of] an order requiring compliance with any appropriate [FARA] provision[.]" *Id.*

In the government's view, Section 618(f)'s first "whenever" clause covers all imminent or ongoing violations of FARA, while its second "whenever" clause applies to past, completed violations of FARA. Gov't Opening Br. 20. The government argues that, so read, Section 618(f)'s second "whenever" clause allows for an injunction to compel compliance for past violations. *See* Gov't Opening Br. 20.

While the government referenced Section 618(f) in its district court filings, *see* App. 198–199, it did not advance below the reading of the statutory text that it presses here. Before the district court, the government argued that Wynn is liable for *currently* violating Section 612(a)'s "continuing duty to register, even if the FARA-registrable conduct has ceased." App. 4; *see* App. 11. Before us, the government now claims that this suit is proper because Wynn *previously* violated Section 612(a) while acting as a foreign agent. *See* Gov't Opening Br. 18–25.

8

We will address this argument despite the government's failure to develop it below. *See Association of Am. R.R.s v. Department of Transp.*, 821 F.3d 19, 26 (D.C. Cir. 2016) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases.") (quoting *Singleton v. Wulff*, 428 U.S. 106, 121 (1976)). Whether the government can sue to force foreign agents to register after they have stopped acting as foreign agents is a "novel, important, and recurring question of federal law" that touches on sensitive areas of national security and foreign policy. *Liff v. Office of Inspector Gen. for Dep't of Lab.*, 881 F.3d 912, 919 (D.C. Cir. 2018) (quotation marks omitted). It is also a "threshold question" in FARA litigation that goes to "the clear inapplicability of [the] statute." *Id.* And it "involves a straightforward legal question" that both parties have addressed on appeal and the answer to which is compelled by binding law. *Id.* (quotation marks omitted).

Turning to the merits, the government's proffered reading of Section 618(f) does not hold up. On its face, Section 618(f) describes both *when* the government can sue and *what* it can ask for when it does. Both aspects of Section 618(f) foreclose the government's reading.

Begin with when Section 618(f) authorizes suit. Under Section 618(f), the government can file suit for injunctive relief against an individual who, in the present tense, "*is* engaged in or about to engage" in violations, or who "*fails* to comply" with FARA. 22 U.S.C. § 618(f) (emphases added). It does not allow suit against an individual who "failed" to comply in the past but no longer is under a legal obligation to register. Congress's use of the present tense indicates that it meant to refer to present and future acts, not past ones. *See Carr v. United States*, 560 U.S. 438, 447–448 (2010); *see also* 1 U.S.C.

9

§ 1 ("In determining the meaning of any Act of Congress, unless the context indicates otherwise[,] * * * words used in the present tense include the future as well as the present[.]").

Congress's use at the end of Section 618(f) of a present-tense "otherwise" clause, following a list of present tense examples, reconfirms that the statute does not allow injunctions for long-ago completed violations. The word "'[o]therwise' means 'in a different way or manner[.]'" *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Proj., Inc.*, 576 U.S. 519, 535 (2015) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1598 (1971)). By specifying that courts may issue injunctions against someone who "otherwise *is* in violation of" FARA, the statute makes clear that the earlier clause ("whenever any agent of a foreign principal fails to comply with any of the provisions of this subchapter or the regulations issued thereunder") specifies one "way or manner" by which a person may presently *be* "in violation of" FARA. 22 U.S.C. § 618(f) (emphasis added). If the present tense of the "otherwise" clause were not meant to carry back to the prior clause, there would have been no reason to include the word "otherwise." *See Begay v. United States*, 553 U.S. 137, 144 (2008) (interpreting a general "otherwise" clause as being "similar" to examples that preceded it); *id.* at 151 (Scalia, J. concurring) (explaining that Congress can use the word "otherwise" to "draw[] a substantive connection between" specific and general sets of words).

Read as an integrated whole, then, Section 618(f)'s authorization to sue for an injunction "whenever any agent of a foreign principal fails to comply" with FARA refers to ongoing or imminent compliance failures, not discontinued ones. 22 U.S.C. § 618(f).

10

As for what types of injunctive relief Section 618(f) affords, the statutory text again undermines the government's reading. Section 618(f) allows the government to apply for an order (1) "enjoining such [FARA-prohibited] acts[,]" (2) enjoining [any] person from continuing to act as an agent of [a] foreign principal[,]" or (3) "requiring compliance with any appropriate [FARA] provision[.]" 22 U.S.C. § 618(f). Each of those remedies addresses only ongoing or imminent FARA violations.

As such, none of the three forms of Section 618(f) injunctive relief applies to Wynn's situation. Under *McGoff*, Wynn (1) is not engaged in any FARA-prohibited "acts" because he is not acting as a foreign agent, (2) is not "continuing to act as an agent of [a] foreign principal" because he ceased any such activity seven years ago, and (3) is in "compliance" with Section 612(a) because, under *McGoff*, he is under no present duty to register, as any such duty expired in October 2017. 22 U.S.C. § 618(f).

True, *McGoff* did not specifically address Section 618(f) or the registration obligation in the civil context. *See* 831 F.2d at 1094 n.32. But what matters is that *McGoff* recognized a temporal limitation on the duty to register under Section 612(a). Whether the question arises in the criminal or civil context, the answer as to when the Section 612(a) duty to register expires must be the same in the absence of any contrary statutory directive. *See Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) (Where a statutory provision has "both criminal and noncriminal applications[,] * * * we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context[.]"). The government's argument that Section 618(f) provides for such differentiation ignores that provision's plain, present-tense text.

11

The government also errs in arguing that our textual reading creates redundancy. *See* Gov't Opening Br. 19. The canon against superfluity does little work here because "the text's meaning is plain." *Mercy Hosp., Inc. v. Azar*, 891 F.3d 1062, 1068 (D.C. Cir. 2018). It also cannot aid the government in this case since the government's alleged non-superfluous reading would undermine the statutory scheme as laid out in *McGoff*. *Cook Inlet Tribal Council, Inc. v. Dotomain*, 10 F.4th 892, 896 (D.C. Cir. 2021); *see Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 456 (2015) ("All our interpretive decisions, in whatever way reasoned, effectively become part of the statutory scheme[.]"). The government's interpretation would make Section 612(a)'s registration obligation perpetual, which is a proposition that *McGoff* explicitly rejected. *See* 831 F.2d at 1071, 1096. And this panel must hew to *McGoff*. *See United States v. Emor*, 785 F.3d 671, 682 (D.C. Cir. 2015) ("[W]e cannot overrule a prior panel's decision, except via an *Irons* footnote or en banc review.").

\* \* \*

Under binding circuit precedent, any duty Wynn had to register as a foreign agent under Section 612(a) ended when his alleged representation of a foreign principal terminated. Because Section 618(f) allows civil suit to remedy only ongoing or imminent Section 612(a) violations, we affirm the district court's dismissal.

*So ordered.*