ORAL ARGUMENT NOT YET SCHEDULED
No. 22-5328

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

————————————

ATTORNEY GENERAL OF THE UNITED STATES,

*Plaintiff-Appellant*,

v.

STEPHEN A. WYNN,

*Defendant-Appellee.*

————————————

On Appeal from the United States District Court
for the District of Columbia

————————————

BRIEF FOR THE ATTORNEY GENERAL
OF THE UNITED STATES

————————————

MATTHEW G. OLSEN
Assistant Attorney General for
National Security

JEFFREY M. SMITH
JOSEPH P. MINTA
Attorneys, Appellate Unit
National Security Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
Tel.: 202-353-9055
joseph.minta@usdoj.gov

## CERTIFICATE AS TO
## PARTIES, RULINGS, AND RELATED CASES

### I.     Parties

The parties to this case are the Attorney General of the United

States, plaintiff-appellant, and Stephen A. Wynn, defendant-appellee.

No amici have entered an appearance in the district court or in this

Court.

### II.    Ruling Under Review

The October 12, 2022, decision of the district court (Boasberg, J.)

dismissing the complaint without prejudice is reported at *Attorney*

*General of the United States v. Wynn*, No. 22-cv-1372, 2022 WL 7002845

(D.D.C. Oct. 12, 2022), and can be found at A182-A201.

### III.   Related cases

There are no related cases.

/s/ Joseph P. Minta
Joseph P. Minta
Attorney for the Attorney General
of the United States

Dated:  May 12, 2023

# TABLE OF CONTENTS

Page

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED
CASES .................................................................................................i

TABLE OF AUTHORITIES .................................................................iv

GLOSSARY ........................................................................................vii

INTRODUCTION ..................................................................................1

STATEMENT OF JURISDICTION .......................................................3

RELEVANT STATUTES .......................................................................3

STATEMENT OF THE ISSUE ..............................................................3

STATEMENT OF THE CASE ................................................................4

    A.    Stephen Wynn's Actions on Behalf of China ............................4

    B.    Proceedings Below.....................................................................8

SUMMARY OF ARGUMENT ..............................................................13

ARGUMENT ........................................................................................16

I.    The Statute's Civil Enforcement Provision Authorizes Suits
    Against Both Current and Former Agents. ...................................17

    A.    The Plain Language of Section 618(f) Authorizes Suits
    Against Former Agents. ...........................................................18

    B.    The Statute's Structure and History Confirm This
    Interpretation. ..........................................................................21

    C.    The District Court Erred in Its Application of *McGoff*............25

II.    An Unregistered Foreign Agent Remains Obligated To
    Register Even After the Agency Relationship Ends......................29

    A.    FARA's Plain Text Requires Both Current and Former
    Agents To Register. ..................................................................31

    B.    This Case Does Not Involve *McGoff*'s Holding Regarding
    the Criminal Statute of Limitations. ........................................37

CONCLUSION ....................................................................................40

## TABLE OF CONTENTS (cont'd)

Page

CERTIFICATE OF COMPLIANCE.........................................................41

CERTIFICATE OF SERVICE................................................................42

STATUTORY ADDENDUM ..............................................................S-1

# TABLE OF AUTHORITIES

**Cases**                                                                    Page

*Am. Tobacco Co. v. Patterson*,
  456 U.S. 63 (1982) ................................................................. 23

*Biden v. Texas*,
  142 S. Ct. 2528 (2022) ......................................................... 34

*Brnovich v. Democratic Nat'l Comm.*,
  141 S. Ct. 2321 (2021) ......................................................... 18

*Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S*,
  566 U.S. 399 (2012) ............................................................. 37

*Citizens United v. Fed. Election Comm'n*,
  558 U.S. 310 (2010) ............................................................. 26

*City of Salisbury v. FERC*,
  36 F.4th 1164 (D.C. Cir. 2022) ............................................. 33

*Cook Inlet Tribal Council, Inc. v. Dotomain*,
  10 F.4th 892 (D.C. Cir. 2021) ................................. 31, 36, 37

*Fed. Election Comm'n v. Comm. of 100 Democrats*,
  844 F. Supp. 1 (D.D.C. 1993) ............................................... 28

*Food Mktg. Inst. v. Argus Leader Media*,
  139 S. Ct. 2356 (2019) ......................................................... 16

*Grecian Magnesite Mining, Indus. & Shipping Co. v. Comm'r*,
  926 F.3d 819 (D.C. Cir. 2019) ............................................. 32

*Kaseman v. District of Columbia*,
  444 F.3d 637 (D.C. Cir. 2006) ............................................. 23

*Meese v. Keene*,
  481 U.S. 465, 469 (1987) ................................................. 1, 35

*Mellouli v. Lynch*,
  575 U.S. 798 (2015) ............................................................. 24

\**Niz-Chavez v. Garland*,
  141 S. Ct. 1474 (2021) ..................................................... 21, 25

\*Authorities on which we chiefly rely are marked with asterisks.

**TABLE OF AUTHORITIES (cont'd)**

Page

*Salinas v. United States*,
  522 U.S. 52 (1997) ............................................................. 37

*SEC v. Research Resources, Inc.*,
  No. 85-CIV-3530, 1986 WL 11446 (S.D.N.Y. Oct. 8, 1986)........... 28, 36

*SEC v. VTR, Inc.*,
  410 F. Supp. 1309 (D.D.C. 1975)........................................ 29

*Shaffer v. George Washington Univ.*,
  27 F.4th 754 (D.C. Cir. 2022) ............................................ 5

*Shea v. Kerry*,
  796 F.3d 42 (D.C. Cir. 2015)............................................. 26

*Shultz v. Loc. Union 1694, Int'l Longshoremen's Ass'n*,
  310 F. Supp. 1356 (D. Del. 1970)....................................... 29

*United States v. Braxtonbrown-Smith*,
  278 F.3d 1348 (D.C. Cir. 2002)......................................... 35

*United States v. Cordova*,
  806 F.3d 1085 (D.C. Cir. 2015)......................................... 34

*\*United States v. McGoff*,
  831 F.2d 1071 (D.C. Cir. 1987).......... 1, 2, 9-13, 15, 17, 21-27, 30, 32-35

*\*United States v. Taylor*,
  142 S. Ct. 2015 (2022) ................................................. 18

*Validus Reinsurance, Ltd. v. United States*,
  786 F.3d 1039 (D.C. Cir. 2015)......................................... 16

*Viereck v. United States*,
  318 U.S. 236 (1943)..................................................... 33

*Winder v. Erste*,
  566 F.3d 209 (D.C. Cir. 2009)........................................... 20

**Statutes**

22 U.S.C. § 612(a) ...................................................... 10, 30, 31, 38

22 U.S.C. § 612(b) ...................................................... 24

22 U.S.C. § 612(d) ...................................................... 38

## TABLE OF AUTHORITIES (cont'd)

Page

22 U.S.C. § 615 ...................................................................24, 36

22 U.S.C. § 618(a) .............................................. 1, 10, 23, 25, 38

22 U.S.C. § 618(e) ...............................................................25, 38

*22 U.S.C. § 618(f)................................1, 3, 13, 17, 18, 19, 20, 23, 26, 27

28 U.S.C. § 1291 ........................................................................3

28 U.S.C. § 1331 ........................................................................3

28 U.S.C. § 1345 ........................................................................3

Pub. L. No. 77-532, 56 Stat. 248 (1942) ...............................1, 35

Pub. L. No. 89-486, 80 Stat. 244 (1966) ..................................22

### Other Authorities

28 C.F.R. § 5.205 ......................................................................24

H.R. Rep. No. 81-1775 (1950).....................................2, 14, 30

Letter from Peyton Ford to The Speaker, House of Representatives
  (Apr. 12, 1949), *reprinted in* H.R. Rep. No. 81-1775, at 3 (1950) ........22

# <u>GLOSSARY</u>

FARA ...................................................... Foreign Agents Registration Act

PRC .................................................................People's Republic of China

# INTRODUCTION

"[T]o protect the national defense, internal security, and foreign relations of the United States," the Foreign Agents Registration Act (FARA) requires agents of foreign principals to register with the Attorney General "so that the Government and the people of the United States may be informed of the identity of such persons and may appraise their statements and actions in the light of their associations and activities." *Meese v. Keene*, 481 U.S. 465, 469 (1987) (quoting Act of April 29, 1942, Pub. L. No. 77-532, 56 Stat. 248, 248-49). "The idea is a frequently recurring one in modern government: public disclosure is needed in order for the public (and, at times, the Government itself) accurately to evaluate such activities." *United States v. McGoff*, 831 F.2d 1071, 1074 (D.C. Cir. 1987). Accordingly, FARA empowers the Attorney General to sue civilly for an order "requiring compliance with any appropriate provision" of the statute, 22 U.S.C. § 618(f), including the core registration requirement, and makes willful violations of the statute a criminal offense, *id.* § 618(a).

With great reluctance, the district court below interpreted this Court's precedent to render FARA's civil enforcement mechanism

1

toothless.  The district court concluded that once an individual has

ceased acting as an agent of a foreign principal, no civil suit can compel

his delinquent registration.  A189.  This was so, the court held, despite

the fact that "even agents who have since ended their agency

relationship but who never registered their activities are still in

possession of information that FARA says the public needs."  A200

(internal quotation marks and alterations omitted).  The opportunity for

gamesmanship is obvious:  in this Circuit, foreign agents are now free to

ignore FARA's registration requirements secure in the knowledge that,

once they have terminated their activities on behalf of a foreign

principal, no civil remedy exists.

     The district court's conclusion was incorrect.  Congress long ago

acted "to remove any doubt as to the liability of an agent to file a

registration statement for the period in which he was acting as an agent

and thereafter has ceased such activity."  *McGoff*, 831 F.2d at 1087

(quoting H.R. Rep. No. 81-1775, at 1 (1950)).  The plain language of the

statute authorizes civil suits, such as this one, to compel registration

even when an individual has ceased acting on behalf of a foreign

principal.  The district court's decision should be reversed.

2

## STATEMENT OF JURISDICTION

The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1345, as well as 22 U.S.C. § 618(f).  The district court issued its decision dismissing the complaint on October 12, 2022, A181, and a timely notice of appeal was filed on December 9, 2022, A202.  As an appeal of a final order of a district court, this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## RELEVANT STATUTES

The relevant sections of the Foreign Agents Registration Act, 22 U.S.C. § 611 *et seq.*, are set forth in the addendum to this brief.

## STATEMENT OF THE ISSUE

Whether the Attorney General is authorized to file a civil enforcement action seeking an order requiring a foreign agent's compliance with the registration requirements of the Foreign Agents Registration Act after the agent's activities on behalf of a foreign principal have ceased.

## STATEMENT OF THE CASE

### A.    Stephen Wynn's Actions on Behalf of China

In October 2020, Elliott Broidy, defendant Stephen Wynn's predecessor as the finance chair of the Republican National Committee, pleaded guilty to conspiring to violate the Foreign Agents Registration Act.  Plea Agreement, *United States v. Broidy*, No. 20-cr-210 (D.D.C. Oct. 20, 2020), ECF No. 8.  Broidy admitted that, in exchange for millions of dollars and without registering under FARA, he lobbied the President and Attorney General of the United States, as well as other high-level officials in the administration and the Department of Justice, on behalf of the People's Republic of China (PRC or China).  *See* Statement of Offense, *United States v. Broidy*, No. 20-cr-210 (D.D.C. Oct. 20, 2020), ECF No. 7.  In particular, Broidy lobbied the U.S. government (1) to drop civil forfeiture proceedings concerning the embezzlement of billions of dollars from a Malaysian company and (2) to arrange for the removal and return to China of a Chinese dissident living in the United States.[1]  *See id.*  Nickie Lum Davis, who assisted

---

[1] On January 19, 2021, the President issued Broidy a full and unconditional pardon covering the offenses charged in the case.  *See* (continued . . .)

Broidy in the scheme, also pleaded guilty to violating FARA.  *See*

Hearing Minutes, *United States v. Davis*, No. 20-cr-68 (D. Haw. Aug. 31,

2020), ECF No. 13, *appeal docketed*, No. 23-10015 (9th Cir. Jan. 26,

2023).  A jury also found Prakazrel Michel guilty on charges related to

the scheme.  *See* Verdict Form, *United States v. Michel*, No. 19-cr-148

(D.D.C. Apr. 26, 2023), ECF No. 273.

　　As alleged in the Complaint,[2] Wynn played a central role, working

with Broidy and on behalf of the PRC government, in lobbying for the

removal of the same Chinese dissident businessperson.  In May 2017,

China's Vice Minister of Public Security, Sun Lijun, met with Broidy,

Davis, and Michel.  A4.  Sun explained that he sought the removal and

return of a Chinese businessperson who fled to the United States in

2014 and was seeking asylum here.  A4-A5.  In June 2017, Broidy

approached Wynn regarding Sun's request.  A5.  Broidy believed that

---

Notice of Exec. Grant of Clemency & Consent Mot. To Dismiss as Moot,
*United States v. Broidy*, No. 20-cr-210 (D.D.C. Apr. 13, 2021), ECF No.
15.

　　[2] "[O]n review of motions to dismiss," this Court accepts "the facts
as Plaintiffs allege them, with reasonable inferences drawn in their
favor."  *Shaffer v. George Washington Univ.*, 27 F.4th 754, 761 (D.C. Cir.
2022).

Wynn's Republican National Committee experience, business dealings in China, and friendship with the President would be helpful in gaining access to Trump administration officials. A5. Broidy told Wynn that Sun requested Wynn's assistance in bringing the issue to the attention of the administration. A5. He provided Wynn with the targeted Chinese businessperson's passport photo, an Interpol red notice, and various news articles about the person. A5. Later that month, Wynn and Sun spoke by telephone, and Sun directly requested Wynn's assistance with seeking the businessperson's removal from the United States. A5. Wynn agreed to raise the issue with then-President Trump and other administration officials. A5.

On June 27, 2017, Wynn dined with President Trump and one or more other administration officials. A6. During this dinner, Wynn conveyed to the President China's desire to have the Chinese businessperson removed and provided the President's secretary with the businessperson's passport photo. A6. After the dinner, Broidy texted Wynn (through Wynn's wife) that Sun was "extremely pleased and said that President Xi Jinping appreciates [Wynn's] assistance." A6. The next day Wynn told Broidy, "This is with the highest levels of

the state department and defense department.  They are working on this."  A6-A7.

In July 2017, Wynn met with two National Security Council members and the White House chief of staff.  A7-A8.  Wynn told them that Chinese officials had contacted him and that "they were very interested in having" the Chinese businessperson returned to China as soon as possible.  A8.  In August 2017, Wynn had several unscheduled meetings with the President and discussed the Chinese businessperson during at least some of those meetings.  A8.  That month Broidy and Wynn together called the President to ask about the status of the Chinese businessperson.  A8.  The President responded that he would look into it.  A8.

From June until August 2017, Wynn and Sun had at least eight more calls, averaging approximately 30 minutes in length.  A7.  During those calls, Sun reiterated the importance of the United States not renewing the Chinese businessperson's visa and stated that he would appreciate Wynn's help.  A7.  During those same calls, Wynn repeatedly mentioned his business interests in Macau, a special administrative region of China.  A7.  Wynn owned three casinos in Macau, whose

7

licenses were scheduled for renegotiation in 2019. A3, A9. In 2016, China had restricted the number of gaming tables and machines in those casinos. A9. The Complaint alleges that Wynn's actions were motivated by his desire to protect his business interests in China. A9.

In October 2017, Wynn told Sun that he had made U.S. officials aware of the request but that he was not able to provide any additional assistance. A8-A9. He asked Sun to stop contacting him. A8-A9. He told Sun that he was "grateful for the privilege of being part of the Macau and PRC business community." A9. China's efforts to induce the removal of the dissident businessperson from the United States were unsuccessful. A8.

## B.    Proceedings Below

In May 2018, the government contacted Wynn and informed him that he was required to register under FARA as an agent of Sun and the People's Republic of China. A11. Wynn, through counsel, denied any obligation to register. A11. In May 2022, after the guilty pleas of Broidy and Davis and after additional correspondence with Wynn's counsel, the government brought this civil suit seeking a declaratory

judgment that Wynn was required to register under FARA and an injunction requiring him to do so.

Wynn moved to dismiss the Complaint, arguing, among other things, that any obligation to register ended in October 2017, when he ceased acting as an agent of China. Specifically, Wynn claimed that this Court's decision in *United States v. McGoff*, 831 F.2d 1071 (D.C. Cir. 1987), held that an individual's obligation to register ends immediately upon termination of his foreign agency and thereby foreclosed the possibility of a civil suit compelling retroactive registration under FARA. *See* A32-A38.

In *McGoff*, this Court addressed a criminal FARA prosecution where the defendant had ceased acting as a foreign agent more than seven years before he was indicted. 831 F.2d at 1072. Because a five-year statute of limitations applied, *id.* at 1073, the timeliness of the prosecution hinged on when the statute of limitations began to run. The defendant argued that it began to run when he ceased acting as an agent, while the government argued that the failure to register was a continuing violation, and thus the statute of limitations had not begun to run. *See id.*

9

To resolve this dispute, the *McGoff* majority analyzed and interpreted Section 618(a), which makes it a crime to "willfully violate[] any provision" of FARA, and Section 618(e), which makes the failure to file a "continuing offense." 831 F.2d at 1078-81. However, the Court concluded that "the decisive question in resolving the statute-of-limitations issue is when the continuing offense terminates. This question . . . turns on the duration of the registration obligation of section 612(a)." *Id.* at 1081-82.

The *McGoff* majority and dissent parted ways at this point. Section 612(a) of FARA states:

> The obligation of an agent of a foreign principal to file a registration statement shall, after the tenth day of his becoming such agent, continue from day to day, and termination of such status shall not relieve such agent from his obligation to file a registration statement for the period during which he was an agent of a foreign principal.

As the district court here explained, there are two possible interpretations of this language, depending on whether one reads the concluding clause ("for the period during which he was an agent of a foreign principal") as modifying "registration statement" or "obligation." A191. The district court observed that the former was "the more

10

sensible reading," and it would "clarify that, although registration as an agent is retroactively required even after the termination of an agency relationship, the registration statements that a former agent needed to file would have to report information only from those prior periods during which he was acting on behalf of a foreign principal, as opposed to indefinitely into the future." A191-A192. The district court went on to explain that "[t]he benefit of this interpretation is that it comports with the rule of the last antecedent and thus is the 'more natural' reading of the text." A192. This was also the reading Judge Bork endorsed in his *McGoff* dissent. *See* 831 F.2d at 1100.

The *McGoff* majority, however, found that, while the language was ambiguous, the concluding clause of Section 612(a) should be read to modify "obligation" rather than "statement." *See* 831 F.2d at 1091. As the district court observed, "this reading creates its own challenges." A193. This interpretation attributes to Congress the desire to solve a non-existent problem—that criminal liability might otherwise vanish the moment agency terminates. A193. And it reads Congress to have attempted to solve this problem in a strange way, as the concluding phrase in Section 612(a) would be unnecessary and only introduce

11

ambiguity.  A193.  Nonetheless, the district court found that it was bound by *McGoff* to adopt this interpretation of Section 612(a).

The district court then addressed the implications of this reading for civil suits under Section 618(f) of FARA.  The government argued that *McGoff*'s interpretation of Section 612(a) "has no bearing on the interpretation of § 618(f) and whether that provision allows the Government to bring an enforcement action to compel registration where the agency relationship may have ceased."  A117.  Indeed, the *McGoff* majority declined to adopt Judge Bork's view that its interpretation of Section 612(a) would impact civil enforcement suits, and merely "assum[ed] *arguendo*" that this was true.  *See McGoff*, 831 F.2d at 1094 n.32.  Although describing the issue as "close," A189, the district court disagreed with the government and held that, in the absence of a continuing obligation to register, the Attorney General could not maintain a civil enforcement action.  A199.  The court reasoned that "Section 618(f) merely creates the cause of action," and therefore the government must identify a separate provision of FARA that the defendant was currently violating.  A198.

12

Because *McGoff* held that Wynn's obligation to register expired upon the termination of his agency relationship, the district court dismissed the complaint. The district court confirmed, however, that the government's "aim in this lawsuit . . . is plainly consistent with the central goal of FARA." A200 (internal quotation marks omitted). "Indeed, the Court does not dispute that even agents who have since ended their agency relationship but who never registered their activities are still in possession of 'information that [FARA] says the public needs.'" A200 (quoting *McGoff*, 831 F.2d at 1099 (Bork, J., dissenting)).

## SUMMARY OF ARGUMENT

The Foreign Agents Registration Act authorizes the Attorney General to bring this suit. The Complaint alleges that, in 2017, Wynn acted as an agent of a foreign principal without registering under FARA as the statute requires. Section 618(f) empowers the Attorney General to sue for "an order requiring compliance with any appropriate provision" of FARA "whenever any agent of a foreign principal fails to comply with" the statute. Wynn acted as an agent of a foreign principal

13

and failed to comply with the statute's registration requirement. This suit thus falls squarely within the text of Section 618(f).

The statute's structure and history confirm that an unregistered foreign agent cannot evade his legal responsibility to register by terminating his agency relationship. In 1950, Congress amended FARA's registration requirement "to remove any doubt as to the liability of an agent to file a registration statement for the period in which he was acting as an agent and thereafter has ceased such activity." H.R. Rep. No. 81-1775, at 1. When Congress added FARA's civil enforcement provision in 1966, it had thus already acted, in the criminal context, to foreclose the argument that Wynn now makes in the civil context. There is no basis in FARA's text or legislative history for concluding that Congress instead sought to open a loophole for civil suits that it had already closed in the criminal context. Rather, FARA's structure, like its text, indicates that its criminal and civil enforcement provisions both remain available after an individual has ceased acting as an agent.

To hold, as the district court did, that the government must identify a separate provision of FARA the defendant is continuing to

14

violate would render significant portions of Section 618(f) a hollow shell and would violate the rule against surplusage. Such a reading would also run counter to the purpose of the statute because it would create gaping holes in the government's ability to civilly enforce FARA that foreign powers and their agents could easily exploit. Nothing in this Court's decision in *United States v. McGoff*, 831 F.2d 1071 (D.C. Cir. 1987), requires such a reading, as that case focused on FARA's criminal provisions, mentioning Section 618(f) only in passing. The *McGoff* majority carefully and explicitly avoided opining on the question presented in this case, even in the face of repeated criticism from the dissent about the potential impacts on civil enforcement of FARA. *See, e.g.*, 831 F.2d at 1094 n.32. Because Section 618(f) authorizes this civil suit, the district court's dismissal of the Complaint should be reversed.

Moreover, even if the government were required to show an ongoing violation of FARA, it has alleged an ongoing violation of the plain language of Section 612(a) here. Although the government concedes for purposes of this brief that *McGoff* held "that the statutory obligation to file expires when the agent ceases activities on behalf of the foreign principal," 831 F.2d at 1082, the government maintains that

*McGoff*'s analysis of Section 612(a) was deeply flawed, misapplying the canons of statutory interpretation. Properly read, Section 612(a) imposes an ongoing registration obligation on agents of foreign principals such as Wynn, regardless of any subsequent actions the agent may have taken. While the government accepts for purposes of this case *McGoff*'s ultimate conclusion regarding when the criminal statute of limitations begins to run, the government preserves its arguments regarding the proper interpretation of Section 612(a) for further review.

## ARGUMENT

This case concerns the proper interpretation of the Foreign Agents Registration Act. As "a pure legal question of statutory interpretation," this Court's review is *de novo*. *Validus Reinsurance, Ltd. v. United States*, 786 F.3d 1039, 1042 (D.C. Cir. 2015). "In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019). As explained below, the ordinary meaning of FARA's Section 618(f), as

well as the structure and history of the statute, require the district

court's decision to be reversed.

## I.    THE STATUTE'S CIVIL ENFORCEMENT PROVISION AUTHORIZES SUITS AGAINST BOTH CURRENT AND FORMER AGENTS.

When Congress originally passed FARA in 1938, the statute

contained only criminal enforcement provisions.  Over time, the need

for a civil enforcement mechanism became clear, as "employment of

criminal sanctions in this setting was . . . to employ a Howitzer in lieu

of a fly swatter."  *McGoff*, 831 F.2d at 1094.  Thus, in 1966, Congress

added Section 618(f) to FARA, empowering the government to file a civil

enforcement action

> [w]henever . . . any person is engaged in or about to engage
> in any acts which constitute or will constitute a violation of
> any provision of this subchapter, or regulations issued
> thereunder, or whenever any agent of a foreign principal
> fails to comply with any of the provisions of this subchapter
> or the regulations issued thereunder, or otherwise is in
> violation of the subchapter.

22 U.S.C. § 618(f).  The two prongs of this authorization target ongoing

(or anticipated) violations and completed violations, respectively.

Because the Complaint alleges a completed violation—that Wynn was

an agent of a foreign principal who failed to comply with the statute—

17

this suit is appropriate under Section 618(f), and the district court's
dismissal of the Complaint should be reversed.

### A.   The Plain Language of Section 618(f) Authorizes Suits Against Former Agents.

"Today, . . . statutory interpretation cases almost always start
with a careful consideration of the text, and there is no reason to do
otherwise here." *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321,
2337 (2021). To determine the scope of the government's civil
enforcement power, this Court's analysis should begin with the text
spelling out that power. Section 618(f) authorizes the government to
bring suit in two circumstances. First, the government may sue
"[w]henever . . . any person is engaged in or about to engage in any acts
which constitute or will constitute a violation of any provision of this
subchapter, or regulations issued thereunder." Second, Section 618(f)
authorizes suit "whenever any agent of a foreign principal fails to
comply with any of the provisions of this subchapter or the regulations
issued thereunder, or otherwise is in violation of the subchapter."

The two prongs of Section 618(f) must be given independent
meaning. *See United States v. Taylor*, 142 S. Ct. 2015, 2024 (2022)

18

("[W]e do not lightly assume Congress adopts two separate clauses in the same law to perform the same work."). To do so is straightforward. The verbs in the first clause—"engaged in or about to engage in"—show that the clause addresses ongoing and anticipated violations. It uses the term "any person" to further emphasize that it includes those who are not yet, but are about to become, agents. In contrast, the second clause addresses those who have already acted as agents but who "fail[] to comply with" FARA's requirements. This case falls squarely within this latter category.

In holding that the government cannot sue individuals who are no longer acting as agents of foreign principals, the district court rendered the second authorization pure surplusage. Any current agent of a foreign principal who "fails to comply with" FARA's requirements necessarily is a "person . . . engaged in . . . acts which constitute or will constitute a violation of" FARA—namely acting as an agent of a foreign principal without being properly registered. To give independent force to the second prong of Section 618(f), the prong must be read, as its plain language indicates, to apply to those who have ceased acting as agents of foreign principals, but who fail to register in compliance with

FARA's requirements.  After all, it is a "cardinal rule of statutory interpretation that no provision should be construed to be entirely redundant." *Winder v. Erste*, 566 F.3d 209, 214 (D.C. Cir. 2009) (internal quotation marks omitted).

The remedies that Section 618(f) permits underscore this point. In a civil enforcement action, the government may seek "an order enjoining such acts or enjoining such person from continuing to act as an agent of such foreign principal, or for an order requiring compliance with any appropriate provision of the subchapter or regulation thereunder."  Again, the statute contemplates two scenarios:  (a) an individual who is violating or about to violate the statute, who can be enjoined from doing so, and (b) someone who has failed to comply with the statute, who can be ordered to comply.  This latter remedy is appropriately invoked, as here, against an individual who has ceased acting as a foreign agent and continues to fail to comply with the registration requirement.

This suit falls firmly within Section 618(f)'s plain language.  The Complaint alleges that Wynn failed to comply with FARA, thereby satisfying the condition for the Attorney General to file suit.  And the

suit seeks an order compelling his compliance, one of the remedies explicitly contemplated.  In holding that civil enforcement actions under FARA are never possible against agents who have ceased acting as such, the district court erroneously rendered each of these portions of Section 618(f) meaningless.

> **B.    The Statute's Structure and History Confirm This Interpretation.**

Reading Section 618(f) to authorize civil enforcement actions against agents of foreign principals who fail to register but cease their activities is also the interpretation most consistent with FARA's overall structure and history.  *See Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1482 (2021) ("To the extent any doubt remains about the meaning of the . . . statutes before us, we believe a wider look at [the] statutory structure and history [is] enough to resolve it.").  Shortly after FARA's enactment, the Department of Justice sought amendments to FARA's registration requirement to close a potential loophole that foreign agents might exploit:  "Doubt has . . . arisen as to the liability of an agent to file a registration statement for the period during which he was acting as an agent of a foreign principal if he has since ceased such

activity." *McGoff*, 831 F.2d at 1086 (quoting Letter from Peyton Ford to The Speaker, House of Representatives (Apr. 12, 1949), *reprinted in* H.R. Rep. No. 81-1775, at 3); *see also id.* at 1087 ("[I]ndividuals subject to FARA were attempting to evade the Act's requirements by ceasing their activities and claiming as an affirmative defense that withdrawal from an agency relationship automatically eliminated liability for failure to file."). To close this potential loophole, Congress both added language to Section 612(a) stating that "termination of [foreign agency] status shall not relieve such agent from his obligation to file a registration statement for the period during which he was an agent of a foreign principal,"[3] and introduced Section 618(e), which made the failure to register under FARA a "continuing offense." *See generally McGoff*, 831 F.2d at 1086-93 (recounting this history).

When Congress added Section 618(f)'s civil enforcement mechanism to FARA in 1966, *see* Pub. L. No. 89-486, § 7(2), 80 Stat. 244, 248, it did so against the backdrop of this history. That is,

---

[3] The language added in 1950 differed slightly from Section 612(a)'s current text in ways not relevant here. The section's current language was finalized in 1966, at the same time Section 618(f) was added. *See McGoff*, 831 F.2d at 1090 n.29.

Congress had already acted to prevent agents from avoiding criminal exposure for violating FARA merely by ceasing their activities. Congress therefore drafted Section 618(f) to allow civil enforcement actions against such agents, as described above. Wynn claims, however, that Congress affirmatively reintroduced this loophole, allowing foreign agents to easily avoid civil enforcement actions merely by ceasing their activities before the Attorney General can file suit. Nothing in FARA's structure or legislative history suggests Congress sought to produce such a strange result. *See Kaseman v. District of Columbia*, 444 F.3d 637, 642 (D.C. Cir. 2006) ("When possible, statutes should be interpreted to avoid 'untenable distinctions,' 'unreasonable results,' or 'unjust or absurd consequences.'") (quoting *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 71 (1982)).

FARA's structure also confirms this interpretation. The statute contains both criminal and civil provisions, *compare* 22 U.S.C. § 618(a), *with id.* § 618(f), with the civil provision designed to provide a less severe enforcement mechanism. *See McGoff*, 831 F.2d at 1094 ("The addition . . . of civil enforcement mechanisms in 1966 further stressed the goal of forcing disclosure rather than punishing nondisclosures.").

23

It is beyond dispute that criminal liability continues beyond the end of an individual's agency. Indeed, *McGoff* held that it extends for five years beyond that point. *See* 831 F.2d at 1096. Yet the district court held that once an individual's agency has terminated, the government can only choose whether "to employ a Howitzer," as the "fly swatter" is unavailable. *See id.* at 1094. The far more coherent structure would, consistent with Section 618(f)'s plain language, allow FARA's civil enforcement mechanism to also remain available.[4] *See Mellouli v. Lynch*, 575 U.S. 798, 809-10 (2015) ("Statutes should be interpreted as a symmetrical and coherent regulatory scheme." (internal quotation marks omitted)).

Furthermore, FARA explicitly requires at least one filing after an agency relationship has ended. *See* 22 U.S.C. § 612(b) (requiring supplemental filings every six months); 28 C.F.R. § 5.205 ("A registrant shall, within 30 days after the termination of his obligation to register, file a final statement on the supplemental statement form . . . .").

---

[4] Other portions of FARA's structure also extend beyond the end of an individual's agency. For example, FARA requires agents to preserve records related to their agency for several years. *See* 22 U.S.C. § 615.

24

Nothing in FARA's text or history suggests Congress intended this final filing requirement to be enforceable only criminally, but that is precisely the result that would ensue if Section 618(f) is unavailable once an individual's agency relationship has ended. This is yet another item in "a long parade of textual and contextual clues," *Niz-Chavez*, 141 S. Ct. at 1484, that indicate that Section 618(f) authorizes civil suits even after an individual has terminated his or her agency.

## C.    The District Court Erred in Its Application of *McGoff*.

Rather than grounding its analysis in the text of Section 618(f), the district court concluded that "*McGoff* forecloses the Government's interpretation of the statute and requires dismissal of the suit." A189. This was error, as *McGoff* does not control the result in this case. In *McGoff*, this Court addressed the statute of limitations for criminal violations of FARA; the decision mentioned FARA's civil enforcement provision, Section 618(f), only in passing. *See* 831 F.2d at 1075 (noting Section 618(f)'s role in FARA's "comprehensive regulatory scheme"). Instead, *McGoff* analyzed and interpreted Section 618(a), which makes it a crime to "willfully violate[] any provision" of FARA, and Section 618(e), which makes the failure to register a "continuing offense."

25

Although the *McGoff* majority aimed to read these provisions "in harmony" with the rest of the statute, *id.* at 1081, even this effort only analyzed Section 612(a), which sets out an agent's registration obligation.  As the government argued to the district court, "[c]ivil enforcement actions . . . are authorized by a separate statutory provision."  *See* A116 (citing 22 U.S.C. § 618(f)).[5]

The *McGoff* majority explicitly discussed, and left open, the question presented in this case.  *See* 831 F.2d at 1094 n.32.  Faced with the dissent's accusation that the Court was "preclud[ing] the

---

[5] The government also noted that *McGoff*'s discussion of the rule of lenity could "ha[ve] no bearing on the interpretation of § 618(f)."  A117; *see also* A118 (noting "the Government's reliance on § 618(f) in this case").  However, the district court faulted the government for not unpacking Section 618(f)'s language.  *See* A199 ("If an interpretation of § 618(f) exists that would allow the Government to compel Wynn to register today notwithstanding *McGoff*'s interpretation of the registration obligation in § 612(a), the Government does not provide it here.").  To the extent the government now elaborates further on its view of Section 618(f) to support its central claim, this Court has made clear that parties "enjoy[] a measure of latitude to elaborate on [a] theory in service of the same argument" raised below, as this brief does. *Shea v. Kerry*, 796 F.3d 42, 54 (D.C. Cir. 2015); *see also Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 330-31 (2010) ("Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." (internal quotation marks omitted)).

26

Government from using the civil injunctive remedies to compel anyone to file a registration statement once the agency relationship has ended," the *McGoff* majority refused to accept the premise. *Id.* Instead, the majority only "assum[ed] *arguendo*" that the dissent's premise was true and noted that the Court was only holding that the criminal statute of limitations continued to run for five years from that point. *Id.* If Wynn were correct that *McGoff* had already decided this case, no such assumption would have been necessary.

Yet the district court concluded that "Section 618(f) merely creates the cause of action," and that "[t]he provision that the Government actually seeks to enforce with its desired injunction, and which it alleges that Wynn has failed to comply with, is the registration requirement of § 612(a)." A198. But this analysis reads a limitation into Section 618(f) found nowhere in the text—that the government must identify a separate provision of FARA that a defendant is continuing to violate. On the contrary, once a violation has occurred, this satisfies one of Section 618(f)'s conditions precedent—when "any agent of a foreign principal fails to comply with any of the provisions of" FARA—and a civil enforcement action is authorized. Then, Section

27

618(f) empowers a district court to issue "an order requiring compliance with any appropriate provision" of FARA.

In this way, FARA operates similarly to other disclosure statutes. For example, the Securities and Exchange Commission relies on civil suits to enforce financial reporting requirements, including for reporting obligations in prior years. *See, e.g.*, *SEC v. Research Resources, Inc.*, No. 85-CIV-3530, 1986 WL 11446, at *4 (S.D.N.Y. Oct. 8, 1986) (Even where "defendants conten[d] that the reports ought not be required because they deal with information no longer relevant about business no longer existing . . . , the Court may properly issue mandatory injunctions requiring defendants to file their delinquent reports and . . . correct [their] misleading Form 8-K." (internal quotation marks omitted)). The Federal Election Commission likewise sues to enforce the disclosure requirements of the Federal Election Campaign Act, including for violations during prior elections. *See, e.g.*, *Fed. Election Comm'n v. Comm. of 100 Democrats*, 844 F. Supp. 1, 8 (D.D.C. 1993) (enforcing agreement requiring defendant committee to "fil[e] scheduled reports disclosing all contributions received and disbursements made" in past election). In none of these instances is the

28

government required to further show that a violation continues to occur, only that one has occurred.[6]  The district court's conclusion that FARA's civil enforcement provision uniquely requires a showing of a separate, continuing violation should be reversed.  "[W]henever any agent of a foreign principal fails to comply with any of the provisions of" FARA, a civil enforcement action is appropriate, regardless of the status of that agent when the enforcement action is instituted.

## II.    AN UNREGISTERED FOREIGN AGENT REMAINS OBLIGATED TO REGISTER EVEN AFTER THE AGENCY RELATIONSHIP ENDS.

Even if the government was required to show that a foreign agent remains obligated to register after ceasing his activities, the plain

---

[6] In *Shultz v. Loc. Union 1694, Int'l Longshoremen's Ass'n*, 310 F. Supp. 1356 (D. Del. 1970), the Secretary of Labor sued to enforce financial reporting requirements set forth in the Labor Management Reporting and Disclosure Act.  The court found both past and ongoing violations and issued an injunction addressing each.  *See id.* at 1361 ("[A]n injunction should issue (a) requiring [defendants] to file corrected, amended reports for the fiscal years 1966, 1967 and 1968, and (b) enjoining the [defendants] from further violations of the record keeping and reporting requirements."); *see also SEC v. VTR, Inc.*, 410 F. Supp. 1309, 1311-12 (D.D.C. 1975) ("The Permanent Injunction . . . directed VTR to file with the SEC certain overdue quarterly reports, annual reports and financial statements, and permanently enjoined VTR from failing to file timely and proper periodic and current reports as required.").

language of Section 612(a) so states. Section 612(a) of FARA prohibits

any person from "act[ing] as an agent of a foreign principal unless he

has filed with the Attorney General a true and complete registration

statement." To clarify "the liability of an agent to file a registration

statement for the period during which he was acting as an agent of a

foreign principal if he has since ceased such activity," Congress added

additional language to Section 612(a) in 1950. *McGoff*, 831 F.2d at 1087

(quoting H.R. Rep. No. 81-1775, at 1). The provision now states:

> The obligation of an agent of a foreign principal to file a
> registration statement shall, after the tenth day of his
> becoming such agent, continue from day to day, and
> *termination of such status shall not relieve such agent from*
> *his obligation to file a registration statement for the period*
> *during which he was an agent of a foreign principal*.

22 U.S.C. § 612(a) (emphasis added). This language makes clear that

even a former agent remains obligated to register if he has not already

done so.

The government concedes for purposes of this brief that *McGoff*

held that "it appears that the statutory obligation to file expires when

the agent ceases activities on behalf of the foreign principal." 831 F.2d

at 1082. However, in reaching that conclusion, the *McGoff* majority

misapplied well-established canons of statutory interpretation in an effort to avoid continuing criminal liability for willful failures to register.  The government preserves its arguments, outlined below, for a contrary reading of Section 612(a) for further review by this Court *en banc* or the Supreme Court, if necessary.

### A.    FARA's Plain Text Requires Both Current and Former Agents To Register.

"As in all cases of statutory interpretation, we start with the controlling statute's text."  *Cook Inlet Tribal Council, Inc. v. Dotomain*, 10 F.4th 892, 894 (D.C. Cir. 2021).  Read most naturally, the language added to Section 612(a) anticipates, and directly rejects, Wynn's claim that an agent is no longer required to register once the agent has ceased acting as such.  It states that ceasing to act as a foreign agent ("termination of such status") "shall not relieve" an individual of the "obligation to file a registration statement" covering "the period during which he was an agent."  In other words, an agent cannot avoid the registration requirement Congress imposed merely by ceasing his conduct once he has been discovered, or by only acting as an agent for a short period of time.

31

In *McGoff*, this Court identified a second possible interpretation of the language added to Section 612(a). Under that alternative reading, the phrase "for the period during which he was an agent of a foreign principal" would reach farther back in the sentence to modify "obligation" rather than "statement." *See McGoff*, 831 F.2d at 1083. Under that construction, the clause would mean only that, where a former agent is prosecuted for failing to comply with FARA, the fact that he has ceased acting as an agent is not a defense.

Although the *McGoff* panel was divided over the best reading of the statute, all three judges agreed that the first reading of Section 612(a)—where the phrase modifies "statement"—is the "more natural" one. *McGoff*, 831 F.2d at 1083; *id.* at 1100 (Bork, J., dissenting). The district court here also agreed it was "the more sensible reading." A191. After all, this reading follows the rule of the last antecedent, which in its more applicable form as the nearest-reasonable-referent rule states that "ordinarily, and within reason, modifiers and qualifying phrases attach to the terms that are nearest." *Grecian Magnesite Mining, Indus. & Shipping Co. v. Comm'r*, 926 F.3d 819, 824 (D.C. Cir. 2019). Here, "because the nearest referent is also a reasonable one, there is no

basis for reading the limiting phrase to modify other, more-distant language." *City of Salisbury v. FERC*, 36 F.4th 1164, 1169 (D.C. Cir. 2022).

The *McGoff* majority suggested that, under the government's reading, the final phrase would be surplusage because "[a] FARA-required registration statement can, in logic, relate to no period other than 'the period during which' the individual acted as an agent." *McGoff*, 831 F.2d at 1083.  On the contrary, "[t]here would be nothing illogical about requiring a person who becomes an agent of a foreign principal to disclose information about himself from either before or after the time he had become an agent." *Id.* at 1100 (Bork, J., dissenting).  The concluding phrase of the relevant portion of Section 612(a), far from being surplusage, acts to foreclose this more expansive reading of FARA's registration requirements.  *See Viereck v. United States*, 318 U.S. 236, 243 (1943) (overturning FARA conviction based on agent's failure to disclose activities unrelated to his actions as a foreign agent).

Furthermore, the alternative, less natural reading of the statute adopted by the *McGoff* majority creates its own surplusage problem.  As

the district court explained, "Congress could have amended § 612(a) by simply adding the phrase 'termination of such status shall not relieve such agent from his obligation to file a registration statement' without the concluding clause, which both creates the issue of an ambiguous referent and does not seem strictly necessary." A193. "If Congress had wanted the provision to have that effect, it could have said so in words far simpler than those that it wrote." *Biden v. Texas*, 142 S. Ct. 2528, 2539 (2022).

This reading also creates the absurdity that Judge Bork pointed out: the statute's text would have the same meaning if the word "not" were removed. *See McGoff*, 831 F.2d at 1101 (Bork, J., dissenting). That is, the *McGoff* majority read Section 612(a) to mean that "termination of [the agent's] status shall ~~not~~ relieve [the] agent from his obligation to file a registration statement" at that point in time. The text that Congress enacted says precisely the opposite.

By holding that an agent's registration obligation immediately disappears upon termination of his agency, the *McGoff* majority adopted an unnatural interpretation that also runs counter to FARA's express purpose. *See United States v. Cordova*, 806 F.3d 1085, 1099

34

(D.C. Cir. 2015) ("We 'must avoid an interpretation that undermines congressional purpose considered as a whole when alternative interpretations consistent with the legislative purpose are available.'" (quoting *United States v. Braxtonbrown-Smith*, 278 F.3d 1348, 1352 (D.C. Cir. 2002))).  As the Supreme Court has recognized, FARA requires foreign agents to register "so that the Government and the people of the United States may be informed of the identity of such persons and may appraise their statements and actions in the light of their associations and activities."  *Meese v. Keene*, 481 U.S. 465, 469 (1987) (quoting Act of April 29, 1942, Pub. L. No. 77-532, 56 Stat. 248, 248-49).  Many statements that a foreign agent may make will persist and affect public discourse in the United States well beyond the termination of the agency relationship.  By creating a loophole through which foreign agents, especially those engaged in short-term activities, may decline to register without civil consequence, *McGoff*'s reading of Section 612(a) dramatically curtails the information available to the

United States and its people regarding foreign efforts to exert influence in our country.[7]

Even if the more natural reading of Section 612(a) did pose surplusage concerns, these circumstances closely parallel those in *Cook Inlet Tribal Council, Inc. v. Dotomain*, 10 F.4th 892 (D.C. Cir. 2021). There, this Court applied the nearest-reasonable-referent canon even in the face of potential concerns about surplusage. *Id.* at 896. This Court did so because it was "far more faithful to the statutory scheme to view" the "provision as reinforcing the rest of the statute in a belt-and-suspenders manner," and because a contrary reading would do greater

---

[7] The *McGoff* majority asserted, in dicta and without citation, that "FARA does not evince an antiquarian interest on Congress' part; FARA's focus is on the here and now." 831 F.2d at 1082. Yet, even this claim immediately followed the acknowledgement that FARA requires agents to preserve records for several years after their agency relationship ends. *See id.* (citing 22 U.S.C. § 615). Moreover, "there is no reason to expect the Act to hinge the disclosure obligation on the continuation of the agency. Cessation of agency does not eliminate the evil the Act seeks to remedy, which is the failure to disclose; only disclosure itself, *i.e.*, registration, puts an end to that evil." *Id.* at 1099 (Bork, J., dissenting); *cf. Research Resources*, 1986 WL 11446, at *4 ("Were the Court to accept the notion that the passage of time renders otherwise required reports meaningless, and therefore unnecessary, the opportunity to circumvent all reporting requirements would arise, requiring only that issuers stave off their enforcement until circumstances change. This the Court cannot allow.").

violence to the statutory language. *Id.* Similarly, applying the rule of the last antecedent is most consistent with FARA's purpose and avoids the problems posed by the alternative, less natural reading of the statute. After all, "the mere possibility of clearer phrasing cannot defeat the most natural reading of a statute." *Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S*, 566 U.S. 399, 416 (2012); *see also Salinas v. United States*, 522 U.S. 52, 60 (1997) ("A statute can be unambiguous without addressing every interpretive theory offered by a party."). The most natural reading of Section 612(a) requires agents of foreign principals to register even if they failed to do so during the time they were acting as such. Accordingly, even if (contrary to our showing above) the government were required to show that FARA continues to require Wynn to remedy his prior failure to register, the plain language of Section 612(a) in fact does so.

## B. This Case Does Not Involve *McGoff*'s Holding Regarding the Criminal Statute of Limitations.

As noted above, the government is preserving, for further review if necessary, its argument that the interpretation of Section 612(a) adopted by the majority in *McGoff* was incorrect. But to be clear, the

37

government accepts for purposes of this case *McGoff*'s ultimate holding regarding when the statute of limitations for a criminal FARA violation begins to run. *McGoff* will of course remain the law of this Circuit on that issue even if the panel or a subsequent court rules in the government's favor on the civil enforcement issue.

While the government accepts the *McGoff* Court's view that Congress intended the criminal statute of limitations to run from the end of the agency relationship, *McGoff*'s conclusion need not have been based on an unnatural reading of Section 612(a). Rather, the result in *McGoff* could have been based on a closer analysis of the language of Sections 618(a) and 618(e), which define the criminal offense. A reviewing court could decide, for example, that the criminal offense defined in Section 618(e) is the "failure to file," a term used only in this section and the related Section 612(d), which also discusses criminal liability. (Section 612(a), by contrast, repeatedly uses the term "obligation to file" rather than "failure to file.") A reviewing court could conclude that the phrase "as long as such failure exists" in Section 618(e) is ambiguous and is better read, especially in a criminal context, to encompass only the time during which an individual is acting as an

agent.  In this manner, a reviewing court could reject *McGoff*'s erroneous interpretation of Section 612(a) while still concluding, based on its interpretation of Sections 618(a) and 618(e), that the criminal statute of limitations for FARA registration violations begins to run when the agency relationship terminates.

Of course, this appeal arises out of a civil suit to enforce FARA's registration obligations, not a criminal prosecution for a failure to file. Thus, a reviewing court in this case need not resolve whether *McGoff*'s ultimate holding regarding the criminal statute of limitations was correct.  Even though the government accepts for purposes of this case *McGoff*'s ultimate conclusion regarding the criminal statute of limitations, the government is preserving its arguments regarding *McGoff*'s misreading of Section 612(a) for further review, if necessary.

## <u>CONCLUSION</u>

For the foregoing reasons, the district court's decision dismissing the Complaint should be reversed.

<div style="margin-left: 40%">

Respectfully submitted,

MATTHEW G. OLSEN
Assistant Attorney General for
National Security

 /s/ Joseph P. Minta
JEFFREY M. SMITH
JOSEPH P. MINTA
Attorneys, Appellate Unit
National Security Division
U.S. Department of Justice
950 Pennsylvania Ave. NW, Ste. 6500
Washington, DC 20530
Tel. (202) 353-9055
joseph.minta@usdoj.gov

*Attorneys for the Attorney General of
the United States*

</div>

Dated: May 12, 2023

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the 13,000-word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this brief contains 7782 words.

I further certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (a)(6) because it has been prepared in a proportionally spaced typeface using 14-point Century Schoolbook font.

/s/ Joseph P. Minta
Joseph P. Minta
Attorney for the Attorney General
of the United States

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of May 2023, a copy of the foregoing Brief for the Attorney General of the United States was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Joseph P. Minta
Joseph P. Minta
Attorney for the Attorney General
of the United States

# STATUTORY ADDENDUM

Table of Contents

22 U.S.C. § 611 .......................................................................S-1

22 U.S.C. § 612 .......................................................................S-6

22 U.S.C. § 618 .......................................................................S-11

## The Foreign Agents Registration Act

<u>22 U.S.C. § 611</u>

As used in and for the purposes of this subchapter—

(a) The term "person" includes an individual, partnership, association, corporation, organization, or any other combination of individuals;

(b) The term "foreign principal" includes—

(1) a government of a foreign country and a foreign political party;

(2) a person outside of the United States, unless it is established that such person is an individual and a citizen of and domiciled within the United States, or that such person is not an individual and is organized under or created by the laws of the United States or of any State or other place subject to the jurisdiction of the United States and has its principal place of business within the United States; and

(3) a partnership, association, corporation, organization, or other combination of persons organized under the laws of or having its principal place of business in a foreign country.

(c) Expect [sic] as provided in subsection (d) of this section, the term "agent of a foreign principal" means—

(1) any person who acts as an agent, representative, employee, or servant, or any person who acts in any other capacity at the order, request, or under the direction or control, of a foreign principal or of a person any of whose activities are directly or indirectly supervised, directed, controlled, financed, or subsidized in whole or in major part by a foreign principal, and who directly or through any other person—

(i) engages within the United States in political activities for or in the interests of such foreign principal;

(ii) acts within the United States as a public relations counsel, publicity agent, information-service employee or political consultant for or in the interests of such foreign principal;

(iii) within the United States solicits, collects, disburses, or dispenses contributions, loans, money, or other things of value for or in the interest of such foreign principal; or

(iv) within the United States represents the interests of such foreign principal before any agency or official of the Government of the United States; and

(2) any person who agrees, consents, assumes or purports to act as, or who is or holds himself out to be, whether or not pursuant to contractual relationship, an agent of a foreign principal as defined in clause (1) of this subsection.

(d) The term "agent of a foreign principal" does not include any news or press service or association organized under the laws of the United States or of any State or other place subject to the

jurisdiction of the United States, or any newspaper, magazine, periodical, or other publication for which there is on file with the United States Postal Service information in compliance with section 3611 of title 39, published in the United States, solely by virtue of any bona fide news or journalistic activities, including the solicitation or acceptance of advertisements, subscriptions, or other compensation therefor, so long as it is at least 80 per centum beneficially owned by, and its officers and directors, if any, are citizens of the United States, and such news or press service or association, newspaper, magazine, periodical, or other publication, is not owned, directed, supervised, controlled, subsidized, or financed, and none of its policies are determined by any foreign principal defined in subsection (b) of this section, or by any agent of a foreign principal required to register under this subchapter;

(e) The term "government of a foreign country" includes any person or group of persons exercising sovereign de facto or de jure political jurisdiction over any country, other than the United States, or over any part of such country, and includes any subdivision of any such group and any group or agency to which such sovereign de facto or de jure authority or functions are directly or indirectly delegated. Such term shall include any faction or body of insurgents within a country assuming to exercise governmental authority whether such faction or body of insurgents has or has not been recognized by the United States;

(f) The term "foreign political party" includes any organization or any other combination of individuals in a country other than the United States, or any unit or branch thereof, having for an aim or purpose, or which is engaged in any activity devoted in whole or in part to, the establishment, administration, control, or acquisition of administration or control, of a government of a foreign country or a subdivision thereof, or the furtherance or influencing of the political or public interests, policies, or relations of a government of a foreign country or a subdivision thereof;

(g) The term "public-relations counsel" includes any person who engages directly or indirectly in informing, advising, or in any way representing a principal in any public relations matter pertaining to political or public interests, policies, or relations of such principal;

(h) The term "publicity agent" includes any person who engages directly or indirectly in the publication or dissemination of oral, visual, graphic, written, or pictorial information or matter of any kind, including publication by means of advertising, books, periodicals, newspapers, lectures, broadcasts, motion pictures, or otherwise;

(i) The term "information-service employee" includes any person who is engaged in furnishing, disseminating, or publishing accounts, descriptions, information, or data with respect to the political, industrial, employment, economic, social, cultural, or other benefits, advantages, facts, or conditions of any country other than the United States or of any government of a foreign country or of a foreign political party or of a partnership, association, corporation, organization, or other combination of individuals organized under the laws of, or having its principal place of business in, a foreign country;

(j) Repealed.

(k) The term "registration statement" means the registration statement required to be filed with the Attorney General under section 612(a) of this title, and any supplements thereto required to be filed under section 612(b) of this title, and includes all documents and papers required to be filed therewith or amendatory thereof or supplemental thereto, whether attached thereto or incorporated therein by reference;

(l) The term "American republic" includes any of the states which were signatory to the Final Act of the Second Meeting of the

Ministers of Foreign Affairs of the American Republics at Habana, Cuba, July 30, 1940;

(m) The term "United States", when used in a geographical sense, includes the several States, the District of Columbia, the Territories, the Canal Zone, the insular possessions, and all other places now or hereafter subject to the civil or military jurisdiction of the United States;

(n) The term "prints" means newspapers and periodicals, books, pamphlets, sheet music, visiting cards, address cards, printing proofs, engravings, photographs, pictures, drawings, plans, maps, patterns to be cut out, catalogs, prospectuses, advertisements, and printed, engraved, lithographed, or autographed notices of various kinds, and, in general, all impressions or reproductions obtained on paper or other material assimilable to paper, on parchment or on cardboard, by means of printing, engraving, lithography, autography, or any other easily recognizable mechanical process, with the exception of the copying press, stamps with movable or immovable type, and the typewriter;

(o) The term "political activities" means any activity that the person engaging in believes will, or that the person intends to, in any way influence any agency or official of the Government of the United States or any section of the public within the United States with reference to formulating, adopting, or changing the domestic or foreign policies of the United States or with reference to the political or public interests, policies, or relations of a government of a foreign country or a foreign political party;

(p) The term "political consultant" means any person who engages in informing or advising any other person with reference to the domestic or foreign policies of the United States or the political or public interest, policies, or relations of a foreign country or of a foreign political party.

S-5

<u>22 U.S.C. § 612</u>

## (a)  Filing; contents

No person shall act as an agent of a foreign principal unless he has filed with the Attorney General a true and complete registration statement and supplements thereto as required by subsections (a) and (b) of this section or unless he is exempt from registration under the provisions of this subchapter. Except as hereinafter provided, every person who becomes an agent of a foreign principal shall, within ten days thereafter, file with the Attorney General, in duplicate, a registration statement, under oath on a form prescribed by the Attorney General. The obligation of an agent of a foreign principal to file a registration statement shall, after the tenth day of his becoming such agent, continue from day to day, and termination of such status shall not relieve such agent from his obligation to file a registration statement for the period during which he was an agent of a foreign principal. The registration statement shall include the following, which shall be regarded as material for the purposes of this subchapter:

(1) Registrant's name, principal business address, and all other business addresses in the United States or elsewhere, and all residence addresses, if any;

(2) Status of the registrant; if an individual, nationality; if a partnership, name, residence addresses, and nationality of each partner and a true and complete copy of its articles of copartnership; if an association, corporation, organization, or any other combination of individuals, the name, residence addresses, and nationality of each director and officer and of each person performing the functions of a director or officer and a true and complete copy of its charter, articles of incorporation, association, constitution, and bylaws, and amendments thereto; a copy of every other instrument or document and a statement of the terms and conditions of every oral agreement relating to its organization, powers, and purposes; and a statement of its ownership and control;

(3) A comprehensive statement of the nature of registrant's business; a complete list of registrant's employees and a statement of the nature of the work of each; the name and address of every foreign principal for whom the registrant is acting, assuming or purporting to act or has agreed to act; the character of the business or other activities of every such foreign principal, and, if any such foreign principal be other than a natural person, a statement of the ownership and control of each; and the extent, if any, to which each such foreign principal is supervised, directed, owned, controlled, financed, or subsidized, in whole or in part, by any government of a foreign country or foreign political party, or by any other foreign principal;

(4) Copies of each written agreement and the terms and conditions of each oral agreement, including all modifications of such agreements, or, where no contract exists, a full statement of all the circumstances, by reason of which the registrant is an agent of a foreign principal; a comprehensive statement of the nature and method of performance of each such contract, and of the existing and proposed activity or activities engaged in or to be engaged in by the registrant as agent of a foreign principal for each such foreign principal, including a detailed statement of any such activity which is a political activity;

(5) The nature and amount of contributions, income, money, or thing of value, if any, that the registrant has received within the preceding sixty days from each such foreign principal, either as compensation or for disbursement or otherwise, and the form and time of each such payment and from whom received;

(6) A detailed statement of every activity which the registrant is performing or is assuming or purporting or has agreed to perform for himself or any other person other than a foreign principal and which requires his registration hereunder, including a detailed statement of any such activity which is a political activity;

S-7

(7) The name, business, and residence addresses, and if an individual, the nationality, of any person other than a foreign principal for whom the registrant is acting, assuming or purporting to act or has agreed to act under such circumstances as require his registration hereunder; the extent to which each such person is supervised, directed, owned, controlled, financed, or subsidized, in whole or in part, by any government of a foreign country or foreign political party or by any other foreign principal; and the nature and amount of contributions, income, money, or thing of value, if any, that the registrant has received during the preceding sixty days from each such person in connection with any of the activities referred to in clause (6) of this subsection, either as compensation or for disbursement or otherwise, and the form and time of each such payment and from whom received;

(8) A detailed statement of the money and other things of value spent or disposed of by the registrant during the preceding sixty days in furtherance of or in connection with activities which require his registration hereunder and which have been undertaken by him either as an agent of a foreign principal or for himself or any other person or in conection [sic] with any activities relating to his becoming an agent of such principal, and a detailed statement of any contributions of money or other things of value made by him during the preceding sixty days (other than contributions the making of which is prohibited under the terms of section 613 of title 18) in connection with an election to any political office or in connection with any primary election, convention, or caucus held to select candidates for any political office;

(9) Copies of each written agreement and the terms and conditions of each oral agreement, including all modifications of such agreements, or, where no contract exists, a full statement of all the circumstances, by reason of which the registrant is performing or assuming or purporting or has agreed to perform for himself or

for a foreign principal or for any person other than a foreign principal any activities which require his registration hereunder;

(10) Such other statements, information, or documents pertinent to the purposes of this subchapter as the Attorney General, having due regard for the national security and the public interest, may from time to time require;

(11) Such further statements and such further copies of documents as are necessary to make the statements made in the registration statement and supplements thereto, and the copies of documents furnished therewith, not misleading.

**(b) Supplements; filing period**

Every agent of a foreign principal who has filed a registration statement required by subsection (a) of this section shall, within thirty days after the expiration of each period of six months succeeding such filing, file with the Attorney General a supplement thereto under oath, on a form prescribed by the Attorney General, which shall set forth with respect to such preceding six months' period such facts as the Attorney General, having due regard for the national security and the public interest, may deem necessary to make the information required under this section accurate, complete, and current with respect to such period. In connection with the information furnished under clauses (3), (4), (6), and (9) of subsection (a) of this section, the registrant shall give notice to the Attorney General of any changes therein within ten days after such changes occur. If the Attorney General, having due regard for the national security and the public interest, determines that it is necessary to carry out the purposes of this subchapter, he may, in any particular case, require supplements to the registration statement to be filed at more frequent intervals in respect to all or particular items of information to be furnished.

**(c) Execution of statement under oath**

The registration statement and supplements thereto shall be executed under oath as follows: If the registrant is an individual, by him; if the

registrant is a partnership, by the majority of the members thereof; if the registrant is a person other than an individual or a partnership, by a majority of the officers thereof or persons performing the functions of officers or by a majority of the board of directors thereof or persons performing the functions of directors, if any.

## (d) Filing of statement not deemed full compliance nor as preclusion from prosecution

The fact that a registration statement or supplement thereto has been filed shall not necessarily be deemed a full compliance with this subchapter and the regulations thereunder on the part of the registrant; nor shall it indicate that the Attorney General has in any way passed upon the merits of such registration statement or supplement thereto; nor shall it preclude prosecution, as provided for in this subchapter, for willful failure to file a registration statement or supplement thereto when due or for a willful false statement of a material fact therein or the willful omission of a material fact required to be stated therein or the willful omission of a material fact or copy of a material document necessary to make the statements made in a registration statement and supplements thereto, and the copies of documents furnished therewith, not misleading.

## (e) Incorporation of previous statement by reference

If any agent of a foreign principal, required to register under the provisions of this subchapter, has previously thereto registered with the Attorney General under the provisions of section 2386 of title 18, the Attorney General, in order to eliminate inappropriate duplication, may permit the incorporation by reference in the registration statement or supplements thereto filed hereunder of any information or documents previously filed by such agent of a foreign principal under the provisions of said section.

## (f) Exemption by Attorney General

The Attorney General may, by regulation, provide for the exemption—

(1) from registration, or from the requirement of furnishing any of the information required by this section, of any person who is listed as a partner, officer, director, or employee in the registration statement filed by an agent of a foreign principal under this subchapter, and

(2) from the requirement of furnishing any of the information required by this section of any agent of a foreign principal.

where by reason of the nature of the functions or activities of such person the Attorney General, having due regard for the national security and the public interest, determines that such registration, or the furnishing of such information, as the case may be, is not necessary to carry out the purposes of this subchapter.

## (g) Electronic filing of registration statements and supplements

A registration statement or supplement required to be filed under this section shall be filed in electronic form, in addition to any other form that may be required by the Attorney General.

22 U.S.C. § 618

### (a)  Violations; false statements and willful omissions

Any person who—

(1) willfully violates any provision of this subchapter or any regulation thereunder, or

(2) in any registration statement or supplement thereto or in any other document filed with or furnished to the Attorney General under the provisions of this subchapter willfully makes a false statement of a material fact or willfully omits any material fact required to be stated therein or willfully omits a material fact or a copy of a material document necessary to make the statements therein and the copies of documents furnished therewith not misleading, shall, upon conviction thereof, be punished by a fine of not more than $10,000 or by imprisonment for not more than five

years, or both, except that in the case of a violation of subsection (b), (e), or (f) of section 614 of this title or of subsection (g) or (h) of this section the punishment shall be a fine of not more than $5,000 or imprisonment for not more than six months, or both.

**(b) Proof of identity of foreign principal**

In any proceeding under this subchapter in which it is charged that a person is an agent of a foreign principal with respect to a foreign principal outside of the United States, proof of the specific identity of the foreign principal shall be permissible but not necessary.

**(c) Removal**

Any alien who shall be convicted of a violation of, or a conspiracy to violate, any provision of this subchapter or any regulation thereunder shall be subject to removal pursuant to chapter 4 of title II of the Immigration and Nationality Act.

**(d) Repealed.**

**(e) Continuing offense**

Failure to file any such registration statement or supplements thereto as is required by either section 612(a) or section 612(b) of this title shall be considered a continuing offense for as long as such failure exists, notwithstanding any statute of limitation or other statute to the contrary.

**(f) Injunctive remedy; jurisdiction of district court**

Whenever in the judgment of the Attorney General any person is engaged in or about to engage in any acts which constitute or will constitute a violation of any provision of this subchapter, or regulations issued thereunder, or whenever any agent of a foreign principal fails to comply with any of the provisions of this subchapter or the regulations issued thereunder, or otherwise is in violation of the subchapter, the Attorney General may make application to the appropriate United States district court for an order enjoining such acts or enjoining such

person from continuing to act as an agent of such foreign principal, or for an order requiring compliance with any appropriate provision of the subchapter or regulation thereunder. The district court shall have jurisdiction and authority to issue a temporary or permanent injunction, restraining order or such other order which it may deem proper.

## (g) Deficient registration statement

If the Attorney General determines that a registration statement does not comply with the requirements of this subchapter or the regulations issued thereunder, he shall so notify the registrant in writing, specifying in what respects the statement is deficient. It shall be unlawful for any person to act as an agent of a foreign principal at any time ten days or more after receipt of such notification without filing an amended registration statement in full compliance with the requirements of this subchapter and the regulations issued thereunder.

## (h) Contingent fee arrangement

It shall be unlawful for any agent of a foreign principal required to register under this subchapter to be a party to any contract, agreement, or understanding, either express or implied, with such foreign principal pursuant to which the amount or payment of the compensation, fee, or other remuneration of such agent is contingent in whole or in part upon the success of any political activities carried on by such agent.